Case 1:23-md-03089-BMC    Document 115-15    Filed 02/09/24    Page 1 of 5 PageID #: 920

# EXHIBIT N



## Ciresi Conlin LLP

December 28, 2023

The Honorable Brian M. Cogan
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Leadership Application – MDL 3089

Dear Judge Cogan:

### I. Introduction

Michael A. Sacchet
*Partner*

E:  MAS@CiresiConlin.com
P:  612-361-8220

225 South 6th St.
Suite 4600
Minneapolis, MN 55402
612-361-8200
CiresiConlin.com

I am a partner at Ciresi Conlin LLP, a law firm in Minneapolis, Minnesota. Over the past decade, I have dedicated my career to complex civil litigation and representing individuals injured by corporate misconduct.

After graduating from Harvard Law School, I began my career as a law clerk to Judge Diana E. Murphy (8th Cir.) and Judge Philip S. Gutierrez (C.D. Cal.). Both clerkships sharpened my proverbial pen and solidified my passion for legal briefing. I put these skills to the test in the *3M Earplugs* MDL as a member of the Plaintiffs' Steering Committee and as the Chair of the Law & Briefing Subcommittee. Among other motions, I drafted and argued cross-motions for summary judgment on 3M's preemption defense. Plaintiffs not only defeated 3M's motion but prevailed on their own motion for summary judgment, paving the way for more than 200,000 cases to proceed to trial. The MDL judge praised my oral argument as "outstanding" and "as good as any" she had witnessed in her 18-year career on the bench.

My advocacy skills also benefited thousands of injured plaintiffs in the *3M Bair Hugger* MDL. After an early victory on general causation, the court reversed itself and dismissed the MDL, teeing up a global appeal that I briefed and argued in the Eighth Circuit. Despite abuse-of-discretion review, the panel unanimously reversed, breathing life back into 6,000 cases.

Although I remain forever committed to excellence in legal writing and oral argument, working on these MDLs has unearthed my passion and talents in all aspects of mass torts. I evolved from a virtuoso in law and briefing to a polymath in litigation. In *Bair Hugger*, for example, I not only briefed general-causation issues but also parsed esoteric scientific literature; deposed epidemiologists, biostatisticians, and orthopedic surgeons; and cross-examined key causation experts at trial. Likewise, in *Earplugs*, I was

December 28, 2023
Page 2

not isolated in an ivory tower while drafting *Daubert*, choice-of-law, summary-judgment, and pre-trial motions; rather, I put my knowledge of the law and facts into action by synthesizing hot documents, strategizing for 30(b)(6) depositions, and preparing key experts. Recognizing my knowledge ran a mile wide and a mile deep, leadership invited me to serve as trial counsel for five bellwethers. I handled everything from oral argument on directed verdict to direct and cross-examinations of seminal fact and expert witnesses. Given my proven skillset and unwavering work ethic, I was recently appointed Co-Lead Counsel in the *Bard Implanted Port Catheter ("IPC")* MDL and inducted into the International Academy of Trial Lawyers as its youngest Fellow ever.

## II.     Ability to Work Cooperatively with Others

My history of collaboration dates back to before law school during my service with Teach for America. During my two years as an eighth-grade math and science teacher at Cesar Chavez Middle School in East Palo Alto, California, I collaborated with fellow teachers, support staff, administrators, and parents—all for the common good of helping under-privileged students.

Today, I use the same skills in my mass tort practice. Serving on four different committees in the *Bair Hugger* MDL, I learned the importance of cooperation across committees. Leading a multi-member appellate team that spanned across the country, I shepherded a global appeal from the Eighth Circuit to cert petitions, delegating tasks along the way to tap into my team's talents.

Collaboration within and across committees continued in the *Earplugs* MDL. As a member of the Plaintiffs' Steering Committee, I regularly liaised with leadership. And as the Chair of the Law & Briefing Subcommittee, I oversaw dozens of attorneys, led weekly meetings, and assigned work to all members. My commitment to collaboration reached its zenith in back-to-back trials, each with a different mix of lawyers and firms. As co-lead trial counsel, I valued the contributions of everyone, from paralegals handling record redactions to all-star trial lawyers workshopping closing statements. As a result of this collaboration, our firms brought home the largest single-plaintiff verdict ($77.5 million) and largest multi-plaintiff verdict ($110 million) in the MDL.

Finally, as Co-Lead Counsel in the *Bard IPC* MDL, I sincerely believe that collaboration is the name of the game. Indeed, it is the key ingredient to any successful MDL. Day in, day out, I liaise with my co-leads and a myriad of other lawyers who serve on the executive committee, steering committee, and numerous subcommittees. Given my proven track record of collaboration in all aspects of litigation, I welcome the opportunity to continue to be a team player in this MDL.

## III.    Professional Experience in This Type of Litigation

As a member of four committees in the *Bair Hugger* MDL, I deposed fact witnesses, prepared and deposed experts, and drafted and argued dispositive and non-dispositive motions. I also handled countless status conferences, argued motions and a global appeal, tried a case, participated in mediations, and recently negotiated a protocol for future MDL trials and/or remand.

In the *Earplugs* MDL, a merit-selection process opened the door for me to take on additional leadership roles. After reviewing approximately 200 applications, the MDL court appointed me to the Plaintiffs' Steering Committee and named me Chair of Law & Briefing. I drafted the master and short-form complaints; *Daubert*, choice-of-law, summary-judgment, and

pre-trial motions; and post-trial briefs and several merits appeals. I was a key member of five trial teams, conducting critical direct and cross-examinations in addition to handling oral argument and charge conferences. Obtaining more than $200 million in verdicts in less than a year, I never lost a trial. Leadership, moreover, chose me as lead counsel in several multi-million-dollar bellwether appeals and in 3M's interlocutory appeal of the MDL court's global ruling on successor liability.

More recently, I was appointed Co-Lead Counsel in the *Bard IPC* MDL. Since the inception of that MDL, my firm and I have taken the laboring oar on all substantive filings, including the master long-form and short-form complaints, as well as implementing orders regarding master pleadings, common benefit, special masters, profile forms, and bellwether selection. I have humbly appeared as Plaintiffs' primary spokesperson at every status conference.

Outside the MDL context, I have served as lead counsel in a variety of complex cases, including similar consumer-protection class actions. *E.g.*, *Friedrich et al. v. 3M*, No. 62-cv-23-3087 (Minn. Dist.); *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.); *Carver v. Bank of N.Y. Mellon*, No. 1:15-cv-10180 (S.D.N.Y.). I have drafted appellate briefs in the Eighth Circuit and Minnesota Supreme Court, *e.g.*, *Gill v. Gill*, No. A16-1421 (Minn.), and honed my oral-argument, deposition, and trial skills in consumer-protection actions, *e.g.*, *Garry v. Andersen Corp.*, No. 19HA-cv-17-675 (Minn. Dist.). My experience in these matters, together with several high-stakes MDLs, has adequately prepared me to serve in leadership here.

## IV. Willingness and Ability to Commit to a Lengthy and Time-Consuming Process

After nearly a decade of litigation, the *Bair Hugger* MDL is still ongoing, but my time commitment is in the rearview mirror. Since the Eighth Circuit reinstated the MDL, the parties have been actively mediating at the district court's direction. If the MDL does not settle soon, remand of some or all cases appears imminent, and those plaintiffs are represented by other firms.

In the *Earplugs* MDL, I was slated to argue several appeals, but that MDL recently resolved for $6 billion. On the heels of that settlement, I was appointed Co-Lead Counsel in the *Bard IPC* MDL. Despite my commitment to that MDL, I remain willing and able to commit to this MDL.

## V. Access to Sufficient Resources

My firm is prepared to finance this MDL with its own funds, and it has the wherewithal to meet all cash calls. Alternative arrangements with third-party financiers will not be necessary.

## VI. Diversity of Age, Experience, and Geography

If appointed to leadership here, I would bring diversity of age, experience, and geography. Unlike most of my colleagues, I am under 40 years old. Never resting on my laurels, I remain hungry for new challenges and bring a fresh perspective—willing to question the status quo, yet deferential to time-tested theories. I also bring diversity of experience, having served in the trenches on nearly every type of MDL committee but also at the summit as co-lead counsel. Finally, I am one of the few attorneys hailing from the center of our country rather than the coast.

December 28, 2023
Page 4

Respectfully submitted,

*[signature]*

Michael A. Sacchet (MN #0395817)
CIRESI CONLIN LLP
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
Phone: 612-361-8200
mas@ciresiconlin.com