**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL No. 1:23-md-3089-BMC<br><br>**This Document Relates to**<br>**ALL CASES** |

**CONSENSUS PLAINTIFFS' AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER APPOINTING PLAINTIFFS' PROPOSED LEADERSHIP STRUCTURE AND APPOINTING INTERIM CLASS COUNSEL**

## I.      INTRODUCTION

On December 6, 2023, the Judicial Panel on Multidistrict Litigation ("JPML") created this industry-wide Multidistrict Litigation ("MDL"), transferring all actions containing allegations that Defendants' oral phenylephrine products are ineffective as nasal decongestants to this Honorable Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1402.[1] In so doing, the Panel tasked your Honor with "steer[ing] this litigation on a prudent and expeditious course."[2]

Following this MDL's creation, Your Honor instructed the parties to, among other things, respectively confer on the organization of counsel.[3] Specifically, in its December 21, 2023 Order, [ECF 5], the Court stated that:

> [p]rior to the initial status conference, counsel on each side shall confer and attempt to seek consensus on whether lead counsel and liaison counsel should be appointed and, if so, the Plaintiffs' counsel and defense counsel shall attempt to reach and file a stipulation as to the organization of their ***respective*** counsel. If the parties are unable to do so, any party may file a motion for the appointment of lead counsel and/or liaison counsel, including proposed orders, no later than _____.

*Id*. at 5 (emphasis added).

In compliance with the Court's directive, approximately 58 Plaintiffs' firms (representing approximately 82% of the 90 related cases before this Court[4] (following the JPML transfer Order and the subsequent conditional transfer orders being issued) ("the Consensus Plaintiffs")

---

[1] ECF No 1.
[2] *Id*.
[3] ECF No. 5.
[4] Both of those numbers continue to increase.

conferred[5] and reached agreement on the proposed two-tiered leadership structure set forth in Exhibit A. The list of 58 firms supporting this structure is attached as Exhibit B.[6]

The Consensus Plaintiffs' proposed two-tiered leadership structure—the result of extensive discussion and cooperation among counsel as part of a private-ordering effort—contemplates the appointment of a ten-member Plaintiffs' Executive Committee ("PEC"), to be chaired by New York attorney Michael A. London of Douglas and London, P.C., and a Plaintiffs' Steering Committee ("PSC"). The PEC—the proposed members of which are also seeking appointment as Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)—would be tasked with, among other things, undertaking the cohesive efforts necessary to efficiently prosecute this case and instructing

---

[5] Of note, several plaintiffs' lawyers—all of whom support the leadership structure proposed here—commenced informal efforts to work cooperatively before the creation of this MDL on issues germane to all of the cases and have been working as a cohesive and productive team from that time through the present day.

[6] In further compliance with the Court's directive, Plaintiffs' counsel—consistent with the Court's statement that "the Plaintiffs' counsel and defense counsel shall attempt to reach and file a stipulation as to the organization of their *respective* counsel," *id.*—reached out to Defendants' counsel, who, rather than limit their comments to their own side's leadership organization, requested that Plaintiffs include the following language in this Memorandum: "Defendants take no position on plaintiffs' proposed leadership structure, although they reserve their rights, including the right to challenge the efficiency of the proposed structure." Defendants also requested that Plaintiffs include language to the effect that Defendants "oppose the interim class counsel at this stage as premature, and defendants propose to discuss whether the appointment of interim class counsel is appropriate or necessary at the initial status conference."

Given the Court's directive regarding "organization of their *respective* counsel" it was understood that neither side comment on, or otherwise interfere with, the other side's proposed leadership structure (moreover, to actually enable Defendants to interfere with Plaintiffs' private ordering process and their proposed leadership structure would epitomize Judge Posner's admonition in *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981), about how a defendant, trying to interpose itself into plaintiff-side issues, "is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."). Notwithstanding that fact, and in an effort to present to the Court a clear record of the meet and confer that occurred on this issue, Plaintiffs have elected to include Defendants' requested language here—if only to advise the Court that even if the Court's Order permitted Defendants to weigh in on these inherently plaintiff-specific issues, Plaintiffs do not believe that Defendants' contentions are well taken.

and advising the PSC and other Plaintiffs' attorneys doing common benefit work at the PEC's direction and under its supervision.[7]

The Consensus Plaintiffs submit that presently appointing their comprehensive and near-unanimous[8] supported proposed leadership structure, in the form attached as Exhibit A, will allow them to efficiently and effectively prosecute this class action litigation on behalf of all Plaintiffs and absent Class members, speaking in one voice on behalf of all of them, consistent with Rule 23(g)'s dictates. A detailed explanation of the proposed leadership structure is set forth below.

As set forth in the Declarations from the attorneys applying for leadership roles attached as Exhibits C through Y[9] hereto, the proposed leadership team members have demonstrated the willingness and the ability to commit to time-consuming litigation and settlement processes; have demonstrated the ability to work cooperatively and efficiently with others; have substantial professional experience in leading this type of litigation; and have access to sufficient resources to advance the litigation in a timely and efficient manner.[10]

---

[7] *See* Proposed Order Appointing Plaintiffs' Leadership Structure and Appointing Rule 23(G) Interim Class Counsel, pp. 5-7, attached as Ex. A for a complete list of PEC duties and responsibilities. ("Ex. A")

[8] While certain plaintiff law firms who initially filed a lawsuit have not affirmatively agreed to the leadership structure, we are not aware of any lawyer or law firm who opposes the Consensus Plaintiffs' proposed leadership structure.

[9] Declaration of Michael A. London, attached as Ex. C; Declaration of Bryan A. Aylstock, attached as Ex. D; Declaration of James E. Cecchi, attached as Ex. E; Declaration of Kiley L. Grombacher, attached as Ex. F; Declaration of Adam J. Levitt, attached as Ex. G; Declaration of Elizabeth A. Fegan, attached as Ex. H; Declaration of Jonathan D. Selbin, attached as Ex. I; Declaration of Christopher A. Seeger, attached as Ex. J; Declaration of Jason P. Sultzer, attached as Ex. K; Declaration of Lindsey N. Scarcello, attached as Ex. L; Declaration of Sarah N. Wescot, attached as Ex. M; Declaration of Michael A. Sacchet, attached as Ex. N; Declaration of Shireen M. Clarkson, attached as Ex. O; Declaration of Alexander E. Barnett, attached as Ex. P; Declaration of Kelsey L. Stokes, attached as Ex. Q; Declaration of Darren E. Kaplan, attached as Ex. R; Declaration of Cari C. Laufenberg, attached as Ex. S; Declaration of Jordan E. Jacobson, attached as Ex. T; Declaration of Laura S. Dunning, attached as Ex. U; Declaration of Fred S. Longer, attached as Ex. V; Declaration of Marlene J. Goldenberg, attached as Ex. W; Declaration of Melanie H. Muhlstock, attached as Ex. X; and Declaration of Stuart A. Davidson, attached as Ex. Y.

[10] Additionally, brief summaries of each of the proposed PEC members are set forth below.

Accordingly, the Consensus Plaintiffs respectfully move this Court for approval of their proposed leadership slate and appointment of members of the proposed PEC as Rule 23(g) Interim Class Counsel.[11]

## II.    LEGAL STANDARD

Courts have traditionally appointed individual counsel organized in a plaintiffs' leadership structure to coordinate the prosecution of a complex litigation.[12] According to the MANUAL FOR COMPLEX LITIGATION (4th ed. 2005) ("MANUAL"), the function of the plaintiffs' leadership structure is to "promote efficiency," "avoid unruly proceedings" and "clarify responsibility for protecting the interests of the class during precertification proceedings."[13] Moreover, courts have historically given deference to the individuals and organization structure of counsel selected by mutual cooperation.[14] This approach is known as private-ordering:

> There are several methods for selecting among competing applicants. By far the most common is the so-called 'private ordering' approach: The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests. Counsel may agree to designate a particular lead class counsel in exchange for commitments to share the legal work and fees.[15]

---

[11] *See* Ex. A.
[12] *In re Facebook, Inc.*, 288 F.R.D. 26, 43-44 (S.D.N.Y. 2012); *In re Bank of Am. Corp. Secs., Derivative and ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009)).
[13] *In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 56 (E.D.N.Y. 2015) (quoting MANUAL § 21.11.
[14] *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501 2023 U.S. Dist. LEXIS 117086, at *8 (N.D. Cal. Jul. 7, 2023) (appointing class counsel where all other Plaintiffs' counsel's firms supported the appointment); *In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 370 (E.D. Pa 2022) (concluding court will respect the private ordering of Plaintiffs in selecting lead counsel); *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, MDL No. 1674 2011 U.S. Dist. LEXIS 107366, at *22 (W.D. Pa. Sep. 20, 2011) (observing that private ordering has long been the preferred approach and concluding the Court has no reason to deviate from that approach when selecting interim lead counsel); *See also* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large And Mass Tort MDLs* (Second ed. 2018) p. 13 at ¶ 1.
[15] MANUAL § 21.272.

Judges presiding over complex cases agree that selecting the right individual counsel for leadership is of paramount importance to the overall success of the litigation.[16] Section 10.22 of the MANUAL explains when a court should appoint lead counsel:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

When selecting counsel to serve in leadership roles, the Manual recommends that Courts ensure that counsel are "qualified and responsible and that they will fairly and adequately represent all of the parties on their side."[17] Finally, courts should consider the attorneys' resources, commitment, and "ability to command respect of their colleagues and work cooperatively with opposing counsel and the Court."[18]

In addition, because this is a class action, the Court, in conjunction with its leadership analysis, must also consider the elements of Federal Rule of Civil Procedure 23(g).[19] That Rule provides, in pertinent part, that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. Pro. 23(g)(3).

It is "generally accepted that the considerations set out in [Rule 23(g)(1)(A)], which governs appointment of class counsel once a class is certified, apply equally to the designation of

---

[16] MANUAL § 10.224 ("Few decisions by the Court in Complex litigation are as difficult and sensitive as the appointment of designated Counsel")

[17] MANUAL § 10.220.

[18] MANUAL § 10.224.

[19] *In re Fairlife Milk Prods. Mktg. & Sales Practices Litig.*, No. 19-cv-3924, 2020 U.S. Dist. LEXIS 10291, at *5 (N.D. ILL. Jan. 22, 2020) (noting that an MDL court must look to Fed. R. Civ. Pro. 23(g)(3) factors in appointing leadership positions where Plaintiffs expect to seek class certification).

interim class counsel before certification." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240

F.R.D. 56, 56 (E.D.N.Y. 2006)); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186

(S.D.N.Y. 2008) ("When appointing interim class counsel, courts generally look to the same

factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)"). These factors

are:

> (i) the work counsel has done in identifying or investigating potential claims in the
> action; (ii) counsel's experience in handling class actions, other complex litigation,
> and the types of claims asserted in the action; (iii) counsel's knowledge of the
> applicable law; and (iv) the resources that counsel will commit to representing the
> class.

Fed. R. Civ. P. 23(g)(1)(A).

Pursuant to Rule 23(g)(1)(B), courts may also consider "any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P.

23(g)(1)(B). The most important factor is "achieving efficiency and economy without jeopardizing

fairness to the parties." MANUAL § 10.221. As discussed above, and more fully below, the attorneys

comprising Consensus Plaintiffs' proposed leadership team—and the size and structure of the team

as a whole—meet this standard in this litigation.

### III.    ARGUMENT

**A.    The Consensus Plaintiffs' Proposal Best Serves the Needs of Plaintiffs, the Other
Members of the Proposed Class, and The Management of the MDL as a Whole**

The Consensus Plaintiffs' proposal recognizes the significant size, scope, and needs of this

case, and leverages a team of experienced attorneys of diverse backgrounds who are fully capable

of prosecuting the case efficiently and effectively through all aspects of pre-trial, discovery, trial,

appeal, and resolution. The case is neither simple nor small. It is an industry-wide MDL regarding

oral phenylephrine sold in hundreds of products by more than two dozen defendants to millions of

consumers across all fifty states. Oral phenylephrine exploded in use after the nasal decongestant

pseudoephedrine was moved "behind the counter" in 2006. According to recent reporting, in 2022 alone, more than $1.8 billion in oral-phenylephrine-containing products were sold in the United States in hundreds of different products (in approximately 242 million bottles or packages).[20]

In recognition of the size and complexity of this matter, the Consensus Plaintiffs' counsel have, since September 2023, been actively working together and with other plaintiffs' law firms to investigate and develop legal and factual theories and strategies. They formed multiple working groups that have held weekly calls and Zoom meetings, as well as several in-person meetings. They expended hundreds of hours investigating the matter, drafted multiple substantive legal and factual memoranda, constructed databases supporting factual claims, conferred with experts, and otherwise developed the legal and factual theories underpinning the prosecution of the case. This pre-appointment work supports the Consensus Plaintiffs' appointment. *See*, *e.g.*, *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (explaining that leadership applicant firms' "significant investigations into the potential claims" weighed in favor of its appointment in leadership).

### 1.  The Consensus Plaintiffs' Counsel Have Substantial Experience and Wide-Ranging Knowledge of the Relevant Law

The proposed ten-member PEC is comprised of some of the most accomplished MDL and class action trial lawyers in the plaintiffs' bar. They have led teams that recovered tens of billions of dollars for plaintiffs, led dozens of MDL, and count among their team members individuals who have been characterized by courts as part of a "class action dream team."[21] The proposed chair of the PEC, Michael London, co-led *In re: Bayer Corp Combination Aspirin Products Marketing and*

---

[20] Megan Cerullo, *Ineffective* ingredient *could make Dayquil, Sudafed and others disappear from store shelves*, CBS News (Sept. 12, 2023), *available at* https://www.cbsnews.com/news/phenylephrine-fda-ruling-nasal-decongestants/.

[21] *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 15-MD-2672 (N.D. Cal.).

*Sales Practices Litigation*, MDL 2023, a case involving a number of issues similar to this one. Together, the proposed leadership team understands how to manage large, complex multi-district litigations, and manage them well.

Indeed, this experience is reflected in the proposed structure itself. Recognizing the substantial discovery burdens that will inevitably fall on Plaintiffs in a case characterized by dozens of defendants and hundreds of products, the Consensus Plaintiffs have proposed a large slate with diverse geographic reach.[22] The PEC will direct the efforts of the PSC, which will assist the PEC in undertaking all tasks necessary for the successful litigation of this matter. This approach—as more fully framed in the proposed Order—will serve as a powerful check in: (1) ensuring that only necessary work is being conducted efficiently and effectively by Plaintiffs' counsel; and (2) protecting against unnecessary work that only leads to an increase in costs and fees. Further, foregoing the traditional lead or co-lead counsel structure seen in other MDLs in favor of the PEC and PSC structure proposed here has greatly assisted with achieving the consensus of Plaintiffs' counsel, and reflects both the cooperative effort of counsel and their willingness to set aside ego in service to consensus.

## 2. Counsel Will Expend Significant Resources on This Matter

As detailed in their declarations attached as Exhibits C through L, each proposed member of the PEC has committed to expending significant resources—in terms of both time and treasure—to prosecute this matter and have a documented history of a willingness and ability to do so however long it takes. Indeed, as detailed above, they have already begun to do so here. In addition, attached hereto are declarations of each proposed member of the PSC.

---

[22] The proposed leadership committee includes attorneys from New York, New Jersey, Illinois, Missouri, Florida, California, Minnesota, Pennsylvania, and Washington.

### 3.     The Consensus Plaintiffs Comprise a Slate Diverse in Geography, Experience, and Perspective

This is a nationwide case, with Plaintiffs from all walks of life. The Consensus Plaintiffs are comprised of law firms and lawyers located across the United States. Attorneys on the proposed leadership committees hail from New York, New Jersey, Illinois, Missouri, Florida, California, Minnesota, Pennsylvania, Texas, and Washington with class action experience ranging from ten to thirty years. Women hold over 45% of the proposed leadership positions.

In short, Consensus Plaintiffs' proposed structure is an effective and efficient structure that will best serve Plaintiffs and the other members of the proposed Class. The structure can tackle the complexities inherent in an industry-wide MDL given the multiple defendants and products at issue, address any nuances in the MDL as they arise, and ensure that firms with particular skills will be relied upon, as the PEC deems necessary.

## B.     The Proposed PEC Members

The proposed PEC slate will be chaired by Michael A. London of New York-based Douglas & London P.C. As PEC Chair, Mr. London will coordinate, schedule, and monitor the activities of the leadership team, as well as perform other necessary administrative or logistical tasks. He will also be responsible for traditional liaison counsel duties in lieu of the appointment of a formal liaison counsel. Significantly, however, serving as Chair does not give Mr. London greater authority over any other PEC member. As stated above, the proposed leadership structure contemplates a majority rules approach. The other nine proposed PEC members (listed alphabetically by firm name) are:

Bryan F. Aylstock
Aylstock Witkin Kreis Overholtz PLLC
17 East Main Street, Suite 200
Pensacola, Florida 32502
Tel: 850-202-1010
baylstock@awkolaw.com

Elizabeth A. Fegan
Fegan Scott LLC
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Tel: 630-273-2625
beth@feganscott.com

Kiley L. Grombacher
Bradley/Grombacher LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: 866-881-0403
kgrombacher@bradleygrombacher.com

Jonathan D. Selbin
Lieff Cabraser Heimann & Bernstein LLP
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: 212-355-9500
jselbin@lchb.com

James E. Cecchi
Carella Byrne Cecchi Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: 973-994-1700
jcecchi@carellabyrne.com

Christopher A. Seeger
Seeger Weiss LLP
55 Challenger Road
Ridgefield Park, New Jersey 07660
Tel: 888-546-8799
cseeger@seegerweiss.com

Adam J. Levitt
DiCello Levitt LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-214-7900
alevitt@dicellolevitt.com

Jason P. Sultzer
The Sultzer Law Group P.C.
85 Civic Center Plaza Ste. 200
Poughkeepsie, New York 12601
Tel: 845-244-5595
sultzerj@thesultzerlawgroup.com

Lindsey N. Scarcello
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Tel: 816-701-1102
lscarcello@wcllp.com

## 1.    Michael A. London of Douglas & London Should Be Appointed as PEC Chair

Michael A. London should be appointed as PEC Chair, due to his extensive leadership

experience in managing pharmaceutical class actions and mass torts,[23] his firm's abundant

resources, and the universal support for the appointment that he enjoys from the Consensus

Plaintiffs' firms involved in this case. Importantly, Douglas and London is based locally in New

---

[23] *See* Declaration of Michael A. London, attached as Ex. C at pp. 2-3 (listing the eleven (11) complex litigations in which Mr. London has been appointed Co-Lead Counsel or Chair of Plaintiffs' Executive Committees)

York City, less than fifteen minutes from the Eastern District of New York courthouse,[24] and has

a proven record of successfully managing cases here in the United States District Court for the

Eastern District of New York in addition to MDLs nationwide.

Perhaps the most relevant experience is Mr. London's success at managing a similar

pharmaceutical consumer class action: *In re: Bayer Corp Combination Aspirin Products*

*Marketing and Sales Practices Litigation*, MDL 2023, in which this Court appointed him Co-Lead

Counsel and Liaison Counsel—roles that he performed through the successful resolution of that

MDL. *See* Case Management Order No. 1, 09-md-2023 [Dkt. No. 17]. Heading up that litigation,

along with his co-lead counsel, Mr. London oversaw the work of the Plaintiffs' Executive

Committee and Plaintiffs' Steering Committee, which included the filing of a consolidated class

action complaint, successful Rule 12(b)(6) motion practice, extensive defendant and third-party

fact discovery, extensive expert discovery, *Daubert* motion practice and class certification motion

practice, all of which ultimately resulted in a successful resolution. Indeed, the work performed by

Mr. London played an integral part in bringing about the $15 million settlement for class members.

In addition, the Consensus Plaintiffs have suggested this role and support it.

Mr. London has significant other mass tort and class action experience, as set forth in his

Declaration (see Exhibit C). By way of brief summary, he has been appointed as lead counsel,

liaison counsel and/or chair-person of a plaintiffs executive committee in 12 prior MDLs.  While

resolution value is not, in and of itself, a way to judge successful leadership contribution, it is a

factor to be considered, and in the cases in which he has held these elevated court-appointed

---

[24] *See Guidelines and Best Practices for Large and Mass-Tort MDLs*, Bolch Judicial Institute, Duke Law
School, p. 32, https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch
("Liaison counsel often has offices in the same location as the court, though that is not necessarily a
requirement. Appointing as liaison counsel an attorney who has practiced before the transferee judge can
be helpful, since the attorney will already be familiar with the local rules, the judge's practices and
preferences, and other court-specific procedures.)

leadership roles resulted in over $19 billion in settlements.  In addition, the Consensus Plaintiffs have suggested this role here, and support it.

**2.      Bryan F. Aylstock of Aylstock Witkin Kreis Overholtz PLLC Should Be Appointed as a PEC Member**

Bryan Aylstock, co-founder of the nationally recognized law firm of Aylstock, Witkin, Kreis and Overholtz, PLLC, should be appointed as a member of the PEC. Mr. Aylstock has served with distinction as lead or co-lead counsel in multiple high-profile MDLs, bringing all of them to a successful conclusion. Mr. Aylstock graduated number one in his law school section from the University of Florida College of Law and served as a senior editor of the Florida Law Review. Following law school, Mr. Aylstock clerked for the Honorable Roger Vinson, Chief Judge for the United States District Court for the Northern District of Florida. He has specialized in multi-district and class action litigation for more than 25 years and has developed substantial experience in handling complex class litigation consolidated within the multi-district mechanism. He has also authored numerous publications on various issues related to his practice. Most recently, Mr. Aylstock served as the court-appointed Lead Counsel in the 3M Combat Arms Product Liability Litigation, MDL 2885, the largest MDL in United States history. In that capacity, he was recognized for receiving one of the Top 50 verdicts in the United States in 2021 and 2022. The Honorable M. Casey Rodgers even bestowed upon him the Court's "MDL MVP" award for his litigation efforts and bringing that massive litigation to a successful resolution. Prior to that, Mr. Aylstock served as Coordinating Co-Lead Counsel helping to oversee and eventually bringing to resolution the five separate transvaginal mesh MDLs (MDLs 2187, 2325, 2326, 2327 & 2387), that were all consolidated in the Southern District of West Virginia. Taken together, those MDLs represented approximately one-third of the civil docket of the federal court system at the time. Mr. Aylstock was also appointed as Co-Lead Counsel in the *In re Avandia Marketing, Sales and*

12

*Products Liability Litigation*, MDL 1871, and as court-appointed Liaison Counsel in *In re Abilify Products Liability Litigation*, MDL 2734. He was also appointed Co-Lead Class Counsel in the recently settled class action case of *In re Johnson & Johnson Sunscreen Marketing, Sales Practices, and Products Liability Litigation*, MDL 3015, and serves as class counsel the *In re Proctor & Gamble Aerosol Products Marketing and Sales Practices Litigation* pending in the S.D. of Ohio.

Mr. Aylstock is regularly invited to speak at attorney and bench/bar conferences on issues and law school classrooms related to the handling of mass tort and class action litigation. He is widely respected by attorneys in the plaintiffs' bar and defense bar alike. He is licensed to practice in Alabama, Mississippi and Florida and before numerous federal courts, including the United States Supreme Court.

### 3.       Kiley L. Grombacher of Bradley Grombacher LLP Should Be Appointed as a Member of the Plaintiffs' Executive Committee

Kiley Grombacher should be appointed as a member of the PEC. Courts have appointed Ms. Grombacher as class counsel in more than a hundred class actions and as co-lead counsel in complex consumer class action MDLs. Additionally, Ms. Grombacher has successfully briefed and/or argued cases before appellate courts regarding issues germane to consumer class actions. Her writings on legal topics pertaining to class and representative actions have appeared in professional publications and she has been called upon to speak at conferences and seminars for professional organizations. Ms. Grombacher has also been honored as a Super Lawyer in the area of class actions by Los Angeles Magazine since 2018 and was recently honored as one of the Top 100 Women in Law and the Top 100 Plaintiff's Lawyers for the current year by the Daily Journal.

Ms. Grombacher and her firm. Bradley/Grombacher ("BG") have been actively involved in this litigation and have devoted significant resources to this action. BG has participated in phone

conferences and in-person meetings with other plaintiffs' counsel from around the country to discuss legal strategy and coordinate efforts. Additionally, BG has filed a brief with the JPML in support of consolidation and has devoted a significant amount of time working with plaintiffs' ad-hoc committees on issues that will inevitably arise during this litigation.

### 4. James E. Cecchi of Carella Byrne Cecchi Brody & Agnello, P.C Should Be Appointed as a Member of the Plaintiffs' Executive Committee

James E. Cecchi, a former federal prosecutor, should be appointed as a member of the PEC. Mr. Cecchi has held leadership positions in many of the nation's most complex and important consumer class actions affecting consumer rights in the last fifteen years and, under his leadership, the firm has returned billions of dollars to consumers. Besides securing substantial compensation for class members, Mr. Cecchi's efforts prosecuting class action cases in New Jersey and nationwide have won him the respect and esteem of fellow class action litigators across the country. As head of his firm's class action litigation practice, Mr. Cecchi has been selected to serve as lead, co-lead, liaison, and PEC member in many multidistrict litigations—cases that have resulted in significant settlements.[25] Mr. Cecchi's extensive experience encompasses prosecuting numerous pharmaceutical-related class actions in which he was either co-lead counsel or a member of the PEC, including *In re National Prescription Opiate Litig.*, *In re Vytorin/Zetia Marketing, Sales Practices and Prods. Liab. Litig.* ($41.5M), *In re Insulin Pricing Litig.* ($13.5M), and *In re Valeant Pharms. Int'l, Inc. Sec. Litigation*) ($23M).[26] These appointments reflect the confidence that other federal courts have expressed regarding his skills and professionalism in handling large and important multi-district litigation. The history of working successfully together—and the

---

[25] *See* Declaration of James E. Cecchi, attached as Ex. E at ¶ 4.
[26] *Id.*

independent experiences Carella Byrne brings to the team—certainly would enhance the strength of the leadership slate proposed to the Court.

### 5.   Adam J. Levitt of DiCello Levitt LLP Should Be Appointed as a PEC Member

Co-founder of DiCello Levitt LLP—named 2023 Plaintiffs' Law Firm of the Year by the *National Law Journal*—Adam Levitt has the credentials and the experience necessary to be appointed to the proposed PEC. His ability to build and lead winning teams and his innovative approaches to litigation strategy and willingness to lead difficult cases through trial and beyond has led to his appointment as lead or co-lead counsel in close to 25 multidistrict litigations. It has also resulted in his retention by institutional investors and multinational corporations, and his retention—through competitive bidding processes—by numerous State Attorneys General in a wide variety of matters, including by the States of Illinois and Michigan in the PFAS water contamination cases, the largest environmental litigations of our lifetime.[27] Moreover, as a court-appointed member of a leadership group characterized as a "class action dream team" in the historic litigation arising from Volkswagen's emissions scandal, Mr. Levitt helped secure a $16 billion settlement that benefitted car buyers across the United States.[28] He has also served as co-lead counsel in three of the largest biotechnology class actions in history, and, in doing so, created a game-changing economic model to measure crop contamination damages that set the modern industry standard.[29]

---

[27] *Nessel v. 3M Co., et al.*, MDL No. 2873 (D.S.C.); *Nessel v. EI DuPont de Nemours and Co.*, *et al.*, MDL No. 2873 (D.S.C.); *Nessel v. Chemguard, et al.*, MDL No. 2873 (D.S.C.); *Nessel v. Asahi Kasei Plastics N. Am. Inc.*, Case No. 20-30909-NZ (Livingston Cir. Ct.); *People ex rel. Raoul v. 3M Co.*, Case No. 22-cv-4075 (C.D. Ill.).

[28] *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 15-MD-2672 (N.D. Cal.).

[29] *In re Genetically Modified Rice Litig.*, MDL No. 1811 (E.D. Mo.); *In re Imprelis Herbicide Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2284 (E.D. Pa.); *In re StarLink Corn Prods. Liab. Litig.*, MDL No. 1403 (N.D. Ill.).

Mr. Levitt's work on behalf of plaintiffs has been recognized locally and nationally in ranking directories, including Chambers USA, where he has received a Band 1 ranking for Mainly Plaintiffs Litigation in Illinois. Chambers USA has also ranked him in Illinois for General Commercial Litigation and nationwide for Product Liability Litigation, where editors described him as the "go-to plaintiffs' attorney in the class action space." Benchmark Litigation has also repeatedly recognized him as a National Litigation Star: Securities and Litigation Star in Illinois, and Lawdragon has named him one of the 500 Leading Plaintiff Financial Lawyers and one of the 500 Leading Plaintiff Consumer Lawyers in the United States. As further confirmation of his standing in the national class action bar, Mr. Levitt writes a monthly column on class action litigation ("Arguing Class Actions") in the National Law Journal. He is also an elected member of the American Law Institute and the Economic Club of Chicago.

### 6. Elizabeth A. Fegan of Fegan Scott LLC Should Be Appointed as a PEC Member

Elizabeth Fegan is the Managing Member and founder of Fegan Scott LLC ("Fegan Scott").[30] Ms. Fegan has nearly 30 years of experience representing plaintiffs in complex and class action litigation and has successfully prosecuted similar cases, including before this Court as Co-Lead Counsel with Michael London in *In re Bayer Corp. Combination Aspirin Prod. Marketing and Sales Practices Litig.*, MDL No. 2023 (E.D.N.Y.).[31] Since founding Fegan Scott in 2019, Ms. Fegan has already achieved significant recoveries as Lead Class Counsel on behalf of consumers in several MDLs, including with Mr. London in *In re Aqueous Film-Forming Foams Products Liab. Litig.*, MDL No. 2873 (D.S.C.) (two pending class settlements valued at more than $13.5 billion), *In re Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*,

---

[30] Declaration of Elizabeth A. Fegan, attached as Ex. H, at ¶ 1.
[31] *Id.* at ¶¶ 1, 8.

MDL No. 3052 (C.D. Cal.) (preliminarily approved $200 million class settlement), and *In re Tiktok, Inc., Consumer Privacy Litig.*, MDL No. 2948 (N.D. Ill.) (final $92 million class settlement).[32] Ms. Fegan's and her firm's achievements resulted in the firm being named Law Firm of the Year in the consumer protection category at The National Law Journal's 2023 Elite Trial Lawyers Awards.[33]

Ms. Fegan's experience, tenacity, and ability to work cooperatively with attorneys on both sides of the v. have been recognized throughout the bar and the judiciary. Indeed, the Hon. John Z. Lee sua sponte appointed Ms. Fegan as Co-Lead Counsel in *In re Tiktok* based on her role in *In re NCAA Student-Athlete Concussion Injury Litig.*, No. 1:13-cv-9116 (N.D. Ill.) ($75 million medical monitoring settlement).[34] When appointing Ms. Fegan, Judge Lee remarked that "Ms. Fegan demonstrated to me during her work in the NCAA Student-Athlete Concussion MDL that she is very astute, hard-working and, perhaps most important of all in this circumstance, fair and level-headed." *Id.* In her frequent appointments as class counsel and on leadership teams, Ms. Fegan has worked with most of the plaintiffs' counsel in this litigation, including Michael London in the Combination Aspirin MDL.[35] Throughout her career, Ms. Fegan has also been a vocal advocate for female attorneys and diversity as a whole amongst leadership in MDLs.[36]

### 7. Jonathan D. Selbin of Lieff Cabraser Heimann & Bernstein LLP Should Be Appointed as a PEC Member

Jonathan Selbin is a senior partner in the New York City office of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), with almost 30 years of experience. He is widely-recognized as a

---

[32] *Id.* at ¶¶ 2-7.
[33] *Id.* at ¶ 2.
[34] *Id.* at ¶ 11.
[35] *Id.* at ¶ 8.
[36] *Id.* at ¶ 15.

leading consumer class action lawyer.[37] Courts have appointed him lead counsel in many MDL and other large complex consumer class actions, including Judge Seybert in this District, and he has briefed, argued, and obtained multiple important consumer class action appellate decisions.[38] Cases in which Mr. Selbin played a leading role have resulted in over $3.5 billion in cash paid out to class members, plus other relief such as extended and enhanced warranties.[39]

LCHB is counsel of record in the first-filed case in this District, and was first to indicate interest in seeking JPML transfer here.[40] LCHB is one of the premier plaintiffs' class and complex action firms in the country. LCHB attorneys have been appointed to lead some of the largest MDLs in history, as well as many cases within this District including before Your Honor.[41] It has obtained many tens of billions of dollars in cash in settlements and judgments, including 27 cases in which more than $1 billion was paid to class members and claimants.[42] As one court concluded in appointing LCHB to a co-lead position just weeks ago, LCHB "is a large, diversified, multi-office plaintiffs' firm that has secured significant results in a range of cases."[43] The court determined that LCHB, together with its co-counsel, can "harness the benefits of diversity" to "find solutions faster" and "generate better performance overall."[44] In this case, LCHB lawyers have been active since last Fall in cooperation with other counsel, with a particular focus on analyzing and proposing legal strategy.[45]

---

[37] Declaration of Jonathan D. Selbin, attached as Ex. I, at ¶¶1, 3-5.
[38] *Id.* at ¶¶10-11.
[39] *Id.* at ¶3.
[40] *Id.* at ¶¶13-14.
[41] *Id.* at ¶¶5-9.
[42] *Id*. at ¶6.
[43] *Id*. at ¶7.
[44] *Id*. at ¶7.
[45] *Id.* at ¶15.

### 8.   Christopher A. Seeger of Seeger Weiss LLP Should Be Appointed as a PEC Member

Christopher A. Seeger is a founding partner of Seeger Weiss LLP ("Seeger Weiss") a trial firm of approximately 40 lawyers with offices in New York, New Jersey, Pennsylvania, and Massachusetts, and is widely recognized as one of the nation's leading lawyers representing plaintiffs in complex litigation.[46] For most of his 33-year career, Mr. Seeger has represented the interests and defended the rights of individuals in products liability and consumer protection actions in multi-district litigation and class actions across a versatile range of litigation, including drug injury, product liability, property damage, third-party payer litigation, antitrust, and securities fraud.[47]

Selected by his peers or appointed by courts, Mr. Seeger has held and continues to hold leadership positions in many of the most noteworthy multi-district litigation of the past decade, including: redressing the Opioid epidemic where he directly oversaw the resolution of billions of dollars of claims against key defendants; obtaining life-changing benefits for former NFL players and their families related to potential neurological harm caused by head-hits; compensating thousands of veterans injured by 3M's defective earplugs; and bringing Volkswagen to justice in the "Clean Diesel" litigation.[48] With these leadership appointments, Mr. Seeger established himself as capable of leading elite teams pursuing claims against some of the largest corporations, including, with the Opioids litigation, litigation against an entire industry. Mr. Seeger has brought the same level of commitment and success when working to hold manufacturers and retailers of

---

[46] *See* Declaration of Christopher A. Seeger, attached as Ex. J, at ¶ 1.
[47] *Id.* at ¶ 2.
[48] *Id.* ¶¶ 1, 2.

over-the-counter medications, prescription pharmaceuticals, and medical devices accountable for years of deception as he has to these watershed cases.[49] *Id.*

### 9. Lindsey N. Scarcello of Wagstaff & Cartmell Should Be Appointed as a PEC Member

Lindsey N. Scarcello is a partner at Wagstaff & Cartmell, LLP ("W&C"), a Kansas City-based law firm with a nationwide complex litigation practice.[50] Ms. Scarcello has more than 10 years' experience litigating claims on behalf of individuals injured by corporate and professional misconduct.[51] Since joining W&C over five years ago, Ms. Scarcello has been heavily involved in several consolidated actions, including *In Re: Acetaminophen – ASD–ADHD Products Liability Litigation*, MDL 3043, where she was appointed to the PSC, and *In Re: 3M Combat Arms Earplug Products Liability Litigation*, MDL 2885, where she worked closely with plaintiffs' general liability experts and was a member of the trial team in three bellwether cases.[52]

Over the last several months, W&C has worked closely with other members of the proposed leadership slate to coordinate efforts and strategy.[53] W&C filed the first class actions against the defendants in the Western District of Missouri and the District of Kansas and filed a brief before the JPML in support of consolidation.[54] With more than 35 attorneys – the vast majority of whom specialize in complex litigation – and a substantial history of litigating against manufacturers of prescription and over-the-counter medical devices and drugs, W&C has the resources and experience to effectively prosecute this action.[55]

---

[49] *Id.*
[50] Declaration of Lindsey N. Scarcello, attached as Ex. L, at ¶ 1.
[51] *Id.* at ¶ 3.
[52] *Id.* at ¶¶ 4, 6.
[53] *Id.* at ¶ 10.
[54] *Id.* at ¶ 10.
[55] *Id.* at ¶ 5, 8.

**10.    Jason P. Sultzer of the Sultzer Law Group Should be Appointed as a PEC Member**

Jason Sultzer is the founding partner of The Sultzer Law Group, P.C. Over the past decade, Mr. Sultzer has developed The Sultzer Law Group P.C. into one of the preeminent plaintiff's class-action and complex commercial law firms in the nation with particular expertise in consumer class-actions. Mr. Sultzer has litigated and resolved dozens of consumer class actions nationwide and recovered over $1 billion dollars in class relief. The firm is particularly proud of the record it has developed within the Second Circuit and in the Eastern District of New York. Mr. Sultzer and his firm have gained a reputation for handling matters in an efficient and cost-effective manner, as this Court recently recognized in the *Bangoura* benzene contamination class action case. *See Bangoura v. Beiersdorf, Inc.*, Docket No. 22:cv-00291-BMC (E.D.N.Y.) (Your Honor observed during the final approval hearing "that the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts.").

Mr. Sultzer has earned selection as a Senior Fellow of the Litigation Counsel of America (LCA), recognizing the country's top trial attorneys, and is a member of their Trial Law and Diversity Institute. He has also been recognized as a Super Lawyer for the last ten years and was selected for Lawdragon's list of 500 Leading Plaintiff Financial Lawyers for 2019, 2020, 2021 and 2023.

**C.    The Proposed PSC Members and Assistance from Other Plaintiffs' Counsel**

As set forth above, the Consensus Plaintiff's proposed leadership plan contemplates drawing upon the expertise of the members of the Plaintiff Steering Committee to support the PEC and to provide assistance to the PEC in completing tasks necessary to prosecute this complex case. As mentioned above, in addition to the PSC appointments, the Consensus Plaintiffs anticipate the need to enlist other plaintiffs' counsel's assistance, under the PEC and PSC oversight, and have

been organizing and working with the many lawyers and law firms who have filed cases and who have agreed to work on these committees.

If the present proposal meets with the Court's approval, the PEC intends to litigate this case in an efficient and inclusive manner by dividing responsibilities according to each lawyer's skill set and interests. In particular, the PEC plans to form various subcommittees relevant to the needs of the litigation, including topics of experts, law and briefing and specific defendant discovery teams. This model has—in the PEC's experience—worked well in past, similar MDLs, including a prior MDL *In Re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation* before Your Honor.

Like the PEC, the PSC members are highly accomplished top tier lawyers. The proposed PSC members are:

### <u>PLAINTIFFS' STEERING COMMITTEE ("PSC") MEMBERS</u>

Sarah N. Wescot
Bursor & Fisher, P.A.
701 Brickell, Suite 1420
Miami, Florida 33131
Tel: 305-330-5512
swescot@bursor.com

Michael A. Sacchet
Ciresi Conlin LLP
225 South 6th Street, #4600
Minneapolis, MN 55402
Tel: 612-361-8200
MAS@CiresiConlin.com

Shireen M. Clarkson
Clarkson Law Firm P.C.
590 Madison Avenue, 21st Floor
New York, New York 10022
Tel: 213-788-4050
sclarkson@clarksonlawfirm.com

Cari C. Laufenberg
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Jordan E. Jacobson
Kessler, Topaz, Meltzer & Check, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel: 484-270-1488
jjacobson@ktmc.com

Laura S. Dunning
Levin Papantonio Rafferty Proctor
Buchanan O'Brien Barr Mougey, P.A.
316 South Baylen Street
Pensacola, Florida 32502
Tel: 850-435-7000
ldunning@levinlaw.com

Alexander E. Barnett
Cotchett, Pitre & McCarthy, LLP
40 Worth Street, Suite 602
New York, New York 10013
Tel: 212-201-6820
abarnett@cpmlegal.com

Kelsey L. Stokes
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd.
Suite 6000
Houston, Texas 77056
Tel: 713-621-7944
kstokes@fleming-law.com

Darren T. Kaplan
Kaplan Gore LLP
1359 Broadway
New York, New York 10018
Tel:404-537-3300
dkaplan@kaplangore.com

Frederick S. Longer
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Tel: 215-592-1500
flonger@lfsblaw.com

Marlene J. Goldenberg
Nigh, Goldenberg, Raso, & Vaughn PLLC
14 Ridge Square NW Third Floor
Washington D.C. 20016
Tel: (202) 792-7927
mgoldenberg@nighgoldenberg.com

Melanie H. Muhlstock
Parker Waichman LLP
6 Harbor Park Drive
Port Washington, New York 11050
Tel: 516-466-6500
mmuhlstock@yourlawyer.com

Stuart A. Davidson
Robins Geller Rudman & Dowd LLP
225 Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Tel: 561-750-3000
SDavidson@rgrdlaw.com

## IV.   CONCLUSON

As demonstrated by their actions in this litigation to date, as well as prior litigations in

which they have been involved, the Consensus Plaintiffs work cooperatively with others and build

consensus among all Plaintiffs' counsel. The attorneys comprising the proposed leadership slate

satisfy the Court's requirements, the teachings of the MANUAL FOR COMPLEX LITIGATION, and the

requirements of Rule 23(g), and possess the experience necessary to prosecute this class action

MDL litigation in a fair, efficient, and successful manner. Accordingly, the Consensus Plaintiffs

respectfully request that the Court grant their motion, appoint their proposed leadership structure,

and appoint members of the proposed PEC as Rule 23(g) Interim Class Counsel, and grant such

other and further relief as the Court deems just and proper under the circumstances.

Dated:  February 14, 2024
       New York, New York

Respectfully submitted,

/s/ Michael A. London
Michael A. London (ML-7510)
**DOUGLAS & LONDON P.C.**
59 Maiden Lane – 6th Floor
New York, New York 10038
Tel: 212-566-7500
mlondon@douglasandlondon.com

Bryan F. Aylstock
**AYLSTOCK WITKIN KREIS
OVERHOLTZ PLLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Tel: 850-202-1010
baylstock@awkolaw.com

Kiley L. Grombacher
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: 866-881-0403
kgrombacher@bradleygrombacher.com

James E. Cecchi
**CARELLA BYRNE CECCHI BRODY &
AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: 973-994-1700
jcecchi@carellabyrne.com

Adam J. Levitt
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-214-7900
alevitt@dicellolevitt.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor

Chicago, Illinois 60606
Tel: 630-273-2625
beth@feganscott.com

Jonathan D. Selbin
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: 212-355-9500
jselbin@lchb.com

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660
Tel: 888-546-8799
cseeger@seegerweiss.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza Ste. 200
Poughkeepsie, New York 12601
Tel: 845-244-5595
sultzerj@thesultzerlawgroup.com

Lindsey N. Scarcello
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Tel: 816-701-1102
lscarcello@wcllp.com

***Plaintiffs' Proposed Executive Committee and
Interim Class Counsel***