# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
IN RE: ORAL PHENYLEPHRINE MARKETING AND : 23-md-3089-BMC
SALES PRACTICES LITIGATION :
:
_____ :
:
THIS DOCUMENT APPLIES TO: :
:
ALL CASES :
:
------------------------------------------------------------------------ X

### DECLARATION OF MICHAEL A. LONDON TO SERVE AS A MEMBER AND CHAIR-PERSON OF THE PLAINTIFFS EXECUTIVE COMMITTEE

I, Michael A. London, respectfully submit this Declaration in support of the Consensus Leadership Group's[1] proposed leadership structure for this Multidistrict litigation ("MDL") and in support of my application for appointment as an Executive Committee member (chair-person) within that structure.

Since the Advisory Committee of the Food and Drug Administration ("FDA") issued its finding on September 12, 2023 – that current scientific data does not support that orally administered phenylephrine is effective as a nasal decongestant – our office has been actively involved with a large team of other lawyers from law firms around the country investigating these cases and in representing individuals who purchased these ineffective products. Indeed, of the 70 law firms that have filed cases, our office has been meeting weekly with a majority of their attorneys, even before the formation of this MDL, to address strategy and other issues that may arise in this MDL. As noted above and in the footnote below, we believe the entirety of the law firms who represent plaintiffs with filed cases in this MDL support the structure proposed by the Consensus Leadership Group.

My role in leadership of complex litigations spans the gamut of pharmaceutical, environmental, and toxic mass torts, primarily in the products liability and consumer class action setting. There are two elements of my litigation experience that I highlight below and submit are particularly germane to this litigation.

First, this is an industrywide litigation involving multiple defendants, and, as such, it will be a very large and complex litigation. As noted in the bullet points below, I have both experience

---

[1] The Consensus Leadership Group is the 22 law firms who have agreed to serve on and support this leadership structure. It also encompasses the 70 law firms with filed cases who support this leadership structure and the Consensus Leadership Group. It is likely, given the size and scope of this case (i.e. the number of defendants and number of products at issue) that many of these non-steering committee lawyers and law firms will be utilized to help perform work on behalf of the class, and the Consensus Leadership Group has confirmed that they stand ready, willing, and able to support those efforts under the direction of the Consensus Leadership Group.

in leading and resolving some of the largest MDLs and complex litigations over the past 20 years, including litigations involving multiple defendants who marketed and sold the same class of drug or similar products. Given the estimated size and breadth of this litigation, I strongly believe that I can assist the Court and plaintiffs by bringing my extensive experience in prosecuting this matter.

Second, a primary reason I believe that I have been successful at leading and resolving these large MDLs is because both my firm and I work extremely well with other plaintiffs' counsel in prosecuting these litigations to their ultimate conclusion - settlement or verdict. To this end, with respect to this MDL particularly, I have been galvanizing what I believe is a top-notch team that can do battle against some of the largest pharmaceutical companies in the world with some of the most skilled defense law firms in the world. This is not a litigation that can be prosecuted by two or three plaintiffs' firms; rather, this MDL requires the best and most experienced plaintiffs law firms in the country, and I have worked continuously over the past 30 days with other plaintiffs' counsel to ensure that the proposed leadership slate encompasses these law firms.

By way of my personal background, I am one of the founding partners of the law firm of Douglas & London, P.C., located in downtown New York City. I obtained my Bachelor of Arts degree from the University of Miami in Coral Gables, Florida, and my Juris Doctor degree from Brooklyn Law School in Brooklyn, New York. I am admitted and licensed to practice law in the States of New York and New Jersey, as well as in the United States District Courts for the Eastern District, Southern District, Western District of New York, and the District of New Jersey. Since obtaining my law degree, I have devoted my entire career (the last 25 years) to representing injury victims and consumers, primarily in mass tort and class action settings. My practice area in the law has *always* focused on, and continues to focus on, products liability and complex litigation.

I have been privileged to have been appointed to, and have served, *as lead or liaison* counsel on numerous Plaintiffs' Steering Committees in some of the largest national mass tort and complex litigations in recent years, two of which took place in this very Court. My formal lead and liaison counsel roles have been in the following matters with the following results:

- *Vice-Chair of Plaintiffs' Steering Committee* – In re: Zyprexa Prods. Liab. Litig., MDL-1596, E.D.N.Y, Hon. Jack B. Weinstein (status: resolved, $700 million settlement of approximately 8,000 claims);

- *Co-Lead Counsel*– In re: Yasmin and Yaz (Drospirenone) Mktg. Sales Practices and Prods. Liab. Litig., MDL-2100, S.D. Ill., Hon. David R. Herndon (status: resolved over 18,000 claims through individual and mass semi-confidential settlements in federal and state courts with the defendants already paying over $2 billion);

- *Co-Lead Counsel and Liaison Counsel* – In re: Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practice Litig., MDL-2023, E.D.N.Y pending before Your Honor (status: resolved, $15 million class settlement);

- *Co-Lead Counsel* – In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig., MDL-2385, S.D. Ill, Hon. David R. Herndon (status: resolved, $650 million settlement of approximately 4,000 claims);

- *Liaison Counsel and Plaintiffs' Executive Committee Member* – <u>In re: Ortho Evra Prods. Liab. Litig.</u>, MDL-1742, N.D.O.H., Hon. David S. Katz (status: resolved, individual confidential settlements of approximately 3,000 claims in federal and state courts);

- *Co-Liaison Counsel* – <u>In re: Levaquin Litig.</u>, Case No. 286, Hon. Carol E. Higbee, N.J. Super. (Atlantic Cnty.) (status: resolved, individual confidential settlements of hundreds of claims in federal and state courts);

- *Co-Lead Counsel* – <u>In re: E.I. du Pont de Nemours and Company C-8 Pers. Injury Litig.</u>, MDL-2433, S.D. Ohio, Hon. Edmund A. Sargus, Jr. (status: resolved, $671 million settlement of approximately 3,600 claims followed by additional $50 million plus settlement of newly diagnosed injuries);

- *Co-Lead Counsel* – <u>In re: Invokana (Canagliflozin) Prods. Liab. Litig.</u>, MDL-2750, D.N.J Hon. Brian Martinotti, (status: resolved, individual confidential settlements of thousands of claims in federal and state courts));

- *Co-Lead Counsel* – <u>In re: Aqueous Film-Forming Foams Prods. Liab. Litig.</u>, MDL-2873, D.S.C., Hon Richard M. Gergel (status: industrywide MDL resolved in part with over $13.6 billion in settlements pending as to two primary defendants).

- *Co-Lead Counsel* – <u>In re: Hair Relaxer Mktg. Sales Practices and Prods. Liab. Litig.</u>, MDL-3060, ND Ill., Hon. Mary Rowland (status: active industrywide MDL)

Additionally, while not appointed a lead counsel position, I have been designated by my colleagues and appointed to serve as chair-person of Plaintiff Executive Committees in two large mass tort cases: <u>In re: Testosterone Replacement Therapy Prods. Liab. Litig.</u>, MDL 2545, ND Ill., Hon. Matthew F. Kennelly (status: resolved five defendant industrywide MDL); and <u>In re: Davol, Inc./ C.R. Bard, Inc. Polypropylene Hernia Mesh Prods. Liab. Litig.</u>, MDL 2846., S.D. Ohio, Hon. Edmund A. Sargus, Jr. (status: active/advanced through three of four bellwether trials). [2]

It is also important to highlight, and I am quite proud of the fact, that in nine of the ten above litigations in which I served in a heightened role as co-lead or liaison counsel, each was resolved efficiently through settlements in a non-protracted manner. Indeed, in eight of the MDLs resolutions were accomplished in the span of 18 to 37 months from when MDL centralization occurred until announcement of settlement parameters. The ninth MDL - <u>In re: Aqueous Film-Forming Foams Prods. Liab. Litig.</u> – in which I serve as co-lead counsel, is one of the largest and most complex mass torts in history. As noted above, the first $13.6 billion in settlements took slightly longer (in-part due to the Pandemic) and was achieved within 54 months of the MDL being created. The tenth MDL - <u>In re: Hair Relaxer Mktg. Sales Practices and Prods. Liab. Litig.</u> - is in its infancy (under 10 months old).

Not only have I held the court-appointed positions as set forth above, I have also been involved in other complex litigations in various committee roles, including serving on discovery committees, expert committees, law and briefing committees, and class action committees.

---

[2] Over the course of my career, I have also been appointed to serve on Plaintiffs Steering Committees in seven other MDLs around the country.

3

Additionally, I have represented hundreds of women exposed in utero to the drug DES with most of those actions filed here in the Eastern District of New York. I also have represented people and families who were victims of other toxic and mass torts for which formal Plaintiffs' Steering Committees were not established, including representing hundreds of individuals who were injured as a result of the September 11, 2001 bombings of the World Trade Center in the World Trade Center Disaster Site Litig., representing individuals who suffered from glenohumeral chondrolysis in In re: Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig., and representing children and families who were victims of the Chorionic Villi Sampling ("CVS") device/procedure, and others.

I have served as trial counsel in multiple tobacco trials, including the *first* successful verdict against the tobacco industry in the state of New York, where I and one of my law firm partners, Gary Douglas, secured a $20 million plus verdict for the widow of a former smoker. In addition to the tobacco trials, my firm has been involved in many other significant and substantial trials both in New York State and nationally, many of which were ground-breaking products liability verdicts.[3]

The Manual on Complex Litigation refers to certain criteria attorneys seeking leadership positions should meet. These criteria include: (1) willingness and ability to commit to a time-consuming process; (2) ability to work cooperatively with others; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner. (*See* Sections 10.22 and 40.1 of the *Manual for Complex Litigation* (4th ed.).) Your undersigned submits the following responses to these relevant factors:

- I have the willingness and ability to commit the necessary time to advance this litigation in a timely manner. As identified above, I have been involved in leadership of largescale MDLs and I fully appreciate what is needed and required. I am prepared to commit to same of myself and my law firm.

- I respectfully submit that I work well with others in a cooperative and efficient manner. Indeed, both my firm and I have a proven track record of working extremely well with other co-counsel on Steering Committees as well as our adversaries in a respectful and collegial manner. Moreover, I have significant experience litigating against many of the pharmaceutical companies named in these cases and have what I would categorize as a strong work relationship with some of their senior civil litigation and in-house counsel.

- As demonstrated above by way of my professional experience, I and my law firm consistently engage in large scale, multi-district litigation and complex litigation against corporate defendants represented by highly skilled and well-heeled defense counsel, and we have never shied away from our responsibilities to provide both financial resources and people power to any litigation. In addition, given my experience as Class Counsel in In re: Bayer Corp. Combination

---

[3] These successful trials by various firm partner Gary Douglas include receiving one of the *first* verdicts against Chrysler in airbag litigation; trying and winning the first Fosamax osteonecrosis of the jaw case in the country; serving as co-lead trial counsel in the first three C-8 cancer cases (part of MDL-2433), all resulting in plaintiff verdicts; serving as trial counsel in the only successful *Xarelto* case to go to trial, resulting in a $27 million plaintiff verdict from the jury; and firm partner Stephanie O'Connor playing a pivotal role in the first *Actos* MDL trial where the trial team secured a $9 billion verdict against the defendants; and serving as a member of the initial trial team in the *Testosterone* MDL, securing a $140 million verdict.

4

<u>Aspirin Prods. Mktg. and Sales Practice Litig.</u>, MDL-2023, a MDL and class case with substantially similar efficacy allegations to the present MDL, certain strategies, experiences, and legal issues there will be relevant to issues we anticipate in this MDL

- My firm has sufficient resources to advance the litigation. We have been operating as a law firm for over 20 years and have been involved in many significantly largescale cases. We both appreciate and are committed to allocating the necessary resources to advance this case. Further, our law firm is self-capitalized/self-funded and has *no* non-recourse funding arrangements with any third parties.

In sum, based upon my experience, track-record, and results leading similar mass tort/complex cases, which includes building and efficiently managing Steering Committees, as I have sought to do here, as well as the proven results that our firm delivers, I respectfully submit that your undersigned is suited to serve as a member and Chair-person of the Plaintiffs Executive Committee or in whatever role the Court deems most appropriate. If appointed, I look forward to serving the Court and working with the other lawyers and law firms, who will bring their own unique contributions to this litigation, so that together we can build a litigation-specific law firm to prosecute this litigation on behalf of our clients and our common interests.

Dated: January 23, 2024

_____

Michael A. London