# EXHIBIT E

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
                                                                        :
IN RE: ORAL PHENYLEPHRINE MARKETING AND                                 :   23-md-3089-BMC
SALES PRACTICES LITIGATION                                              :
                                                                        :
                                                                        :
THIS DOCUMENT APPLIES TO:                                               :
                                                                        :
ALL CASES                                                               :
                                                                        :
----------------------------------------------------------------------- X
```

# DECLARATION OF JAMES E. CECCHI IN SUPPORT OF THE CONSENSUS LEADERSHIP GROUP'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL

I, James E. Cecchi, declare as follows:

1. I am a partner with the law firm of Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne"). I represent Plaintiffs Erin Barton, Kimberly Buscaglia, Frances W. Catanese, and Samuel Gallo in the above-captioned multidistrict litigation ("MDL"), and was among the first filed cases seeking class relief for consumers who purchased oral phenylephrine decongestants.

2. I respectfully submit this Declaration in support of the Consensus Leadership Group's[1] proposed leadership structure for this multidistrict litigation and in support of my appointment as Interim Class Counsel as an Executive Committee member within that structure. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration, and

---

[1] The Consensus Leadership Group is comprised of the law firms who have agreed to either serve formally or support this leadership structure without a formal appointment. Of note, it is likely, given the size and scope of this case (the number of defendants and products at issue), many of the non-formally appointed lawyers and law firms will be utilized to help perform work on behalf of the class, and the Consensus Leadership Group has confirmed that they stand ready, willing, and able to support those efforts under the Consensus Leadership Group's guidance. Indeed, Committee structures of these lawyers and law firms are already taking shape beneath the Consensus leadership Group, but obviously their official roles are pending final appointment.

could testify competently to them.

3.  **Background and Experience.** Before entering private practice, I clerked for the Honorable Nicholas H. Politan in the District of New Jersey and then served as an Assistant United States Attorney ("AUSA") in Newark, New Jersey under the direction of United States Attorney Michael Chertoff. As an AUSA, I prosecuted numerous complex criminal matters, including international money laundering cases, drug smuggling cases, gun trafficking cases, and political corruption cases. Through these experiences, I developed skills as an effective trial advocate and as a dogged investigator—skills that have proven immensely valuable in complex MDL cases. My experience as a former Assistant United States Attorney is a distinguishing factor that, I believe, adds to the already diverse nature of our proposed Consensus Leadership Group – a group which consists of attorneys from all areas of the country and of various genders and backgrounds.

4.  During the course of practice, I have had the privilege to be in some of the largest national and complex litigations in recent year. Highlights of my formal leadership and committee roles on behalf of Plaintiffs in these important cases include:

- Member of Steering Committee and served as Settlement Class Counsel - *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.), which ended in a settlement in excess of $15 billion.

- Member of Steering Committee and served as Settlement Class Counsel - *In re: Takata Airbag Products Liability Litigation*, MDL No. 2599 (S.D. Fla.), which has, to date, resulted in settlements in excess of $1.5 billion.

- Member of Plaintiffs' Executive Committee - *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio), which included a proposed $26 billion settlement with the nation's largest drug distributors and Johnson & Johnson.

- Sole Lead Counsel - *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, MDL No. 2904 (D.N.J.), which is ongoing.

- Co-Lead Counsel and Liaison Counsel - *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (D.N.J.) (Hon. Dennis

M. Cavanaugh); *In re Schering-Plough/Enhance Securities Litigation*, Civil Action No.: 08-cv-397 (D.N.J.) (Hon. Dennis M. Cavanaugh); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, Civil Action No.: 08-cv-2177 (D.N.J.), which ended in settlement for the consumer cases of $41,500,000, and for the securities cases $688,000,000.

- Interim Co-lead Counsel - *In re: Mercedes-Benz Emissions Litigation*, Civil Action No. 16-cv-881 (D.N.J.), which ended in a settlement with value in excess of $700,000,000.

- Lead Counsel - *In re: Liquid Aluminum Sulfate Antitrust Litigation*, MDL No. 2687 (D.N.J.), which secured a settlement of greater than $100,000,000.

- Co-Lead Counsel - *In re: Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914 (D.N.J.), which secured a settlement of $40,000,000.

- Co-Lead Counsel - *Davis Landscape v. Hertz Equipment Rental*, Civil Action No. 06-cv-3830 (D.N.J.), which secured a settlement valued at over $50,000,000.

- Sole Lead Counsel - *In re: Samsung Customer Data Security Breach Litigation*, MDL No. 3055 (D.N.J.), which is ongoing.

- Co-Lead Counsel - *In re Insulin Pricing Litigation*, 17-cv-699 (D.N.J), which is ongoing.

5. These appointments reflect the confidence that other federal courts have expressed regarding my skills and professionalism in handling large and important multi-district litigation.[2]

---

[2] *See, e.g., In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, No. 16-3087, 2022 WL 525807, at *5 (D.N.J. Feb. 22, 2022) (finding that Carella Byrne as "Lead Counsel has extensive experience and expertise in litigating complex class actions") (citing cases); *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2021 WL 7833193, at *9 (D.N.J. Aug. 2, 2021) (characterizing Carella Byrne and two other firms as "qualified and experienced in complex class litigation and who have resources, zeal, and a successful record in class cases"); *Sapir v. Averback*, No. 14-07331, 2015 WL 858283, at *3 (D.N.J. Feb. 26, 2015) ("Carella Byrne, Cecchi, Olstein, Brody & Agnello, P.C., is a well-respected law firm, and its attorneys have experience litigating complex commercial actions."); *Thomas v. Gerber Prod. Co.*, No. 12-1098, 2012 WL 1606627, at *2 (D.N.J. May 8, 2012) ("[I]t is clear that Carella Byrne has sufficiently demonstrated its qualifications as experienced litigators in the area of class action and complex litigation," and "has extensive experience in class action litigation dealing with consumer fraud[.]"); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 176 (D.N.J. 2008) ("Carella Byrne has extensive class-action experience in class actions involving cases" and "are proven, high-powered litigators involved in some of the most complex class-action lawsuits in the country[.]").

6.    As the Court is aware, the essential focus of this MDL is on the false marketing and sale of an oral decongestant that – according to plaintiffs – defendants were well aware was not effective as marketed. I have significant experience prosecuting these type of pharmaceutical class actions, including as in *In re National Prescription Opiate Litigation*, *In re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, and *In re Insulin Pricing Litigation*. The *Vytorin* case – which involved both consumer and securities claims – is directly analogous to the claims alleged here. The lessons we learned successfully prosecuting that action are, therefore, directly transferable here.

7.    The Opioid MDL is also particularly instructive. While the underlying claims in that case were asserted on behalf of municipalities, the need to learn the science and mechanism of action of the subject drugs is a skill set also directly transferable to this case, as it will involve a similar pharmaceutical scientific analysis. In the Opioid MDL specifically, Carella Byrne was entrusted with prosecuting all distribution and proscribing claims against Walmart, the world's largest retailer and one of the most determined and entrenched defendants in the MDL. After years of litigation, Walmart reached a national settlement of over $4 billion. Carella Byrne was also part of the Opioid trial team that achieved the first trial victory in federal court. To date, the plaintiffs in National Prescription Opiate litigation have secured settlements of over $50 billion – an amount to be used solely to abate the ongoing opioid crisis. We are particularly proud of our achievements in the Opioid MDL and believe that our experience working collaboratively with a large, talented Plaintiffs Steering Committee in that case demonstrates our ability to work effectively as interim class counsel within the Executive Committee of the proposed Consensus Leadership Group.

8.    I am also intimately involved in the litigation against the manufacturers of insulin for their unconscionable pricing practices in the District of New Jersey. In 2017, co-counsel and

I filed a putative class action lawsuit on behalf of individual insulin users against the manufacturers that has survived motion to dismiss briefing and we are presently awaiting a decision on our motion for class certification. That case has involved extensive motion practice, multiple amended complaints, numerous discovery disputes, dozens of depositions, voluminous document review, and most recently, a lengthy oral argument on the pending motion for class certification. More recently, in 2023, the Judicial Panel on Multidistrict Litigation consolidated an MDL proceeding in the District of New Jersey. *In Re: Insulin Pricing Litigation*, MDL No. 3080 (D.N.J.). Many of the cases consolidated in that MDL, including those brought by state attorneys general, have substantially relied upon the discovery, investigation, and legal theories we have been developing over the last six years of hard-fought litigation.

9. I have also developed expertise in prosecuting automotive defect cases, including some of the largest in the nation's history. In *In re Mercedes Emissions*, we, along with co-counsel, independently tested the suspect Mercedes vehicles and developed the factual record supporting the operative civil complaints. As such, unlike other diesel emissions cases, this case was proprietary as the work done by my team and co-counsel preceded the ultimate government investigation of Mercedes. After five years of hard-fought litigation, the case settled for a value of $800,000,000. My firm has been involved in the lion's share of cases brought against automobile manufacturers for their fraudulent practices regarding vehicle emissions, including cases brought against General Motors, BMW, and Fiat Chrysler, among others. *See In re: Duramax Diesel Litigation*, Civil Action No: 17-cv-11661 (E.D. Mich.) (GM); *Counts v. General Motors, LLC*, Civil Action No: 16-cv-12541 (E.D. Mich.); *Rickman v. BMW of North America, LLC*, Civil Action No: 18-4363 (D.N.J.) (BMW); *Bledsoe v. FCA US LLC*, Civil Action No: 16-14024 (E.D. Mich.) (Fiat Chrysler).

10.     Other notable appointments in the automotive sector include the *In re: Volkswagen "Clean Diesel"* case (17-MD-2672 (N.D. Cal.)), and *Takata Airbag Products Liability Litigation* (15-MD-2599 (S.D. Fla.)).  The Court is no doubt aware of these cases and the outstanding results achieved in them.  In *Volkswagen*, I was appointed to the Plaintiffs' Steering Committee by the Honorable Charles H. Breyer.  The *Volkswagen* case settled for approximately $15 billion.  One of my particular tasks in *Volkswagen* was spearheading the investigation into the destruction of relevant evidence by Volkswagen's co-defendant Bosch GmbH.  This task involved careful forensic and investigative skills of the exact type relevant to understanding and exposing the Defendants' knowledge and internal findings regarding orally administered phenylephrine.  *Takata* is no less noteworthy.  Takata remains the largest automobile recall in the nation's history.  The defect in Takata was the use of an ammonium nitrate propellant which detonated over time and had the propensity to explode with devastating force.  I was one of six lawyers appointed to lead the massive *Takata* case by the Honorable Federico Moreno in the Southern District of Florida. The settlements reached in *Takata* exceed $5 billion and are among the largest ever reached in an automobile defect case.

11.     Another notable matter was the successful prosecution of a consumer fraud case against Global Tele-Link, the exclusive provider of telephone services to New Jersey prisoners and their families. *James v. Global Tel*Link, et al.*, Case No. 13-4989 (D.N.J.).  In *GTL*, Plaintiffs alleged – and proved – that the prices GTL charged for telephone services constituted price gouging as GTL rates were many times the rates normal citizens pay for similar telephone services.  We ultimately secured the certification of a class of prisoners and family members under New Jersey's Consumer Fraud Act, specifically the little-used provision governing unconscionability -

a little used prong of the statue. The case settled on the verge of trial in 2020, resulting in significant refunds to both the prisoner class and the family member class.

12. I am also committed to the importance of pro bono work. Our firm is pro-bono counsel in at least five matters pending in the District of New Jersey on behalf of prisoners alleging various claims mainly stemming from prison abuse.

13. To date, the Consensus Leadership Group's proposed Executive Committee has undertaken significant efforts to organize and move this litigation efficiently forward since the Advisory Committee of the Food and Drug Administration ("FDA") issued its finding on September 12, 2023 – *i.e.*, that current scientific data does not support that orally administered phenylephrine is effective as a nasal decongestant. We have been collaboratively working with a large team of lawyers from law firms around the country investigating these cases. Indeed, our office has been in constant contact with a majority of them, even before the formation of this MDL, to address strategy and other issues that may arise in this MDL. As noted above, the overwhelming majority of them support the structure proposed by the Consensus Leadership Group. The almost unanimous support we enjoy demonstrates our effective leadership and organizational skills as well as the confidence other counsel repose in our ability to effectively prosecute this MDL on behalf of the proposed class.

14. **Willingness and ability to commit to time-consuming litigation.** I would lead the team of attorneys from Carella Byrne working on this matter. Donald Ecklund and Kevin Cooper – partners from Carella Byrne with substantial experience litigating pharmaceutical class actions – have committed to work on this matter. The firm will commit time to this matter to the fullest extent necessary and will utilize the extensive resources—both financial and human—of Carella Byrne to work effectively with co-counsel and defense counsel to bring this litigation to

an appropriate and just resolution.

15. **Willingness and ability to work cooperatively with other plaintiffs' counsel and defense counsel.** Through my many leadership appointments, I have earned a reputation for the zealous and vigorous representation of my clients and, equally important, my ability to work collegially with opposing counsel, not only in the litigation context but also in the settlement context. This is an important data point because resolving a complex class action requires the trust not only of your co-counsel but also of your adversary. You need a good partner—on both sides of the caption—to achieve fair and balanced settlements. I value my reputation as a trustworthy partner in any negotiation. Still, I am, when appropriate, fully prepared to prosecute my cases through trial and appeal.

16. **Access to resources to prosecute the litigation in a timely manner.** Carella Byrne has financed and litigated some of the largest class actions in the country, demonstrating its willingness and ability to shoulder the burden of sustained litigation without the use of litigation funders. The firm, for instance, has invested over $4 million in the Opioid MDL. Our experience in these matters allows us to fully appreciate the commitment required to prosecute this case – a commitment which we look forward to meeting in light of the vital subject matter involved and its potential impact on current and future generations.

17. Moreover, Carella Byrne and its attorneys are prepared to prosecute their cases through trial and, as we did in two critical cases, to the United States Supreme Court – where we obtained landmark decisions regarding preemption and statute of limitations. *See Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019); *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010). Carella Byrne is fully committed to this case and will devote the time and resources necessary to litigate it to a successful resolution whether by settlement or trial.

18. In conclusion, my experience in other cases of national significance has prepared me and my team for the unique challenges that are sure to arise here, both in the litigation context and in any potential nationwide resolution.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 18th day of January 2024, in Roseland, New Jersey.

_/s/ James E. Cecchi_
James E. Cecchi