# EXHIBIT T

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | Case No. 1:23-md-3089-BMC<br>Brian M. Cogan District Judge |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | **DECLARATION OF JORDAN E. JACOBSON** |

**DECLARATION OF JORDAN E. JACOBSON IN SUPPORT OF THE CONSENSUS LEADERSHIP GROUP'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL**

I, Jordan E. Jacobson, declare as follows:

1.      I am an associate in the law firm Kessler Topaz Meltzer & Check, LLP ("KTMC") and a member in good standing of the bars of the States of Pennsylvania, California, and Virginia. I am one of the counsel for Plaintiffs Shawn L. Thomas and Charles Geoffrey Woods in *Thomas v. Kenvue, Inc.*, No. 1: 23-cv-09303-BMC (E.D.N.Y.).

2.      I respectfully submit this Declaration in support of the Consensus Leadership Group's proposed leadership structure for this multidistrict litigation and for my appointment as an Executive Committee member within that structure. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration, and could testify competently to them.

**PERSONAL AND FIRM BACKGROUND AND EXPERIENCE**

3.      I graduated from Georgetown University Law School in 2014 and clerked for the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in the Central District of California 2014-2017. I have worked at KTMC since April 2020.  I have substantial experience

litigating large, complex class actions, especially consumer class actions. Cases in which I personally played a role resulted in judgments and/or court-approved class action settlements.

4.    KTMC is a national law firm with offices in Radnor, Pennsylvania and San Francisco, California.  KTMC's practice focuses on complex and class action litigation. Attached as Exhibit A to this Declaration is a true and correct copy of KTMC's current firm resume, showing some of the firm's experience in complex and class litigation.

5.    KTMC has been appointed lead or co-lead counsel in numerous litigations, and obtained many billions of dollars in cash in settlements and judgments. A few examples include:

a.    *In re Bank of Am. Corp. Secs., Derivative, and ERISA Litig*., No. 1:09-md-2058 (S.D.N.Y.), in which KTMC served as co-lead counsel in the litigation over, *inter alia*, violations of federal securities laws related to Bank of America's merger with Merrill Lynch & Co., which resulted in a $2.425 billion settlement.

b.    *In re: Flonase Antitrust Litigation*, No. 08-cv-3149 (E.D. Pa.), in which KTMC served as lead counsel on behalf of direct purchasers in the litigation over an alleged anticompetitive scheme to delay the introduction of less expensive generic versions of Flonase, a highly popular allergy drug, and obtained a $150 million settlement on the eve of trial.

c.    *In re Southern Peru Copper Corp. Derivative Litigation, Consol*. CA No. 961-CS (Del. Ch. 2011), in which KTMC was co-lead counsel and obtained a landmark $2 billion post-trial decision.

6.    Throughout its history, KTMC has demonstrated its willingness and ability to commit to time-consuming litigation and settlement processes; demonstrated its willingness and ability to work cooperatively and efficiently with others; obtained substantial professional

experience in leading this type of litigation; and shown that it has access to sufficient resources to advance the litigation in a timely manner.

7.    Within this District, KTMC has served as co-lead counsel in large class and complex cases including:

    a.    *In re Computer Associates Sec. Litig.*, No. 02-CV-1226 (E.D.N.Y. 2002), in which KTMC served as co-lead counsel and obtained a settlement of $150 million in cash and stock from the defendant.

8.    I personally have played an active role in large complex class cases where KTMC has obtained notable results. A few examples include:

    a.    *Electrical Welfare Trust Fund v. United States*, No. 1:19-cv-00353 (Fed. Cl.), in which KTMC, serving as lead class counsel, obtained a $185 million judgment against the U.S. government for its wrongful seizure of funds from the class.

    b.    *Elegant Massage v. State Farm Mut. Auto. Ins. Co*., No. 2:20-cv-00265 (E.D. Va.), litigation on behalf of Virginia businesses asserting business interruption claims against State Farm Mutual Automobile Insurance Company—one of the only COVID-related business interruption cases to survive a motion to dismiss and obtain class certification.

9.    Throughout the prosecution of its cases, KTMC advances the costs to litigate and the attorney time to prosecute them, without litigation funding and with no guarantee of recovery. We are prepared to do so again here.

## **THIS LITIGATION**

10.    KTMC is one of counsel of record in *Thomas v. Kenvue, Inc.*, No. 1: 23-cv-09303-BMC (E.D.N.Y.).

11.    Over the last several months, KTMC has worked cooperatively and efficiently with co-counsel, to begin to prepare this case both procedurally and substantively, with a particular focus on legal strategy, and we are fully prepared to litigate the case through to trial if necessary.

12.    I am leading the KTMC team in this case, and will ensure that it is litigated effectively and efficiently both internally and in cooperation with co-counsel, without duplication of work and effort.

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed this 18th day of January, 2024, at Lansdale, Pennsylvania.

_____
Jordan E. Jacobson

# EXHIBIT 1



## FIRM PROFILE

Since 1987, Kessler Topaz Meltzer & Check, LLP has specialized in the prosecution of securities class actions and has grown into one of the largest and most successful shareholder litigation firms in the field. With offices in Radnor, Pennsylvania and San Francisco, California, the Firm is comprised of 94 attorneys as well as an experienced support staff consisting of over 80 paralegals, in-house investigators, legal clerks and other personnel. With a large and sophisticated client base (numbering over 350 institutional investors from around the world -- including public and Taft-Hartley pension funds, mutual fund managers, investment advisors, insurance companies, hedge funds and other large investors), Kessler Topaz has developed an international reputation for excellence and has extensive experience prosecuting securities fraud actions. For the past several years, the National Law Journal has recognized Kessler Topaz as one of the top securities class action law firms in the country. In addition, the Legal Intelligencer recently awarded Kessler Topaz with its Class Action Litigation Firm of The Year award. Lastly, Kessler Topaz and several of its attorneys are regularly recognized by Legal500 and Benchmark: Plaintiffs as leaders in our field.

Kessler Topaz has recovered billions of dollars in the course of representing defrauded shareholders from around the world and takes pride in the reputation we have earned for our dedication to our clients. Kessler Topaz devotes significant time to developing relationships with its clients in a manner that enables the Firm to understand the types of cases they will be interested in pursuing and their expectations. Further, the Firm is committed to pursuing meaningful corporate governance reforms in cases where we suspect that systemic problems within a company could lead to recurring litigation and where such changes also have the possibility to increase the value of the underlying company. The Firm is poised to continue protecting rights worldwide.

**OFFICES:**

**PENNSYLVANIA**

(HEADQUARTERS)
280 King of Prussia Road,
Radnor, PA 19087
Direct: 610-667-7706
Fax: 610-667-7056
info@ktmc.com

**CALIFORNIA**

One Sansome Street,
Suite 1850,
San Francisco, CA 94104
Direct: 415-400-3000
Fax: 415-400-3001

ktmc.com

# NOTEWORTHY ACHIEVEMENTS 

*During the Firm's successful history, Kessler Topaz has recovered billions of dollars for defrauded stockholders and consumers. The following are among the Firm's notable achievements:*

## SECURITIES FRAUD LITIGATION

*In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* Master File No. 09 MDL 2058: (S.D.N.Y. 2009)
Kessler Topaz, as Co-Lead Counsel, brought an action on behalf of lead plaintiffs that asserted claims for violations of the federal securities laws against Bank of America Corp. ("BoA") and certain of BoA's officers and board members relating to BoA's merger with Merrill Lynch & Co. ("Merrill") and its failure to inform its shareholders of billions of dollars of losses which Merrill had suffered before the pivotal shareholder vote, as well as an undisclosed agreement allowing Merrill to pay up to $5.8 billion in bonuses before the acquisition closed, despite these losses. On September 28, 2012, the Parties announced a $2.425 billion case settlement with BoA to settle all claims asserted against all defendants in the action which has since received final approval from the Court. BoA also agreed to implement significant corporate governance improvements. The settlement, reached after almost four years of litigation with a trial set to begin on October 22, 2012, amounts to 1) the sixth largest securities class action lawsuit settlement ever; 2) the fourth largest securities class action settlement ever funded by a single corporate defendant; 3) the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; 4) the single largest securities class action settlement ever resolving a Section 14(a) claim (the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation); and 5) by far the largest securities class action settlement to come out of the subprime meltdown and credit crisis to date.

*In re Tyco International, Ltd. Sec. Litig.,* No. 02-1335-B (D.N.H. 2002):
Kessler Topaz, which served as Co-Lead Counsel in this highly publicized securities fraud class action on behalf of a group of institutional investors, achieved a record $3.2 billion settlement with Tyco International, Ltd. ("Tyco") and their auditor PricewaterhouseCoopers ("PwC"). The $2.975 billion settlement with Tyco represents the single-largest securities class action recovery from a single corporate defendant in history. In addition, the $225 million settlement with PwC represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history.

The action asserted federal securities claims on behalf of all purchasers of Tyco securities between December 13, 1999 and June 7, 2002 ("Class Period") against Tyco, certain former officers and directors of Tyco and PwC. Tyco is alleged to have overstated its income during the Class Period by $5.8 billion through a multitude of accounting manipulations and shenanigans. The case also involved allegations of looting and self-dealing by the officers and directors of the Company. In that regard, Defendants L. Dennis Kozlowski, the former CEO and Mark H. Swartz, the former CFO have been sentenced to up to 25 years in prison after being convicted of grand larceny, falsification of business records and conspiracy for their roles in the alleged scheme to defraud investors.

As presiding Judge Paul Barbadoro aptly stated in his Order approving the final settlement, "[i]t is difficult to overstate the complexity of [the litigation]." Judge Barbadoro noted the extraordinary effort required to pursue the litigation towards its successful conclusion, which included the review of

more than 82.5 million pages of documents, more than 220 depositions and over 700 hundred discovery requests and responses. In addition to the complexity of the litigation, Judge Barbadoro also highlighted the great risk undertaken by Co-Lead Counsel in pursuit of the litigation, which he indicated was greater than in other multi-billion dollar securities cases and "put [Plaintiffs] at the cutting edge of a rapidly changing area of law." In sum, the Tyco settlement is of historic proportions for the investors who suffered significant financial losses and it has sent a strong message to those who would try to engage in this type of misconduct in the future.

*In re Tenet Healthcare Corp. Sec. Litig.,* No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002):
Kessler Topaz served as Co-Lead Counsel in this action. A partial settlement, approved on May 26, 2006, was comprised of three distinct elements: (i) a substantial monetary commitment of $215 million by the company; (ii) personal contributions totaling $1.5 million by two of the individual defendants; and (iii) the enactment and/or continuation of numerous changes to the company's corporate governance practices, which have led various institutional rating entities to rank Tenet among the best in the U.S. in regards to corporate governance. The significance of the partial settlement was heightened by Tenet's precarious financial condition. Faced with many financial pressures — including several pending civil actions and federal investigations, with total contingent liabilities in the hundreds of millions of dollars — there was real concern that Tenet would be unable to fund a settlement or satisfy a judgment of any greater amount in the near future. By reaching the partial settlement, we were able to avoid the risks associated with a long and costly litigation battle and provide a significant and immediate benefit to the class. Notably, this resolution represented a unique result in securities class action litigation — personal financial contributions from individual defendants. After taking the case through the summary judgment stage, we were able to secure an additional $65 million recovery from KPMG – Tenet's outside auditor during the relevant period – for the class, bringing the total recovery to $281.5 million.

*In re Wachovia Preferred Securities and Bond/Notes Litigation,* Master File No. 09 Civ. 6351 (RJS) (S.D.N.Y. 2009):
Kessler Topaz, as court-appointed Co-Lead Counsel, asserted class action claims for violations of the Securities Act of 1933 on behalf of all persons who purchased Wachovia Corporation ("Wachovia") preferred securities issued in thirty separate offerings (the "Offerings") between July 31, 2006 and May 29, 2008 (the "Offering Period"). Defendants in the action included Wachovia, various Wachovia related trusts, Wells Fargo as successor-in-interest to Wachovia, certain of Wachovia's officer and board members, numerous underwriters that underwrote the Offerings, and KPMG LLP ("KPMG"), Wachovia's former outside auditor. Plaintiffs alleged that the registration statements and prospectuses and prospectus supplements used to market the Offerings to Plaintiffs and other members of the class during the Offerings Period contained materially false and misleading statements and omitted material information. Specifically, the Complaint alleged that in connection with the Offerings, Wachovia: (i) failed to reveal the full extent to which its mortgage portfolio was increasingly impaired due to dangerously lax underwriting practices; (ii) materially misstated the true value of its mortgage-related assets; (iii) failed to disclose that its loan loss reserves were grossly inadequate; and (iv) failed to record write-downs and impairments to those assets as required by Generally Accepted Accounting Principles ("GAAP"). Even as Wachovia faced insolvency, the Offering Materials assured investors that Wachovia's capital and liquidity positions were "strong," and that it was so "well capitalized" that it was actually a "provider of liquidity" to the market. On August 5, 2011, the Parties announced a $590 million cash settlement with Wells Fargo (as successor-in-interest to Wachovia) and a $37 million cash settlement with KPMG, to settle all claims asserted against all defendants in the action. This settlement was approved by the Hon. Judge Richard J. Sullivan by order issued on January 3, 2012.

*In re Initial Public Offering Sec. Litig.,* Master File No. 21 MC 92 (SAS) (S.D.N.Y. 2001):
This action settled for $586 million on January 1, 2010, after years of litigation overseen by U.S. District Judge Shira Scheindlin. Kessler Topaz served on the plaintiffs' executive committee for the case, which was based upon the artificial inflation of stock prices during the dot-com boom of the late 1990s that led to the collapse of the technology stock market in 2000 that was related to allegations of laddering and excess commissions being paid for IPO allocations.

*In re Longtop Financial Technologies Ltd. Securities Litigation,* No. 11-cv-3658 (S.D.N.Y. 2011):
Kessler Topaz, as Lead Counsel, brought an action on behalf of lead plaintiffs that asserted claims for violations of the federal securities laws against Longtop Financial Technologies Ltd. ("Longtop"), its Chief Executive Officer, Weizhou Lian, and its Chief Financial Officer, Derek Palaschuk. The claims against Longtop and these two individuals were based on a massive fraud that occurred at the company. As the CEO later confessed, the company had been a fraud since 2004. Specifically, Weizhou Lian confessed that the company's cash balances and revenues were overstated by hundreds of millions of dollars and it had millions of dollars in unrecorded bank loans. The CEO further admitted that, in 2011 alone, Longtop's revenues were overstated by about 40 percent. On November 14, 2013, after Weizhou Lian and Longtop failed to appear and defend the action, Judge Shira Scheindlin entered default judgment against these two defendants in the amount of $882.3 million plus 9 percent interest running from February 21, 2008 to the date of payment. The case then proceeded to trial against Longtop's CFO who claimed he did not know about the fraud – and was not reckless in not knowing – when he made false statements to investors about Longtop's financial results. On November 21, 2014, the jury returned a verdict on liability in favor of plaintiffs. Specifically, the jury found that the CFO was liable to the plaintiffs and the class for each of the eight challenged misstatements. Then, on November 24, 2014, the jury returned its damages verdict, ascribing a certain amount of inflation to each day of the class period and apportioning liability for those damages amongst the three named defendants. The Longtop trial was only the 14th securities class action to be tried to a verdict since the passage of the Private Securities Litigation Reform Act in 1995 and represents a historic victory for investors.

*Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund v. Lehman Brothers Holdings, Inc.,* No. 1:08-cv-05523-LAK (S.D.N.Y. 2008):
Kessler Topaz, on behalf of lead plaintiffs, asserted claims against certain individual defendants and underwriters of Lehman securities arising from misstatements and omissions regarding Lehman's financial condition, and its exposure to the residential and commercial real estate markets in the period leading to Lehman's unprecedented bankruptcy filing on September 14, 2008. In July 2011, the Court sustained the majority of the amended Complaint finding that Lehman's use of Repo 105, while technically complying with GAAP, still rendered numerous statements relating to Lehman's purported Net Leverage Ration materially false and misleading. The Court also found that Defendants' statements related to Lehman's risk management policies were sufficient to state a claim. With respect to loss causation, the Court also failed to accept Defendants' contention that the financial condition of the economy led to the losses suffered by the Class. As the case was being prepared for trial, a $517 million settlement was reached on behalf of shareholders --- $426 million of which came from various underwriters of the Offerings, representing a significant recovery for investors in this now bankrupt entity. In addition, $90 million came from Lehman's former directors and officers, which is significant considering the diminishing assets available to pay any future judgment. Following these settlements, the litigation continued against Lehman's auditor, Ernst & Young LLP. A settlement for $99 million was subsequently reached with Ernst & Young LLP and was approved by the Court.

*Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al.,* Case No. 0:08-cv-06324-PAM-AJB (D. Minn. 2008):

Kessler Topaz brought an action on behalf of lead plaintiffs that alleged that the company failed to disclose its reliance on illegal "off-label" marketing techniques to drive the sales of its INFUSE Bone Graft ("INFUSE") medical device. While physicians are allowed to prescribe a drug or medical device for any use they see fit, federal law prohibits medical device manufacturers from marketing devices for any uses not specifically approved by the United States Food and Drug Administration. The company's off-label marketing practices have resulted in the company becoming the target of a probe by the federal government which was revealed on November 18, 2008, when the company's CEO reported that Medtronic received a subpoena from the United States Department of Justice which is "looking into off-label use of INFUSE." After hearing oral argument on Defendants' Motions to Dismiss, on February 3, 2010, the Court issued an order granting in part and denying in part Defendants' motions, allowing a large portion of the action to move forward. The Court held that Plaintiff successfully stated a claim against each Defendant for a majority of the misstatements alleged in the Complaint and that each of the Defendants knew or recklessly disregarded the falsity of these statements and that Defendants' fraud caused the losses experienced by members of the Class when the market learned the truth behind Defendants' INFUSE marketing efforts. While the case was in discovery, on April 2, 2012, Medtronic agreed to pay shareholders an $85 million settlement. The settlement was approved by the Court by order issued on November 8, 2012.

*In re Brocade Sec. Litig.,* Case No. 3:05-CV-02042-CRB (N.D. Cal. 2005):

The complaint in this action alleges that Defendants engaged in repeated violations of federal securities laws by backdating options grants to top executives and falsified the date of stock option grants and other information regarding options grants to numerous employees from 2000 through 2004, which ultimately caused Brocade to restate all of its financial statements from 2000 through 2005. In addition, concurrent SEC civil and Department of Justice criminal actions against certain individual defendants were commenced. In August, 2007 the Court denied Defendant's motions to dismiss and in October, 2007 certified a class of Brocade investors who were damaged by the alleged fraud. Discovery is currently proceeding and the case is being prepared for trial. Furthermore, while litigating the securities class action Kessler Topaz and its co-counsel objected to a proposed settlement in the Brocade derivative action. On March 21, 2007, the parties in *In re Brocade Communications Systems, Inc. Derivative Litigation,* No. C05-02233 (N.D. Cal. 2005) (CRB) gave notice that they had obtained preliminary approval of their settlement. According to the notice, which was buried on the back pages of the Wall Street Journal, Brocade shareholders were given less than three weeks to evaluate the settlement and file any objection with the Court. Kessler Topaz client Puerto Rico Government Employees' Retirement System ("PRGERS") had a large investment in Brocade and, because the settlement was woefully inadequate, filed an objection. PRGERS, joined by fellow institutional investor Arkansas Public Employees Retirement System, challenged the settlement on two fundamental grounds. First, PRGERS criticized the derivative plaintiffs for failing to conduct any discovery before settling their claims. PRGERS also argued that derivative plaintiff's abject failure to investigate its own claims before providing the defendants with broad releases from liability made it impossible to weigh the merits of the settlement. The Court agreed, and strongly admonished derivative plaintiffs for their failure to perform this most basic act of service to their fellow Brocade shareholders. The settlement was rejected and later withdrawn. Second, and more significantly, PRGERS claimed that the presence of the well-respected law firm Wilson, Sonsini Goodrich and Rosati, in this case, created an incurable conflict of interest that corrupted the entire settlement process. The conflict stemmed from WSGR's dual role as counsel to Brocade and the Individual Settling Defendants, including WSGR Chairman and former Brocade Board Member

Larry Sonsini. On this point, the Court also agreed and advised WSGR to remove itself from the case entirely. On May 25, 2007, WSGR complied and withdrew as counsel to Brocade. The case settled for $160 million and was approved by the Court.

*In re Satyam Computer Services, Ltd. Sec. Litig.,* No. 09 MD 02027 (BSJ) (S.D.N.Y.):
Kessler Topaz served as Co-Lead Counsel in this securities fraud class action in the Southern District of New York. The action asserts claims by lead plaintiffs for violations of the federal securities laws against Satyam Computer Services Limited ("Satyam" or the "Company") and certain of Satyam's former officers and directors and its former auditor PricewaterhouseCoopers International Ltd. ("PwC") relating to the Company's January 7, 2009, disclosure admitting that B. Ramalinga Raju ("B. Raju"), the Company's former chairman, falsified Satyam's financial reports by, among other things, inflating its reported cash balances by more than $1 billion. The news caused the price of Satyam's common stock (traded on the National Stock Exchange of India and the Bombay Stock Exchange) and American Depository Shares ("ADSs") (traded on the New York Stock Exchange ("NYSE")) to collapse. From a closing price of $3.67 per share on January 6, 2009, Satyam's common stock closed at $0.82 per share on January 7, 2009. With respect to the ADSs, the news of B. Raju's letter was revealed overnight in the United States and, as a result, trading in Satyam ADSs was halted on the NYSE before the markets opened on January 7, 2009. When trading in Satyam ADSs resumed on January 12, 2009, Satyam ADSs opened at $1.14 per ADS, down steeply from a closing price of $9.35 on January 6, 2009. Lead Plaintiffs filed a consolidated complaint on July 17, 2009, on behalf of all persons or entities, who (a) purchased or otherwise acquired Satyam's ADSs in the United States; and (b) residents of the United States who purchased or otherwise acquired Satyam shares on the National Stock Exchange of India or the Bombay Stock Exchange between January 6, 2004 and January 6, 2009. Co-Lead Counsel secured a settlement for $125 million from Satyam on February 16, 2011. Additionally, Co-Lead Counsel was able to secure a $25.5 million settlement from PwC on April 29, 2011, who was alleged to have signed off on the misleading audit reports.

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,* Case No. 07-CV-61542 (S.D. Fla. 2007):
On November 18, 2010, a panel of nine Miami, Florida jurors returned the first securities fraud verdict to arise out of the financial crisis against BankAtlantic Bancorp. Inc., its chief executive officer and chief financial officer. This case was only the tenth securities class action to be tried to a verdict following the passage of the Private Securities Litigation Reform Act of 1995, which governs such suits. Following extensive post-trial motion practice, the District Court upheld all of the Jury's findings of fraud but vacated the damages award on a narrow legal issue and granted Defendant's motion for a judgment as a matter of law. Plaintiffs appealed to the U.S. Court of Appeals for the Eleventh Circuit. On July 23, 2012, a three-judge panel for the Appeals Court found the District Court erred in granting the Defendant's motion for a judgment as a matter of law based in part on the Jury's findings (perceived inconsistency of two of the Jury's answers to the special interrogatories) instead of focusing solely on the sufficiency of the evidence. However, upon its review of the record, the Appeals Court affirmed the District Court's decision as it determined the Plaintiffs did not introduce evidence sufficient to support a finding in its favor on the element of loss causation. The Appeals Court's decision in this case does not diminish the five years of hard work which Kessler Topaz expended to bring the matter to trial and secure an initial jury verdict in the Plaintiffs' favor. This case is an excellent example of the Firm's dedication to our clients and the lengths it will go to try to achieve the best possible results for institutional investors in shareholder litigation.

*In re AremisSoft Corp. Sec. Litig.,* C.A. No. 01-CV-2486 (D.N.J. 2002):

Kessler Topaz is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, one of whom remains a fugitive. In settling the action, Kessler Topaz, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new company to allow for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The approved Settlement enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of any amounts recovered by the litigation trust. During this litigation, actions have been initiated in the Isle of Man, Cyprus, as well as in the United States as we continue our efforts to recover assets stolen by corporate insiders and related entities.

*In re CVS Corporation Sec. Litig.,* C.A. No. 01-11464 JLT (D. Mass. 2001):

Kessler Topaz, serving as Co-Lead Counsel on behalf of a group of institutional investors, secured a cash recovery of $110 million for the class, a figure which represents the third-largest payout for a securities action in Boston federal court. Kessler Topaz successfully litigated the case through summary judgment before ultimately achieving this outstanding result for the class following several mediation sessions, and just prior to the commencement of trial.

*In re Marvell Technology, Grp., Ltd. Sec. Litig.,* Master File No. 06-06286 RWM:

Kessler Topaz served as Co-Lead Counsel in this securities class action brought against Marvell Technology Group Ltd. ("Marvell") and three of Marvell's executive officers. This case centered around an alleged options backdating scheme carried out by Defendants from June 2000 through June 2006, which enabled Marvell's executives and employees to receive options with favorable option exercise prices chosen with the benefit of hindsight, in direct violation of Marvell's stock option plan, as well as to avoid recording hundreds of millions of dollars in compensation expenses on the Marvell's books. In total, the restatement conceded that Marvell had understated the cumulative effect of its compensation expense by $327.3 million, and overstated net income by $309.4 million, for the period covered by the restatement. Following nearly three years of investigation and prosecution of the Class' claims as well as a protracted and contentious mediation process, Co-Lead Counsel secured a settlement for $72 million from defendants on June 9, 2009. This Settlement represents a substantial portion of the Class' maximum provable damages, and is among the largest settlements, in total dollar amount, reached in an option backdating securities class action.

*In re Delphi Corp. Sec. Litig.,* Master File No. 1:05-MD-1725 (E.D. Mich. 2005):

In early 2005, various securities class actions were filed against auto-parts manufacturer Delphi Corporation in the Southern District of New York. Kessler Topaz its client, Austria-based mutual fund manager Raiffeisen Kapitalanlage-Gesellschaft m.b.H., were appointed as Co-Lead Counsel and Co-Lead Plaintiff, respectively. The Lead Plaintiffs alleged that (i) Delphi improperly treated financing transactions involving inventory as sales and disposition of inventory; (ii) improperly treated financing transactions involving "indirect materials" as sales of these materials; and (iii) improperly accounted for payments made to and credits received from General Motors as warranty settlements and obligations. As a result, Delphi's reported revenue, net income and financial results were materially overstated, prompting Delphi to restate its earnings for the five previous years. Complex litigation involving difficult bankruptcy issues has potentially resulted in an excellent recovery for the class. In addition, Co-Lead Plaintiffs also reached a settlement of claims against Delphi's outside auditor, Deloitte & Touche, LLP, for $38.25 million on behalf of Delphi investors.

*In re Royal Dutch Shell European Shareholder Litigation,* No. 106.010.887, Gerechtshof Te Amsterdam (Amsterdam Court of Appeal):

Kessler Topaz was instrumental in achieving a landmark $352 million settlement on behalf non-US investors with Royal Dutch Shell plc relating to Shell's 2004 restatement of oil reserves. This settlement of securities fraud claims on a class-wide basis under Dutch law was the first of its kind, and sought to resolve claims exclusively on behalf of European and other non-United States investors. Uncertainty over whether jurisdiction for non-United States investors existed in a 2004 class action filed in federal court in New Jersey prompted a significant number of prominent European institutional investors from nine countries, representing more than one billion shares of Shell, to actively pursue a potential resolution of their claims outside the United States. Among the European investors which actively sought and supported this settlement were Alecta pensionsförsäkring, ömsesidigt, PKA Pension Funds Administration Ltd., Swedbank Robur Fonder AB, AP7 and AFA Insurance, all of which were represented by Kessler Topaz.

*In re Computer Associates Sec. Litig.,* No. 02-CV-1226 (E.D.N.Y. 2002):

Kessler Topaz served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, Kessler Topaz helped obtain a settlement of $150 million in cash and stock from the company.

*In re The Interpublic Group of Companies Sec. Litig.,* No. 02 Civ. 6527 (S.D.N.Y. 2002):

Kessler Topaz served as sole Lead Counsel in this action on behalf of an institutional investor and received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of the final hearing in the case, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Kessler Topaz for acting responsibly and noted the Firm's professionalism, competence and contribution to achieving such a favorable result.

*In re Digital Lightwave, Inc. Sec. Litig.,* Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):

The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions in history measured by the percentage of damages recovered. After extensive litigation and negotiations, a settlement consisting primarily of stock was worth over $170 million at the time when it was distributed to the Class. Kessler Topaz took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses.

*In re Transkaryotic Therapies, Inc. Sec. Litig.,* Civil Action No. 03-10165-RWZ (D. Mass. 2003):

After five years of hard-fought, contentious litigation, Kessler Topaz as Lead Counsel on behalf of the Class, entered into one of largest settlements ever against a biotech company with regard to non-approval of one of its drugs by the U.S. Food and Drug Administration ("FDA"). Specifically, the Plaintiffs alleged that Transkaryotic Therapies, Inc. ("TKT") and its CEO, Richard Selden, engaged in a fraudulent scheme to artificially inflate the price of TKT common stock and to deceive Class Members by making misrepresentations and nondisclosures of material facts concerning TKT's prospects for FDA approval of Replagal, TKT's experimental enzyme replacement therapy for Fabry disease. With the assistance of the Honorable Daniel Weinstein, a retired state court judge from California, Kessler Topaz secured a $50 million settlement from the Defendants during a complex and arduous mediation.

*In re PNC Financial Services Group, Inc. Sec. Litig.,* Case No. 02-CV-271 (W.D. Pa. 2002):

Kessler Topaz served as Co-Lead Counsel in a securities class action case brought against PNC bank, certain of its officers and directors, and its outside auditor, Ernst & Young, LLP ("E&Y"), relating to the conduct of Defendants in establishing, accounting for and making disclosures concerning three special purpose entities ("SPEs") in the second, third and fourth quarters of PNC's 2001 fiscal year. Plaintiffs alleged that these entities were created by Defendants for the sole purpose of allowing PNC to secretly transfer non-performing assets worth hundreds of millions of dollars from its own books to the books of the SPEs without disclosing the transfers or consolidating the results and then making positive announcements to the public concerning the bank's performance with respect to its non-performing assets. Complex issues were presented with respect to all defendants, but particularly E&Y. Throughout the litigation E&Y contended that because it did not make any false and misleading statements itself, the Supreme Court's opinion in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1993) foreclosed securities liability for "aiding or abetting" securities fraud for purposes of Section 10(b) liability. Plaintiffs, in addition to contending that E&Y did make false statements, argued that Rule 10b-5's deceptive conduct prong stood on its own as an independent means of committing fraud and that so long as E&Y itself committed a deceptive act, it could be found liable under the securities laws for fraud. After several years of litigation and negotiations, PNC paid $30 million to settle the action, while also assigning any claims it may have had against E&Y and certain other entities that were involved in establishing and/or reporting on the SPEs. Armed with these claims, class counsel was able to secure an additional $6.6 million in settlement funds for the class from two law firms and a third party insurance company and $9.075 million from E&Y. Class counsel was also able to negotiate with the U.S. government, which had previously obtained a disgorgement fund of $90 million from PNC and $46 million from the third party insurance carrier, to combine all funds into a single settlement fund that exceeded $180 million and is currently in the process of being distributed to the entire class, with PNC paying all costs of notifying the Class of the settlement.

*In re SemGroup Energy Partners, L.P., Sec. Litig.,* No. 08-md-1989 (DC) (N.D. Okla.):

Kessler Topaz, which was appointed by the Court as sole Lead Counsel, litigated this matter, which ultimately settled for $28 million. On April 20, 2010, in a fifty-page published opinion, the United States District Court for the Northern District of Oklahoma largely denied defendants' ten separate motions to dismiss Lead Plaintiff's Consolidated Amended Complaint. The Complaint alleged that: (i) defendants concealed SemGroup's risky trading operations that eventually caused SemGroup to declare bankruptcy; and (ii) defendants made numerous false statements concerning SemGroup's ability to provide its publicly-traded Master Limited Partnership stable cash-flows. The case was aggressively litigated out of the Firm's San Francisco and Radnor offices and the significant recovery was obtained, not only from the Company's principals, but also from its underwriters and outside directors.

*In re Liberate Techs. Sec. Litig.,* No. C-02-5017 (MJJ) (N.D. Cal. 2005):

Kessler Topaz represented plaintiffs which alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earning. As sole Lead Counsel, Kessler Topaz successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

*In re Riverstone Networks, Inc. Sec. Litig.,* Case No. CV-02-3581 (N.D. Cal. 2002):
Kessler Topaz served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five months of extensive mediation, the parties reached a settlement of $18.5 million.

## SHAREHOLDER DERIVATIVE ACTIONS

*In re Facebook, Inc. Class C Reclassification Litig., C.A.* No. 12286-VCL (Del. Ch. Sept. 25, 2017):
Kessler Topaz served as co-lead counsel in this stockholder class action that challenged a proposed reclassification of Facebook's capital structure to accommodate the charitable giving goals of its founder and controlling stockholder Mark Zuckerberg. The Reclassification involved the creation of a new class of nonvoting Class C stock, which would be issued as a dividend to all Facebook Class A and Class B stockholders (including Zuckerberg) on a 2-for-1 basis.The purpose and effect of the Reclassification was that it would allow Zuckerberg to sell billions of dollars worth of nonvoting Class C shares without losing his voting control of Facebook.  The litigation alleged that Zuckerberg and Facebook's board of directors breached their fiduciary duties in approving the Reclassification at the behest of Zuckerberg and for his personal benefit. At trial Kessler Topaz was seeking a permanent injunction to prevent the consummation of the Reclassification. The litigation was carefully followed in the business and corporate governance communities, due to the high-profile nature of Facebook, Zuckerberg, and the issues at stake. After almost a year and a half of hard fought litigation, just one business day before trial was set to commence, Facebook and Zuckerberg abandoned the Reclassification, granting Plaintiffs complete victory.

*In re CytRx Stockholder Derivative Litig.,* Consol. C.A. No. 9864-VCL (Del. Ch. Nov. 20, 2015):
Kessler Topaz served as co-lead counsel in a shareholder derivative action challenging 2.745 million "spring-loaded" stock options.  On the day before CytRx announced the most important news in the Company's history concerning the positive trial results for one of its significant pipeline drugs, the Compensation Committee of CytRx's Board of Directors granted the stock options to themselves, their fellow directors and several Company officers which immediately came "into the money" when CytRx's stock price shot up immediately following the announcement the next day. Kessler Topaz negotiated a settlement recovering 100% of the excess compensation received by the directors and approximately 76% of the damages potentially obtainable from the officers. In addition, as part of the settlement, Kessler Topaz obtained the appointment of a new independent director to the Board of Directors and the implementation of significant reforms to the Company's stock option award processes. The Court complimented the settlement, explaining that it "serves what Delaware views as the overall positive function of stockholder litigation, which is not just recovery in the individual case but also deterrence and norm enforcement."

*International Brotherhood of Electrical Workers Local 98 Pension Fund v. Black, et al.,* Case No. 37-2011-00097795-CU-SL-CTL (Sup. Ct. Cal., San Diego Feb. 5, 2016) ("*Encore Capital Group, Inc.*"):
Kessler Topaz, as co-lead counsel, represented International Brotherhood of Electrical Workers Local 98 Pension Fund in a shareholder derivative action challenging breaches of fiduciary duties and other

violations of law in connection with Encore's debt collection practices, including robo-signing affidavits and improper use of the court system to collect alleged consumer debts. Kessler Topaz negotiated a settlement in which the Company implemented industry-leading reforms to its risk management and corporate governance practices, including creating Chief Risk Officer and Chief Compliance Officer positions, various compliance committees, and procedures for consumer complaint monitoring.

*In re Southern Peru Copper Corp. Derivative Litigation,* Consol. CA No. 961-CS (Del. Ch. 2011):
Kessler Topaz served as co-lead counsel in this landmark $2 billion post-trial decision, believed to be the largest verdict in Delaware corporate law history. In 2005, Southern Peru, a publicly-traded copper mining company, acquired Minera Mexico, a private mining company owned by Southern Peru's majority stockholder Grupo Mexico. The acquisition required Southern Peru to pay Grupo Mexico more than $3 billion in Southern Peru stock. We alleged that Grupo Mexico had caused Southern Peru to grossly overpay for the private company in deference to its majority shareholder's interests. Discovery in the case spanned years and continents, with depositions in Peru and Mexico. The trial court agreed and ordered Grupo Mexico to pay more than $2 billion in damages and interest. The Delaware Supreme Court affirmed on appeal.

*Quinn v. Knight,* No. 3:16-cv-610 (E.D. Va. Mar. 16, 2017) ("*Apple REIT Ten*"):
This shareholder derivative action challenged a conflicted "roll up" REIT transaction orchestrated by Glade M. Knight and his son Justin Knight. The proposed transaction paid the Knights millions of dollars while paying public stockholders less than they had invested in the company. The case was brought under Virginia law, and settled just ten days before trial, with stockholders receiving an additional $32 million in merger consideration.

*Kastis v. Carter,* C.A. No. 8657-CB (Del. Ch. Sept. 19, 2016) ("*Hemispherx Biopharma, Inc.*"):
This derivative action challenged improper bonuses paid to two company executives of this small pharmaceutical company that had never turned a profit. In response to the complaint, Hemispherx's board first adopted a "fee-shifting" bylaw that would have required stockholder plaintiffs to pay the company's legal fees unless the plaintiffs achieved 100% of the relief they sought. This sort of bylaw, if adopted more broadly, could substantially curtail meritorious litigation by stockholders unwilling to risk losing millions of dollars if they bring an unsuccessful case. After Kessler Topaz presented its argument in court, Hemispherx withdrew the bylaw. Kessler Topaz ultimately negotiated a settlement requiring the two executives to forfeit several million dollars' worth of accrued but unpaid bonuses, future bonuses and director fees. The company also recovered $1.75 million from its insurance carriers, appointed a new independent director to the board, and revised its compensation program.

*Montgomery v. Erickson, Inc., et al.,* C.A. No. 8784-VCL (Del. Ch. Sept. 12, 2016):
Kessler Topaz represented an individual stockholder who asserted in the Delaware Court of Chancery class action and derivative claims challenging merger and recapitalization transactions that benefitted the company's controlling stockholders at the expense of the company and its minority stockholders. Plaintiff alleged that the controlling stockholders of Erickson orchestrated a series of transactions with the intent and effect of using Erickson's money to bail themselves out of a failing investment. Defendants filed a motion to dismiss the complaint, which Kessler Topaz defeated, and the case proceeded through more than a year of fact discovery. Following an initially unsuccessful mediation and further litigation, Kessler Topaz ultimately achieved an $18.5 million cash settlement, 80% of which was distributed to members of the stockholder class to resolve their direct claims and 20% of which was paid to the company to resolve the derivative claims. The settlement also instituted changes to the company's governing documents to prevent future self-dealing transactions like those that gave rise to the case.

*In re Helios Closed-End Funds Derivative Litig.,* No. 2:11-cv-02935-SHM-TMP (W.D. Tenn. 2011):
Kessler Topaz represented stockholders of four closed-end mutual funds in a derivative action against the funds' former investment advisor, Morgan Asset Management. Plaintiffs alleged that the defendants mismanaged the funds by investing in riskier securities than permitted by the funds' governing documents and, after the values of these securities began to precipitously decline beginning in early 2007, cover up their wrongdoing by assigning phony values to the funds' investments and failing to disclose the extent of the decrease in value of the funds' assets.In a rare occurrence in derivative litigation, the funds' Boards of Directors eventually hired Kessler Topaz to prosecute the claims against the defendants on behalf of the funds. Our litigation efforts led to a settlement that recovered $6 million for the funds and ensured that the funds would not be responsible for making any payment to resolve claims asserted against them in a related multi-million dollar securities class action. The fund's Boards fully supported and endorsed the settlement, which was negotiated independently of the parallel securities class action.

*In re Viacom, Inc. Shareholder Derivative Litig., Index No. 602527/05* (N.Y. Sup. Ct. 2005):
Kessler Topaz represented the Public Employees' Retirement System of Mississippi and served as Lead Counsel in a derivative action alleging that the members of the Board of Directors of Viacom, Inc. paid excessive and unwarranted compensation to Viacom's Executive Chairman and CEO, Sumner M. Redstone, and co-COOs Thomas E. Freston and Leslie Moonves, in breach of their fiduciary duties. Specifically, we alleged that in fiscal year 2004, when Viacom reported a record net loss of $17.46 billion, the board improperly approved compensation payments to Redstone, Freston, and Moonves of approximately $56 million, $52 million, and $52 million, respectively. Judge Ramos of the New York Supreme Court denied Defendants' motion to dismiss the action as we overcame several complex arguments related to the failure to make a demand on Viacom's Board; Defendants then appealed that decision to the Appellate Division of the Supreme Court of New York. Prior to a decision by the appellate court, a settlement was reached in early 2007. Pursuant to the settlement, Sumner Redstone, the company's Executive Chairman and controlling shareholder, agreed to a new compensation package that, among other things, substantially reduces his annual salary and cash bonus, and ties the majority of his incentive compensation directly to shareholder returns.

*In re Family Dollar Stores, Inc. Derivative Litig.,* Master File No. 06-CVS-16796 (Mecklenburg County, NC 2006):
Kessler Topaz served as Lead Counsel, derivatively on behalf of Family Dollar Stores, Inc., and against certain of Family Dollar's current and former officers and directors. The actions were pending in Mecklenburg County Superior Court, Charlotte, North Carolina, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of these shareholder derivative actions, Kessler Topaz was able to achieve substantial relief for Family Dollar and its shareholders. Through Kessler Topaz's litigation of this action, Family Dollar agreed to cancel hundreds of thousands of stock options granted to certain current and former officers, resulting in a seven-figure net financial benefit for the company. In addition, Family Dollar has agreed to, among other things: implement internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; appoint two new independent directors to the board of directors; maintain a board composition of at least 75 percent independent directors; and adopt stringent officer stock-ownership policies to further align the interests of officers with those of Family Dollar shareholders. The settlement was approved by Order of the Court on August 13, 2007.

*Carbon County Employees Retirement System, et al., Derivatively on Behalf of Nominal Defendant Southwest Airlines Co. v. Gary C. Kelly, et al.* Cause No. 08-08692 (District Court of Dallas County, Texas):

As lead counsel in this derivative action, we negotiated a settlement with far-reaching implications for the safety and security of airline passengers. Our clients were shareholders of Southwest Airlines Co. (Southwest) who alleged that certain officers and directors had breached their fiduciary duties in connection with Southwest's violations of Federal Aviation Administration safety and maintenance regulations. Plaintiffs alleged that from June 2006 to March 2007, Southwest flew 46 Boeing 737 airplanes on nearly 60,000 flights without complying with a 2004 FAA Airworthiness Directive requiring fuselage fatigue inspections. As a result, Southwest was forced to pay a record $7.5 million fine. We negotiated numerous reforms to ensure that Southwest's Board is adequately apprised of safety and operations issues, and implementing significant measures to strengthen safety and maintenance processes and procedures.

*The South Financial Group, Inc. Shareholder Litigation,* C.A. No. 2008-CP-23-8395 (S.C. C.C.P. 2009):

Represented shareholders in derivative litigation challenging board's decision to accelerate "golden parachute" payments to South Financial Group's CEO as the company applied for emergency assistance in 2008 under the Troubled Asset Recovery Plan (TARP). We sought injunctive relief to block the payments and protect the company's ability to receive the TARP funds. The litigation was settled with the CEO giving up part of his severance package and agreeing to leave the board, as well as the implementation of important corporate governance changes one commentator described as "unprecedented."

## OPTIONS BACKDATING

In 2006, the Wall Street Journal reported that three companies appeared to have "backdated" stock option grants to their senior executives, pretending that the options had been awarded when the stock price was at its lowest price of the quarter, or even year. An executive who exercised the option thus paid the company an artificially low price, which stole money from the corporate coffers. While stock options are designed to incentivize recipients to drive the company's stock price up, backdating options to artificially low prices undercut those incentives, overpaid executives, violated tax rules, and decreased shareholder value.

Kessler Topaz worked with a financial analyst to identify dozens of other companies that had engaged in similar practices, and filed more than 50 derivative suits challenging the practice. These suits sought to force the executives to disgorge their improper compensation and to revamp the companies' executive compensation policies. Ultimately, as lead counsel in these derivative actions, Kessler Topaz achieved significant monetary and non-monetary benefits at dozens of companies, including:

*Comverse Technology, Inc.:* Settlement required Comverse's founder and CEO Kobi Alexander, who fled to Namibia after the backdating was revealed, to disgorge more than $62 million in excessive backdated option compensation. The settlement also overhauled the company's corporate governance and internal controls, replacing a number of directors and corporate executives, splitting the Chairman and CEO positions, and instituting majority voting for directors.

*Monster Worldwide, Inc.:* Settlement required recipients of backdated stock options to disgorge more than $32 million in unlawful gains back to the company, plus agreeing to significant corporate governance measures. These measures included (a) requiring Monster's founder Andrew McKelvey to reduce his voting control over Monster from 31% to 7%, by exchanging super-voting stock for common stock; and (b) implementing new equity granting practices that require greater accountability and transparency in the granting of stock options moving forward. In approving the settlement, the court noted "the good results, mainly the amount of money for the shareholders and also the change in governance of the company itself, and really the hard work that had to go into that to achieve the results…."

*Affiliated Computer Services, Inc.:* Settlement required executives, including founder Darwin Deason, to give up $20 million in improper backdated options. The litigation was also a catalyst for the company to replace its CEO and CFO and revamp its executive compensation policies.

## MERGERS & ACQUISITIONS LITIGATION

*City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc., et al.,* C.A. No. 12481-VCL (Del. Ch.):
On September 12, 2017, the Delaware Chancery Court approved one of the largest class action M&A settlements in the history of the Delaware Chancery Court, a $86.5 million settlement relating to the acquisition of ExamWorks Group, Inc. by private equity firm Leonard Green & Partners, LP.

The settlement caused ExamWorks stockholders to receive a 6% improvement on the $35.05 per share merger consideration negotiated by the defendants. This amount is unusual especially for litigation challenging a third-party merger. The settlement amount is also noteworthy because it includes a $46.5 million contribution from ExamWorks' outside legal counsel, Paul Hastings LLP.

*In re ArthroCare Corporation S'holder Litig.,* Consol. C.A. No. 9313-VCL (Del. Ch. Nov. 13, 2014):
Kessler Topaz, as co-lead counsel, challenged the take-private of Arthrocare Corporation by private equity firm Smith & Nephew. This class action litigation alleged, among other things, that Arthrocare's Board breached their fiduciary duties by failing to maximize stockholder value in the merger. Plaintiffs also alleged that that the merger violated Section 203 of the Delaware General Corporation Law, which prohibits mergers with "interested stockholders," because Smith & Nephew had contracted with JP Morgan to provide financial advice and financing in the merger, while a subsidiary of JP Morgan owned more than 15% of Arthrocare's stock. Plaintiffs also alleged that the agreement between Smith & Nephew and the JP Morgan subsidiary violated a "standstill" agreement between the JP Morgan subsidiary and Arthrocare. The court set these novel legal claims for an expedited trial prior to the closing of the merger. The parties agreed to settle the action when Smith & Nephew agreed to increase the merger consideration paid to Arthrocare stockholders by $12 million, less than a month before trial.

*In re Safeway Inc. Stockholders Litig.,* C.A. No. 9445-VCL (Del. Ch. Sept. 17, 2014):
Kessler Topaz represented the Oklahoma Firefighters Pension and Retirement System in class action litigation challenging the acquisition of Safeway, Inc. by Albertson's grocery chain for $32.50 per share in cash and contingent value rights. Kessler Topaz argued that the value of CVRs was illusory, and Safeway's shareholder rights plan had a prohibitive effect on potential bidders making superior offers to acquire Safeway, which undermined the effectiveness of the post-signing "go shop."

Plaintiffs sought to enjoin the transaction, but before the scheduled preliminary injunction hearing took place, Kessler Topaz negotiated (i) modifications to the terms of the CVRs and (ii) defendants' withdrawal of the shareholder rights plan. In approving the settlement, Vice Chancellor Laster of the Delaware Chancery Court stated that "the plaintiffs obtained significant changes to the transaction . . . that may well result in material increases in the compensation received by the class," including substantial benefits potentially in excess of $230 million.

*In re MPG Office Trust, Inc. Preferred Shareholder Litig.,* Cons. Case No. 24-C-13-004097 (Md. Cir. Oct. 20, 2015):
Kessler Topaz challenged a coercive tender offer whereby MPG preferred stockholders received preferred stock in Brookfield Office Properties, Inc. without receiving any compensation for their accrued and unpaid dividends. Kessler Topaz negotiated a settlement where MPG preferred stockholders received a dividend of $2.25 per share, worth approximately $21 million, which was the only payment of accrued dividends Brookfield DTLA Preferred Stockholders had received as of the time of the settlement.

*In re Globe Specialty Metals, Inc. Stockholders Litig.,* C.A. 10865-VCG (Del. Ch. Feb. 15, 2016):
Kessler Topaz served as co-lead counsel in class action litigation arising from Globe's acquisition by Grupo Atlantica to form Ferroglobe. Plaintiffs alleged that Globe's Board breached their fiduciary duties to Globe's public stockholders by agreeing to sell Globe for an unfair price, negotiating personal benefits for themselves at the expense of the public stockholders, failing to adequately inform themselves of material issues with Grupo Atlantica, and issuing a number of materially deficient disclosures in an attempt to mask issues with the negotiations. At oral argument on Plaintiffs' preliminary injunction motion, the Court held that Globe stockholders likely faced irreparable harm from the Board's conduct, but reserved ruling on the other preliminary injunction factors. Prior to the Court's final ruling, the parties agreed to settle the action for $32.5 million and various corporate governance reforms to protect Globe stockholders' rights in Ferroglobe.

*In re Dole Food Co., Inc. Stockholder Litig.,* Consol. C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015):
On August 27, 2015, Vice Chancellor J. Travis Laster issued his much-anticipated post-trial verdict in litigation by former stockholders of Dole Food Company against Dole's chairman and controlling stockholder David Murdock. In a 106-page ruling, Vice Chancellor Laster found that Murdock and his longtime lieutenant, Dole's former president and general counsel C. Michael Carter, unfairly manipulated Dole's financial projections and misled the market as part of Murdock's efforts to take the company private in a deal that closed in November 2013. Among other things, the Court concluded that Murdock and Carter "primed the market for the freeze-out by driving down Dole's stock price" and provided the company's outside directors with "knowingly false" information and intended to "mislead the board for Mr. Murdock's benefit." Vice Chancellor Laster found that the $13.50 per share going-private deal underpaid stockholders, and awarded class damages of $2.74 per share, totaling $148 million. That award represents the largest post-trial class recovery in the merger context. The largest post-trial derivative recovery in a merger case remains Kessler Topaz's landmark 2011 $2 billion verdict in *In re Southern Peru*.

*In re Genentech, Inc. Shareholders Lit.,* Cons. Civ. Action No. 3991-VCS (Del. Ch. 2008):
Kessler Topaz served as Co-Lead Counsel in this shareholder class action brought against the directors of Genentech and Genentech's majority stockholder, Roche Holdings, Inc., in response to Roche's July 21, 2008 attempt to acquire Genentech for $89 per share. We sought to enforce provisions of an Affiliation Agreement between Roche and Genentech and to ensure that Roche fulfilled its fiduciary obligations to Genentech's shareholders through any buyout effort by Roche.

After moving to enjoin the tender offer, Kessler Topaz negotiated with Roche and Genentech to amend the Affiliation Agreement to allow a negotiated transaction between Roche and Genentech, which enabled Roche to acquire Genentech for $95 per share, approximately $3.9 billion more than Roche offered in its hostile tender offer. In approving the settlement, then-Vice Chancellor Leo Strine complimented plaintiffs' counsel, noting that this benefit was only achieved through "real hard-fought litigation in a complicated setting."

*In re GSI Commerce, Inc. Shareholder Litig.,* Consol. C.A. No. 6346-VCN (Del. Ch. Nov. 15, 2011):
On behalf of the Erie County Employees' Retirement System, we alleged that GSI's founder breached his fiduciary duties by negotiating a secret deal with eBay for him to buy several GSI subsidiaries at below market prices before selling the remainder of the company to eBay. These side deals significantly reduced the acquisition price paid to GSI stockholders. Days before an injunction hearing, we negotiated an improvement in the deal price of $24 million.

*In re Amicas, Inc. Shareholder Litigation,* 10-0174-BLS2 (Suffolk County, MA 2010):
Kessler Topaz served as lead counsel in class action litigation challenging a proposed private equity buyout of Amicas that would have paid Amicas shareholders $5.35 per share in cash while certain Amicas executives retained an equity stake in the surviving entity moving forward. Kessler Topaz prevailed in securing a preliminary injunction against the deal, which then allowed a superior bidder to purchase the Company for an additional $0.70 per share ($26 million). The court complimented Kessler Topaz attorneys for causing an "exceptionally favorable result for Amicas' shareholders" after "expend[ing] substantial resources."

*In re Harleysville Mutual,* Nov. Term 2011, No. 02137 (C.C.P., Phila. Cnty.):
Kessler Topaz served as co-lead counsel in expedited merger litigation challenging Harleysville's agreement to sell the company to Nationwide Insurance Company. Plaintiffs alleged that policyholders were entitled to receive cash in exchange for their ownership interests in the company, not just new Nationwide policies. Plaintiffs also alleged that the merger was "fundamentally unfair" under Pennsylvania law. The defendants contested the allegations and contended that the claims could not be prosecuted directly by policyholders (as opposed to derivatively on the company's behalf). Following a two-day preliminary injunction hearing, we settled the case in exchange for a $26 million cash payment to policyholders.

## CONSUMER PROTECTION & FIDUCIARY LITIGATION

*In re: J.P. Jeanneret Associates Inc., et al.,* No. 09-cv-3907 (S.D.N.Y.):
Kessler Topaz served as lead counsel for one of the plaintiff groups in an action against J.P. Jeanneret and Ivy Asset Management relating to an alleged breach of fiduciary and statutory duty in connection with the investment of retirement plan assets in Bernard Madoff-related entities. By breaching their fiduciary duties, Defendants caused significant losses to the retirement plans. Following extensive hard-fought litigation, the case settled for a total of $216.5 million.

*In re: National City Corp. Securities, Derivative and ERISA Litig,* No. 08-nc-7000 (N.D. Ohio):
Kessler Topaz served as a lead counsel in this complex action alleging that certain directors and officers of National City Corp. breached their fiduciary duties under the Employee Retirement Income Security Act of 1974. These breaches arose from an investment in National City stock during

a time when defendants knew, or should have known, that the company stock was artificially inflated and an imprudent investment for the company's 401(k) plan. The case settled for $43 million on behalf of the plan, plaintiffs and a settlement class of plan participants.

*Alston, et al. v. Countrywide Financial Corp. et al.,* No. 07-cv-03508 (E.D. Pa.):

Kessler Topaz served as lead counsel in this novel and complex action which alleged that Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc. and Balboa Reinsurance Co. violated the Real Estate Settlement Procedure Act ("RESPA") and ultimately cost borrowers millions of dollars. Specifically, the action alleged that Defendants engaged in a scheme related to private mortgage insurance involving kickbacks, which are prohibited under RESPA. After three and a half years of hard-fought litigation, the action settled for $34 million.

*Trustees of the Local 464A United Food and Commercial Workers Union Pension Fund, et al. v. Wachovia Bank, N.A., et al.,* No. 09-cv-00668 (D.N.J.):

For more than 50 years, Wachovia and its predecessors acted as investment manager for the Local 464A UFCW Union Funds, exercising investment discretion consistent with certain investment guidelines and fiduciary obligations. Until mid-2007, Wachovia managed the fixed income assets of the funds safely and conservatively, and their returns closely tracked the Lehman Aggregate Bond Index (now known as the Barclay's Capital Aggregate Bond Index) to which the funds were benchmarked. However, beginning in mid-2007 Wachovia significantly changed the investment strategy, causing the funds' portfolio value to drop drastically below the benchmark. Specifically, Wachovia began to dramatically decrease the funds' holdings in short-term, high-quality, low-risk debt instruments and materially increase their holdings in high-risk mortgage-backed securities and collateralized mortgage obligations. We represented the funds' trustees in alleging that, among other things, Wachovia breached its fiduciary duty by: failing to invest the assets in accordance with the funds' conservative investment guidelines; failing to adequately monitor the funds' fixed income investments; and failing to provide complete and accurate information to plaintiffs concerning the change in investment strategy. The matter was resolved privately between the parties.

*In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.,* No. 1:12-md-02335 (S.D.N.Y.):

On behalf of the Southeastern Pennsylvania Transportation Authority Pension Fund and a class of similarly situated domestic custodial clients of BNY Mellon, we alleged that BNY Mellon secretly assigned a spread to the FX rates at which it transacted FX transactions on behalf of its clients who participated in the BNY Mellon's automated "Standing Instruction" FX service. BNY Mellon determining this spread by executing its clients' transactions at one rate and then, typically, at the end of the trading day, assigned a rate to its clients which approximated the worst possible rates of the trading day, pocketing the difference as riskless profit. This practice was despite BNY Mellon's contractual promises to its clients that its Standing Instruction service was designed to provide "best execution," was "free of charge" and provided the "best rates of the day." The case asserted claims for breach of contract and breach of fiduciary duty on behalf of BNY Mellon's custodial clients and sought to recover the unlawful profits that BNY Mellon earned from its unfair and unlawful FX practices. The case was litigated in collaboration with separate cases brought by state and federal agencies, with Kessler Topaz serving as lead counsel and a member of the executive committee overseeing the private litigation. After extensive discovery, including more than 100 depositions, over 25 million pages of fact discovery, and the submission of multiple expert reports, Plaintiffs reached a settlement with BNY Mellon of $335 million. Additionally, the settlement is being administered by Kessler Topaz along with separate recoveries by state and federal agencies which bring the total recovery for BNY Mellon's custodial customers to $504 million. The settlement was approved on September 24, 2015. In approving the settlement, Judge Lewis Kaplan praised counsel

for a "wonderful job," stating that counsel "fought tooth and nail at every step of the road." In further recognition of the efforts of counsel, Judge Kaplan noted that "[t]his was an outrageous wrong by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."

*CompSource Oklahoma v. BNY Mellon Bank, N.A.,* No. CIV 08-469-KEW (E.D. Okla. October 25, 2012):
Kessler Topaz served as Interim Class Counsel in this matter alleging that BNY Mellon Bank, N.A. and the Bank of New York Mellon (collectively, "BNYM") breached their statutory, common law and contractual duties in connection with the administration of their securities lending program. The Second Amended Complaint alleged, among other things, that BNYM imprudently invested cash collateral obtained under its securities lending program in medium term notes issued by Sigma Finance, Inc. -- a foreign structured investment vehicle ("SIV") that is now in receivership -- and that such conduct constituted a breach of BNYM's fiduciary obligations under the Employee Retirement Income Security Act of 1974, a breach of its fiduciary duties under common law, and a breach of its contractual obligations under the securities lending agreements. The Complaint also asserted claims for negligence, gross negligence and willful misconduct. The case recently settled for $280 million.

*Transatlantic Holdings, Inc., et al. v. American International Group, Inc., et al.,* American Arbitration Association Case No. 50 148 T 00376 10:
Kessler Topaz served as counsel for Transatlantic Holdings, Inc., and its subsidiaries ("TRH"), alleging that American International Group, Inc. and its subsidiaries ("AIG") breached their fiduciary duties, contractual duties, and committed fraud in connection with the administration of its securities lending program. Until June 2009, AIG was TRH's majority shareholder and, at the same time, administered TRH's securities lending program. TRH's Statement of Claim alleged that, among other things, AIG breached its fiduciary obligations as investment advisor and majority shareholder by imprudently investing the majority of the cash collateral obtained under its securities lending program in mortgage backed securities, including Alt-A and subprime investments. The Statement of Claim further alleged that AIG concealed the extent of TRH's subprime exposure and that when the collateral pools began experiencing liquidity problems in 2007, AIG unilaterally carved TRH out of the pools so that it could provide funding to its wholly owned subsidiaries to the exclusion of TRH. The matter was litigated through a binding arbitration and TRH was awarded $75 million.

*Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.* – Consolidated Action No. 09-cv-00686 (SAS) (S.D.N.Y.):
On January 23, 2009, the firm filed a class action complaint on behalf of all entities that were participants in JPMorgan's securities lending program and that incurred losses on investments that JPMorgan, acting in its capacity as a discretionary investment manager, made in medium-term notes issue by Sigma Finance, Inc. – a now defunct structured investment vehicle. The losses of the Class exceeded $500 million. The complaint asserted claims for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), as well as common law breach of fiduciary duty, breach of contract and negligence. Over the course of discovery, the parties produced and reviewed over 500,000 pages of documents, took 40 depositions (domestic and foreign) and exchanged 21 expert reports. The case settled for $150 million. Trial was scheduled to commence on February 6, 2012.

*In re Global Crossing, Ltd. ERISA Litigation,* No. 02 Civ. 7453 (S.D.N.Y. 2004):

Kessler Topaz served as Co-Lead Counsel in this novel, complex and high-profile action which alleged that certain directors and officers of Global Crossing, a former high-flier of the late 1990's tech stock boom, breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to certain company-provided 401(k) plans and their participants. These breaches arose from the plans' alleged imprudent investment in Global Crossing stock during a time when defendants knew, or should have known, that the company was facing imminent bankruptcy. A settlement of plaintiffs' claims restoring $79 million to the plans and their participants was approved in November 2004. At the time, this represented the largest recovery received in a company stock ERISA class action.

*In re AOL Time Warner ERISA Litigation,* No. 02-CV-8853 (S.D.N.Y. 2006):

Kessler Topaz, which served as Co-Lead Counsel in this highly-publicized ERISA fiduciary breach class action brought on behalf of the Company's 401(k) plans and their participants, achieved a record $100 million settlement with defendants. The $100 million restorative cash payment to the plans (and, concomitantly, their participants) represents the largest recovery from a single defendant in a breach of fiduciary action relating to mismanagement of plan assets held in the form of employer securities. The action asserted claims for breach of fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of the participants in the AOL Time Warner Savings Plan, the AOL Time Warner Thrift Plan, and the Time Warner Cable Savings Plan (collectively, the "Plans") whose accounts purchased and/or held interests in the AOLTW Stock Fund at any time between January 27, 1999 and July 3, 2003. Named as defendants in the case were Time Warner (and its corporate predecessor, AOL Time Warner), several of the Plans' committees, as well as certain current and former officers and directors of the company. In March 2005, the Court largely denied defendants' motion to dismiss and the parties began the discovery phase of the case. In January 2006, Plaintiffs filed a motion for class certification, while at the same time defendants moved for partial summary judgment. These motions were pending before the Court when the settlement in principle was reached. Notably, an Independent Fiduciary retained by the Plans to review the settlement in accordance with Department of Labor regulations approved the settlement and filed a report with Court noting that the settlement, in addition to being "more than a reasonable recovery" for the Plans, is "one of the largest ERISA employer stock action settlements in history."

*In re Honeywell International ERISA Litigation,* No. 03-1214 (DRD) (D.N.J. 2004):

Kessler Topaz served as Lead Counsel in a breach of fiduciary duty case under ERISA against Honeywell International, Inc. and certain fiduciaries of Honeywell defined contribution pension plans. The suit alleged that Honeywell and the individual fiduciary defendants, allowed Honeywell's 401(k) plans and their participants to imprudently invest significant assets in company stock, despite that defendants knew, or should have known, that Honeywell's stock was an imprudent investment due to undisclosed, wide-ranging problems stemming from a consummated merger with Allied Signal and a failed merger with General Electric. The settlement of plaintiffs' claims included a $14 million payment to the plans and their affected participants, and significant structural relief affording participants much greater leeway in diversifying their retirement savings portfolios.

*Henry v. Sears, et. al.*, Case No. 98 C 4110 (N.D. Ill. 1999):

The Firm served as Co-Lead Counsel for one of the largest consumer class actions in history, consisting of approximately 11 million Sears credit card holders whose interest rates were improperly increased in connection with the transfer of the credit card accounts to a national bank. Kessler Topaz successfully negotiated a settlement representing approximately 66% of all class members' damages, thereby providing a total benefit exceeding $156 million. All $156 million was distributed automatic-

ally to the Class members, without the filing of a single proof of claim form. In approving the settlement, the District Court stated: ". . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance."

## ANTITRUST LITIGATION

### *In re: Flonase Antitrust Litigation,* No. 08-cv-3149 (E.D. Pa.):

Kessler Topaz served as a lead counsel on behalf of a class of direct purchaser plaintiffs in an antitrust action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging, among other things, that defendant GlaxoSmithKline (GSK) violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by engaging in "sham" petitioning of a government agency. Specifically, the Direct Purchasers alleged that GSK unlawfully abused the citizen petition process contained in Section 505(j) of the Federal Food, Drug, and Cosmetic Act and thus delayed the introduction of less expensive generic versions of Flonase, a highly popular allergy drug, causing injury to the Direct Purchaser Class. Throughout the course of the four year litigation, Plaintiffs defeated two motions for summary judgment, succeeded in having a class certified and conducted extensive discovery. After lengthy negotiations and shortly before trial, the action settled for $150 million.

### *In re: Wellbutrin SR Antitrust Litigation,* No. 04-cv-5898 (E.D. Pa.):

Kessler Topaz was a lead counsel in an action which alleged, among other things, that defendant GlaxoSmithKline (GSK) violated the antitrust, consumer fraud, and consumer protection laws of various states. Specifically, Plaintiffs and the class of Third-Party Payors alleged that GSK manipulated patent filings and commenced baseless infringement lawsuits in connection wrongfully delaying generic versions of Wellbutrin SR and Zyban from entering the market, and that Plaintiffs and the Class of Third-Party Payors suffered antitrust injury and calculable damages as a result. After more than eight years of litigation, the action settled for $21.5 million.

### *In re: Metoprolol Succinate End-Payor Antitrust Litigation,* No. 06-cv-71 (D. Del.):

Kessler Topaz was co-lead counsel in a lawsuit which alleged that defendant AstraZeneca prevented generic versions of Toprol-XL from entering the market by, among other things, improperly manipulating patent filings and filing baseless patent infringement lawsuits. As a result, AstraZeneca unlawfully monopolized the domestic market for Toprol-XL and its generic bio-equivalents. After seven years of litigation, extensive discovery and motion practice, the case settled for $11 million.

### *In re Remeron Antitrust Litigation,* No. 02-CV-2007 (D.N.J. 2004):

Kessler Topaz was co-lead counsel in an action which challenged Organon, Inc.'s filing of certain patents and patent infringement lawsuits as an abuse of the Hatch-Waxman Act, and an effort to unlawfully extend their monopoly in the market for Remeron. Specifically, the lawsuit alleged that defendants violated state and federal antitrust laws in their efforts to keep competing products from entering the market, and sought damages sustained by consumers and third-party payors. After lengthy litigation, including numerous motions and over 50 depositions, the matters settled for $36 million.

# OUR PROFESSIONALS

## PARTNERS

**JULES D. ALBERT,** a Partner of the Firm, concentrates his practice in mergers and acquisition litigation and stockholder derivative litigation. Mr. Albert received his law degree from the University of Pennsylvania Law School, where he was a Senior Editor of the University of Pennsylvania Journal of Labor and Employment Law and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated magna cum laude with a Bachelor of Arts in Political Science from Emory University. Mr. Albert is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Mr. Albert has litigated in state and federal courts across the country, and has represented stockholders in numerous actions that have resulted in significant monetary recoveries and corporate governance improvements, including: *In re Sunrise Senior Living, Inc. Deriv. Litig., No. 07-00143 (D.D.C.); Mercier v. Whittle, et al., No. 2008-CP-23-8395 (S.C. Ct. Com. Pl., 13th Jud. Cir.); In re K-V Pharmaceutical Co. Deriv. Litig., No. 06-00384 (E.D. Mo.); In re Progress Software Corp. Deriv. Litig., No. SUCV2007-01937-BLS2 (Mass. Super. Ct., Suffolk Cty.); In re Quest Software, Inc. Deriv. Litig. No 06CC00115 (Cal. Super. Ct., Orange Cty.); and Quaco v. Balakrishnan, et al., No. 06-2811 (N.D. Cal.).*

**NAUMON A. AMJED,** a Partner of the Firm, concentrates his practice on new matter development with a focus on analyzing securities class action lawsuits, direct (or opt-out) actions, non-U.S. securities and shareholder litigation, SEC whistleblower actions, breach of fiduciary duty cases, antitrust matters, data breach actions and oil and gas litigation. Mr. Amjed is a graduate of the Villanova University School of Law, cum laude, and holds an undergraduate degree in business administration from Temple University, cum laude. Mr. Amjed is a member of the Delaware State Bar, the Bar of the Commonwealth of Pennsylvania, the New York State Bar, and is admitted to practice before the United States Courts for the District of Delaware, the Eastern District of Pennsylvania and the Southern District of New York.

As a member of the Firm's lead plaintiff practice group, Mr. Amjed has represented clients serving as lead plaintiffs in several notable securities class action lawsuits including: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09MDL2058 (S.D.N.Y.) (settled -- $2.425 billion); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Securities Litigation,* No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery) and *In re JPMorgan Chase & Co. Securities Litigation,* No. 12-3852-GBD ("London Whale Litigation") ($150 million recovery). Additionally, Mr. Amjed served on the national Executive Committee representing financial institutions suffering losses from Target Corporation's 2013 data breach – one of the largest data breaches in history. The Target litigation team was responsible for a landmark data breach opinion that substantially denied Target's motion to dismiss and was also responsible for obtaining certification of a class of financial institutions. See *In re Target Corp. Customer Data Sec. Breach Litig.,* 64 F. Supp. 3d 1304 (D. Minn. 2014); *In re Target Corp Customer*

*Data Sec. Breach Litig.,* No. MDL 14-2522 PAM/JJK, 2015 WL 5432115 (D. Minn. Sept. 15, 2015). At the time of its issuance, the class certification order in Target was the first of its kind in data breach litigation by financial institutions.

Mr. Amjed also has significant experience conducting complex litigation in state and federal courts including federal securities class actions, shareholder derivative actions, suits by third-party insurers and other actions concerning corporate and alternative business entity disputes. Mr. Amjed has litigated in numerous state and federal courts across the country, including the Delaware Court of Chancery, and has represented shareholders in several high profile lawsuits, including: *LAMPERS v. CBOT Holdings, Inc. et al.,* C.A. No. 2803-VCN (Del. Ch.); *In re Alstom SA Sec. Litig.,* 454 F. Supp. 2d 187 (S.D.N.Y. 2006); *In re Global Crossing Sec. Litig.,* 02— Civ. — 910 (S.D.N.Y.); *In re Enron Corp. Sec. Litig.,* 465 F. Supp. 2d 687 (S.D. Tex. 2006); and *In re Marsh McLennan Cos., Inc. Sec. Litig.* 501 F. Supp. 2d 452 (S.D.N.Y. 2006).

ETHAN J. BARLIEB, a Partner of the Firm, concentrates his practice in the areas of ERISA, consumer protection and antitrust litigation. Mr. Barlieb received his law degree, magna cum laude, from the University of Miami School of Law in 2007 and his undergraduate degree from Cornell University in 2003. Mr. Barlieb is licensed to practice in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Mr. Barlieb was an associate with Pietragallo Gordon Alfano Bosick & Raspanti, LLP, where he worked on various commercial, securities and employment matters. Before that, Mr. Barlieb served as a law clerk for the Honorable Mitchell S. Goldberg in the U.S. District Court for the Eastern District of Pennsylvania.

STUART L. BERMAN, a Partner of the Firm, concentrates his practice on securities class action litigation in federal courts throughout the country, with a particular emphasis on representing institutional investors active in litigation. Mr. Berman received his law degree from George Washington University National Law Center, and is an honors graduate from Brandeis University. Mr. Berman is licensed to practice in Pennsylvania and New Jersey.

Mr. Berman regularly counsels and educates institutional investors located around the world on emerging legal trends, new case ideas and the rights and obligations of institutional investors as they relate to securities fraud class actions and individual actions. In this respect, Mr. Berman has been instrumental in courts appointing the Firm's institutional clients as lead plaintiffs in class actions as well as in representing institutions individually in direct actions. Mr. Berman is currently representing institutional investors in direct actions against Vivendi and Merck, and took a very active role in the precedent setting Shell settlement on behalf of many of the Firm's European institutional clients.

Mr. Berman is a frequent speaker on securities issues, especially as they relate to institutional investors, at events such as The European Pension Symposium in Florence, Italy; the Public Funds Symposium in Washington, D.C.; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; the New England Pension Summit in Newport, Rhode Island; the Rights and Responsibilities for Institutional Investors in Amsterdam, Netherlands; and the European Investment Roundtable in Barcelona, Spain. Mr. Berman also serves as General Counsel to Kessler Topaz.

DAVID A. BOCIAN, a Partner of the Firm, focuses his practice on whistleblower representation and False Claims Act litigation. Mr. Bocian received his law degree from the University of Virginia School of Law and graduated cum laude from Princeton University. He is licensed to practice law in the Commonwealth of Pennsylvania, New Jersey, New York and the District of Columbia.

Mr. Bocian began his legal career in Washington, D.C., as a litigation associate at Patton Boggs LLP, where his practice included internal corporate investigations, government contracts litigation and securities fraud matters. He spent more than ten years as a federal prosecutor in the U.S. Attorney's Office for the District of New Jersey, where he was appointed Senior Litigation Counsel and managed the Trenton U.S. Attorney's office. During his tenure, Mr. Bocian oversaw multifaceted investigations and prosecutions pertaining to government corruption and federal program fraud, commercial and public sector kickbacks, tax fraud, and other white collar and financial crimes. He tried numerous cases before federal juries, and was a recipient of the Justice Department's Director's Award for superior performance by an Assistant U.S. Attorney, as well as commendations from federal law enforcement agencies including the FBI and IRS.

Mr. Bocian has extensive experience in the health care field. As an adjunct professor of law, he has taught Healthcare Fraud and Abuse at Rutgers School of Law – Camden, and previously was employed in the health care industry, where he was responsible for implementing and overseeing a system-wide compliance program for a complex health system.

GREGORY M. CASTALDO, a Partner of the Firm, concentrates his practice in the area of securities litigation. Mr. Castaldo received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey.

Mr. Castaldo served as one of Kessler Topaz's lead litigation partners in *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act* (ERISA) Litigation, No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion). Mr. Castaldo also served as the lead litigation partner in In re Tenet Healthcare Corp., No. 02-CV-8462 (C.D. Cal. 2002), securing an aggregate recovery of $281.5 million for the class, including $65 million from Tenet's auditor. Mr. Castaldo also played a primary litigation role in the following cases: *In re Liberate Technologies Securities Litigation*, No. C-02-5017 (MJJ) (N.D. Cal. 2005) (settled — $13.8 million); *In re Sodexho Marriott Shareholders Litigation*, Consol. C.A. No. 18640-NC (Del. Ch. 1999) (settled — $166 million benefit); *In re Motive, Inc. Securities Litigation*, 05-CV-923 (W.D. Tex. 2005) (settled — $7 million cash, 2.5 million shares); and *In re Wireless Facilities, Inc., Securities Litigation*, 04-CV-1589 (S.D. Cal. 2004) (settled — $16.5 million). In addition, Mr. Castaldo served as one of the lead trial attorneys for shareholders in the historic *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.) trial, which resulted in a verdict in favor of investors on liability and damages.

DARREN J. CHECK, a Partner of the Firm, manages Kessler Topaz's portfolio monitoring & claims filing service, *SecuritiesTracker*™, and works closely with the Firm's litigators and new matter development department. He consults with institutional investors from around the world with regard to implementing systems to best identify, analyze, and monetize claims they have in shareholder litigation.

In addition, Mr. Check assists Firm clients in evaluating opportunities to take an active role in shareholder litigation, arbitration, and other loss recovery methods. This includes U.S. based litigation and arbitration, as well as actions in an increasing number of jurisdictions around the globe. With an increasingly complex investment and legal landscape, Mr. Check has experience advising on traditional class actions, direct actions (opt-outs), non-U.S. opt-in actions, fiduciary actions, appraisal actions and arbitrations to name a few. Over the last twenty years Mr. Check has become a trusted advisor to hedge funds, mutual fund managers, asset managers, insurance companies, sovereign wealth funds, central banks, and pension funds throughout North America, Europe, Asia, Australia, and the Middle East.

Mr. Check regularly speaks on the subjects of shareholder litigation, corporate governance, investor activism, and recovery of investment losses at conferences around the world. He has also been actively involved in the precedent setting Shell and Fortis settlements in the Netherlands, the Olympus shareholder case in Japan, direct actions against Petrobras and Merck, and securities class actions against Bank of America, Lehman Brothers, Royal Bank of Scotland (U.K.), and Hewlett-Packard. Currently Mr. Check represents investors in numerous high profile actions in the United States, the Netherlands, Germany, France, Japan, and Australia.

Mr. Check received his law degree from Temple University School of Law and is a graduate of Franklin & Marshall College. He is admitted to practice in numerous state and federal courts across the United States.


EMILY N. CHRISTIANSEN, a Partner of the Firm, focuses her practice in securities litigation and international actions, in particular. Ms. Christiansen received her Juris Doctor and Global Law certificate, cum laude, from Lewis and Clark Law School in 2012. Ms. Christiansen is a graduate of the University of Portland, where she received her Bachelor of Arts, cum laude, in Political Science and German Studies. Ms. Christiansen is currently licensed to practice law in New York and Pennsylvania.

While in law school, Ms. Christiansen worked as an intern in Trial Chambers III at the International Criminal Tribunal for the Former Yugoslavia. Ms. Christiansen also spent two months in India as foreign legal trainee with the corporate law firm of Fox Mandal. Ms. Christiansen is a 2007 recipient of a Fulbright Fellowship and is fluent in German.

Ms. Christiansen devotes her time to advising clients on the challenges and benefits of pursuing particular litigation opportunities in jurisdictions outside the U.S. In those non-US actions where Kessler Topaz is actively involved, Emily liaises with local counsel, helps develop case strategy, reviews pleadings, and helps clients understand and successfully navigate the legal process. Her experience includes non-US opt-in actions, international law, and portfolio monitoring and claims administration. In her role, Ms. Christiansen has helped secure recoveries for institutional investors in litigation in Japan against Olympus Corporation (settled - ¥11 billion) and in the Netherlands against Fortis Bank N.V. (settled - €1.2 billion).

JOSHUA E. D'ANCONA, a Partner of the Firm, concentrates his practice in the securities litigation and lead plaintiff departments of the Firm. Mr. D'Ancona received his J.D., magna cum laude, from the Temple University Beasley School of Law in 2007, where he served on the Temple Law Review and as president of the Moot Court Honors Society, and graduated with honors from Wesleyan University. He is licensed to practice in Pennsylvania and New Jersey.

Before joining the Firm in 2009, he served as a law clerk to the Honorable Cynthia M. Rufe of the United States District Court for the Eastern District of Pennsylvania.

RYAN T. DEGNAN, a Partner of the Firm, concentrates his practice on new matter development with a specific focus on analyzing securities class action lawsuits, antitrust actions, and complex consumer actions. Mr. Degnan received his law degree from Temple University Beasley School of Law, where he was a Notes and Comments Editor for the Temple Journal of Science, Technology & Environmental Law, and earned his undergraduate degree in Biology from Johns Hopkins University While a law student, Mr. Degnan served as a Judicial Intern to the Honorable Gene E.K. Pratter of the United States District Court for the Eastern District of Pennsylvania. Mr. Degnan is licensed to practice in Pennsylvania and New Jersey. As a member of the Firm's lead plaintiff litigation practice group, Mr. Degnan has helped secure the Firm's clients' appointments as lead plaintiffs in: In re HP Securities Litigation, No. 12-cv-5090, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013); In re JPMorgan Chase & Co. Securities Litigation, No. 12-3852- GBD ("London Whale Litigation") ($150 million recovery); Freedman v. St. Jude Medical, Inc., et al., No. 12-cv-3070 (D. Minn.); United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp., No. 14 Civ. 81057 (WPD),2014 WL 7236985(S.D. Fla. Nov. 7, 2014); Louisiana Municipal Police Employees' Retirement System v. Green Mountain Coffee Roasters, Inc., et al., No. 11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012); and In re Longtop Financial Technologies Ltd. Securities Litigation, No. 11-cv-3658, 2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011). Additional representative matters include: In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation, No. 12-md-02335 (S.D.N.Y.) ($335 million settlement); and Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al., No. 12-cv- 02865 (S.D.N.Y.) ($69 million settlement).

TYLER S. GRADEN, a Partner of the Firm, concentrates his practice in the area of consumer protection and unlawful business practice litigation, representing individuals, retirement plan beneficiaries, businesses and government entities as plaintiffs in class actions and arbitrations. Prior to joining the Firm, Mr. Graden worked at a boutique defense litigation firm in Philadelphia and as an investigator with the Chicago District Office of the Equal Employment Opportunity Commission.

GRANT D. GOODHART III, a Partner of the Firm, concentrates his practice in the areas of merger and acquisition litigation and shareholder derivative actions. Through his practice, Mr. Goodhart helps institutional and individual shareholders obtain significant financial recoveries and corporate governance reforms. Mr. Goodhart graduated from Temple University Beasley School of Law in 2015. While in law school, Mr. Goodhart interned as a law clerk to the Hon. Thomas C. Branca of the Montgomery County Court of Common Pleas, the Hon. Anne E. Lazarus of the Pennsylvania Superior Court, and U.S. Magistrate Judge Lynne A. Sitarski of the U.S. District Court for the Eastern District of Pennsylvania. Grant also served as the Executive Articles Editor for the Temple International and Comparative Law Journal.

SEAN M. HANDLER, a Partner of the Firm and member of Kessler Topaz's Management Committee, currently concentrates his practice on all aspects of new matter development for the Firm including securities, consumer and intellectual property. Mr. Handler earned his Juris Doctor, cum laude, from Temple University School of Law, and received his Bachelor of Arts degree from Colby College, graduating with distinction in American Studies. Mr. Handler is licensed to practice in Pennsylvania, New Jersey and New York. As part of his responsibilities, Mr. Handler also oversees the lead plaintiff appointment process in securities class actions for the Firm's clients. In this role,

Mr. Handler has achieved numerous noteworthy appointments for clients in reported decisions including *Foley v. Transocean*, 272 F.R.D. 126 (S.D.N.Y. 2011); *In re Bank of America Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260 (S.D.N.Y. 2009) and *Tanne v. Autobytel, Inc.,* 226 F.R.D. 659 (C.D. Cal. 2005) and has argued before federal courts throughout the country.

Mr. Handler was also one of the principal attorneys in *In re Brocade Securities Litigation* (N.D. Cal. 2008), where the team achieved a $160 million settlement on behalf of the class and two public pension fund class representatives. This settlement is believed to be one of the largest settlements in a securities fraud case in terms of the ratio of settlement amount to actual investor damages.

Mr. Handler also lectures and serves on discussion panels concerning securities litigation matters, most recently appearing at American Conference Institute's National Summit on the Future of Fiduciary Responsibility and Institutional Investor's The Rights & Responsibilities of Institutional Investors.

NATHAN A. HASIUK, a Partner of the Firm, concentrates his practice on securities litigation. Mr. Hasiuk received his law degree from Temple University Beasley School of Law, and graduated summa cum laude from Temple University. He is licensed to practice in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the District of New Jersey. Prior to joining the Firm, Mr. Hasiuk was an Assistant Public Defender in Philadelphia.

GEOFFREY C. JARVIS, a Partner of the Firm, focuses on securities litigation for institutional investors. Mr. Jarvis graduated from Harvard Law School in 1984, and received his undergraduate degree from Cornell University in 1980. He is licensed to practice in Pennsylvania, Delaware, New York and Washington, D.C. Following law school, Mr. Jarvis served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry.

Mr. Jarvis had a major role in Oxford Health Plans Securities Litigation, Daimler Chrysler Securities Litigation, and Tyco Securities Litigation all of which were among the top ten securities settlements in U.S. history at the time they were resolved, as well as a large number of other securities cases over the past 16 years. He has also been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial, and a Delaware appraisal case that was tried in October, argued in 2016, which is still awaiting a final decision. Mr. Jarvis then became an associate in the Washington office of Rogers & Wells (subsequently merged into Clifford Chance), principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well as counseling corporate clients in diverse industries on general legal and regulatory compliance matters.

JENNIFER L. JOOST, a Partner in the Firm's San Francisco office, focuses her practice on securities litigation. Ms. Joost received her law degree, cum laude, from Temple University Beasley School of Law, where she was the Special Projects Editor for the Temple International and Comparative Law Journal. Ms. Joost earned her undergraduate degree with honors from Washington University in St. Louis. She is licensed to practice in Pennsylvania and California and is admitted to practice before the United States Courts of Appeals for the Second, Fourth, Ninth, and Eleventh Circuits, and the United States District Courts for the Eastern District of Pennsylvania, the Northern District of California and the Southern District of California.

Ms. Joost has represented institutional investors in numerous securities fraud class actions including *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act* (ERISA) Litigation, No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion); *In re Citigroup Bond Litigation, No. 08-cv-09522-SHS* (S.D.N.Y.) ($730 million recovery); *David H. Luther, et al., v. Countrywide Financial Corp., et. al.,* 2:12-cv-05125 (C.D.Cal. 2012) (settled -- $500 million); *In re JPMorgan Chase & Co. Securities Litigation, No. 12-3852-GBD* ("London Whale Litigation") ($150 million recovery); *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.,* No. 08-cv-06324-PAM-AJB (D. Minn.) (settled -- $85 million); *In re MGM Mirage Securities Litigation,* Case No. 2:09-cv-01558-GMN-VCF (D. Nev.) ($75 million settlement); and *In re Weatherford Int'l Securities Litigation,* No. 11-cv-01646-LAK-JCF (S.D.N.Y.) (settled -- $52.5 million).

STACEY KAPLAN, a Partner in the Firm's San Francisco office, concentrates her practice on prosecuting securities class actions. Ms. Kaplan received her J.D. from the University of California at Los Angeles School of Law in 2005, and received her Bachelor of Business Administration from the University of Notre Dame in 2002, with majors in Finance and Philosophy. Ms. Kaplan is admitted to the California Bar and is licensed to practice in all California state courts, as well as the United States District Courts for the Northern and Central Districts of California.

During law school, Ms. Kaplan served as a Judicial Extern to the Honorable Terry J. Hatter, Jr., United States District Court, Central District of California. Prior to joining the Firm, Ms. Kaplan was an associate with Robbins Geller Rudman & Dowd LLP in San Diego, California.

DAVID KESSLER, a Partner of the Firm, is a worldwide leader in securities litigation. His reputation and track record earn instant credibility with judges and bring opponents to the bargaining table in complex, high-stakes class actions. Mr. Kessler has been recognized for excellence by publications including Benchmark Plaintiff and Law Dragon.

As co-head of the firm's securities litigation practice, Mr. Kessler has led several of the largest class actions ever brought under the federal securities laws and the Private Securities Litigation Reform Act of 1995. Since the financial crisis began in 2008, he has helped recover well over $5 billion for clients and class members who invested in financial companies such as Wachovia, Bank of America, Citigroup and Lehman Brothers. Prior to 2008, Mr. Kessler guided some of the largest cases both in size—including allegations of a massive scandal regarding the unfair allocation of IPO shares by more than 300 public companies—and in notoriety—including the Tyco fraud and mismanagement litigation that resolved for over $3 billion.

Mr. Kessler brings his background as a certified public accountant to bear in actions involving complex loss causation issues and damages arising from losses in public offerings, open market purchases, and mergers and acquisitions. As head of the firm's settlement department, Mr. Kessler also has extensive experience in mediation, settlements, claims administration and distributions.

A sought-after lecturer on securities litigation issues, Mr. Kessler has been invited to speak by plaintiffs' firms, defense firms, mediators and insurance carriers on a variety of topics related to securities class actions. He recently assisted in authoring a chapter on mediations in a publication soon to be released by a federal mediator.

JOSHUA A. MATERESE, a Partner of the Firm, is an experienced and trusted securities litigator. He devotes his practice almost entirely to advising and representing institutional and individual investors in class or direct actions arising from fraud, market manipulation, or other corporate misconduct. Mr. Materese currently serves as one of the lead trial attorneys in pending securities class actions involving General Electric, Kraft-Heinz, Goldman Sachs, and Boeing, and in direct actions involving Teva Pharmaceutical and Perrigo Co. During his career, Mr. Materese has helped clients recover substantial monetary losses, including most recently *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-02004 (C.D. Cal.) ($290 million recovery), *In re JPMorgan Chase & Co. Sec. Litig., No.* 12-cv-03852 (S.D.N.Y.) ($150 million recovery); *Lou Baker v. SeaWorld Entertainment, Inc., et al.*, No. 14-cv-02129 (S.D. Cal.) ($65 million recovery); *Quinn v. Knight,* No. 16-cv-00610 (E.D. Va.) ($32 million recovery). Josh also successfully litigated claims on behalf of over 100 U.S. and international institutional investors in direct actions against Brazil's state-run oil company, Petrobras, arising out of a decade-long bid-rigging scheme—the largest corruption scandal in Brazil's history.

In addition to his direct litigation responsibilities, Mr. Materese advises the Firm's institutional clients on potential claims they may have in shareholder litigation. He is one of the partners at the Firm responsible for client relations and outreach in the U.S., and assists with overseeing Kessler Topaz's proprietary portfolio monitoring and claims filing service, *SecuritiesTracker™*.

Mr. Materese also maintains an active pro bono practice. He serves as Co-Chair of the Firm's Pro Bono Committee and frequently represents clients referred to the Firm on matters concerning federal disability benefits, felony pardons, and wrongful convictions.

MARGARET E. MAZZEO, a Partner of the Firm, concentrates her practice in the area of securities fraud litigation. Since joining the firm, Ms. Mazzeo has represented shareholders in several securities fraud class actions and direct actions, through all aspects of pre-trial proceedings, including complaint drafting, litigating motions to dismiss and for summary judgment, conducting document, deposition and expert discovery, and appeal. Ms. Mazzeo was a member of the trial team that recently won a jury verdict in favor of investors in the *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.) action.

JAMIE E. MCCALL, a Partner of the Firm, concentrates on securities fraud litigation. Prior to joining the Firm, Mr. McCall spent twelve years with the Department of Justice in the U.S. Attorney's Offices for Miami, Florida and Wilmington, Delaware, where he oversaw complex criminal investigations ranging from securities, tax, bank and wire frauds, to the theft of trade secrets and cybercrime.

Mr. McCall has successfully tried numerous jury trials, including a seven-week securities fraud trial, which arose from financial conduct during the Great Recession, and resulted in trial verdicts against four bank executives and a $60 million civil settlement to victim-shareholders; and a five-week multi-defendant stalking-murder case, which stemmed from the 2013-shootout at the New Castle County Courthouse in Delaware, and resulted in first-in-the-nation convictions for "cyberstalking resulting in death" under the Violence Against Women Act. For his work on both of these cases, Mr. McCall was twice awarded the Director's Award for Superior Performance by the Department of Justice. Most recently, Mr. McCall served as the section chief for the National Security and Cybercrime Division for the Delaware U.S. Attorney's office.

Mr. McCall also spent several years practicing civil law at Morgan, Lewis & Bockius in Philadelphia, where he worked on major, high-stakes litigation matters involving Fortune 250 companies. Mr. McCall began his legal career as a Judge Advocate in the Marine Corps, working primarily as a prosecutor and achieving the rank of Captain. In 2004, Mr. McCall served for nearly five months as the principal legal advisor to 1st Battalion, 5th Marine Regiment in and around Fallujah, Iraq, including during the First Battle of Fallujah.

Mr. McCall maintains an active membership in the Federal Bar Association, District of Delaware chapter. He has presented on numerous issues involving corporate and securities fraud. He was also a featured interview on CBS's "60 Minutes" in a segment about theft of original correspondence by Christopher Columbus, most recently aired in August 2020.

Mr. McCall has received numerous awards for his work in securities fraud and cybercrime, along with respective military service awards, including the Navy & Marine Corps Commendation Medal, Navy & Marine Corps Achievement Medal, Combat Action Ribbon, and Global War Against Terrorism Expeditionary Medal.

JOSEPH H. MELTZER, a Partner of the Firm, leads the firm's Fiduciary, Consumer Protection and Antitrust groups.

A pioneer in prosecuting breach of fiduciary duty cases, Mr. Meltzer has been lead or co-lead counsel in numerous nationwide class actions brought under fiduciary laws including ERISA. Joe represents institutional investor clients in a variety of breach of fiduciary duty cases and has some of the largest settlements in fiduciary breach actions including several recoveries in the hundreds of millions of dollars.

The firm also has a robust Consumer Protection department which represents individuals, businesses, and governmental entities that have sustained losses as a result of defective products or improper business practices. Kessler Topaz is highly selective in these matters – the firm litigates only complex cases that it deems suitable for judicial resolution.

In his antitrust work, Mr. Meltzer represents clients injured by anticompetitive and unlawful business practices, including overcharges related to prescription drugs, health care expenditures and commodities. Mr. Meltzer has also represented various states in pharmaceutical pricing litigation as a Special Assistant Attorney General.


MATTHEW L. MUSTOKOFF is a Partner of the Firm and is a nationally recognized securities litigator. He has argued and tried numerous high-profile cases in federal courts throughout the country in fields as diverse as securities fraud, corporate takeovers, antitrust, unfair trade practices, and patent infringement.

Mr. Mustokoff is currently litigating several nationwide securities cases on behalf of U.S. and overseas investors. He serves as lead counsel for shareholders in *In re Celgene Securities Litigation* (D.N.J.), involving allegations that Celgene fraudulently concealed clinical problems with a developmental multiple sclerosis drug. Mr. Mustokoff is also class counsel in *Sjunde AP-Fonden v. The Goldman Sachs Group* (S.D.N.Y.), a securities fraud case implicating Goldman Sachs' pivotal role in the 1Malaysia Development Berhad (1MDB) money laundering scandal, one of the largest financial frauds involving a Wall Street firm in recent memory. Mr. Mustokoff recently led the team that secured a $130 million recovery for plaintiffs in *In re Allergan Generic Drug Pricing Securities Litigation* (D.N.J.), arising out of the industrywide price-fixing scheme in the generic drug market. This marks the first settlement of a federal securities case stemming from the long-running price-fixing conspiracy which is believed to be the largest domestic pharmaceutical cartel in U.S. history.

Mr. Mustokoff played a major role in prosecuting *In re Citigroup Bond Litigation* (S.D.N.Y.), involving allegations that Citigroup concealed its exposure to subprime mortgage debt on the eve of the 2008 financial crisis. The $730 million settlement marks the second largest recovery ever in a Securities Act class action brought on behalf of corporate bondholders. Mr. Mustokoff represented the class in *In re Pfizer Securities Litigation* (S.D.N.Y.), a twelve-year fraud case alleging that Pfizer concealed adverse clinical results for its pain drugs Celebrex and Bextra. The case settled for $486 million following a victory at the Second Circuit Court of Appeals reversing the district court's dismissal of the action on the eve of trial. Mr. Mustokoff also served as class counsel in *In re JPMorgan Chase Securities Litigation* (S.D.N.Y.), arising out of the 2012 "London Whale" derivatives trading scandal. The case resulted in a $150 million recovery.

Mr. Mustokoff served as lead counsel to several prominent mutual funds in securities fraud actions in Manhattan federal court against Brazil's state-run oil company, Petrobras, involving a decade-long bid-rigging scheme, the largest corruption scandal in Brazil's history. In *Connecticut Retirement Plans & Trust Funds v. BP plc* (S.D. Tex.), a multi-district litigation stemming from the 2010 Deepwater Horizon oil-rig explosion in the Gulf of Mexico, Mr. Mustokoff successfully argued the opposition to BP's motion to dismiss and obtained a landmark decision sustaining fraud claims under English law on behalf of investors on the London Stock Exchange—the first in a U.S. court. Mr. Mustokoff's significant courtroom experience includes serving as one of the lead trial lawyers for shareholders in the only securities fraud class action arising out of the 2008 financial crisis to be tried to jury verdict.

Prior to joining the Firm, Mr. Mustokoff practiced at Weil, Gotshal & Manges LLP in New York where he represented clients in SEC enforcement actions, white collar criminal matters, and shareholder litigation.

A frequent speaker and writer on securities law and litigation, Mr. Mustokoff's publications have been cited in more than 75 law review articles and treatises. He has published in the *Rutgers University Law Review, Maine Law Review, Temple Political & Civil Rights Law Review, Hastings Business Law Journal, Securities Regulation Law Journal, Review of Securities & Commodities Regulation, and The Federal Lawyer*, among others. He has been a featured panelist at the American Bar Association's Section of Litigation Annual Conference and NERA Economic Consulting's Securities and Finance Seminar. Since 2010, Mr. Mustokoff has served as the Co-Chair of the ABA Subcommittee on Securities Class Actions.

Mr. Mustokoff is a Phi Beta Kappa honors graduate of Wesleyan University. He received his law degree from the Temple University School of Law.

SHARAN NIRMUL, a Partner of the Firm, concentrates his practice in the area of securities, consumer and fiduciary class action and complex commercial litigation, exclusively representing the interests of plaintiffs and particularly, institutional investors.

Mr. Nirmul represents a number of the world's largest institutional investors in cutting edge, high stakes complex litigation. In addition to his securities litigation practice, he has been at the forefront of developing the Firm's fiduciary litigation practice and has litigated ground-breaking cases in areas of securities lending, foreign exchange, and MBS trustee litigation. Mr. Nirmul was instrumental in developing the underlying theories that propelled the successful recoveries for customers of custodial banks in *Compsource Oklahoma v. BNY Mellon,* a $280 million recovery for investors in BNY Mellon's securities lending program, and *AFTRA v. JP Morgan,* a $150 million recovery for investors in JP Morgan's securities lending program. In *Transatlantic Re v. A.I.G.,* Mr. Nirmul recovered $70 million for Transatlantic Re in a binding arbitration against its former parent, American International Group, arising out of AIG's management of a securities lending program.

Focused on issues of transparency by fiduciary banks to their custodial clients, Mr. Nirmul served as lead counsel in a multi-district litigation against BNY Mellon for the excess spreads it charged to its custodial customers for automated FX services. Litigated over four years, involving 128 depositions and millions of pages of document discovery, and with unprecedented collaboration with the U.S.

Department of Justice and the New York Attorney General, the litigation resulted in a settlement for the Bank's custodial customers of $504 million. Mr. Nirmul also spearheaded litigation against the nation's largest ADR programs, Citibank, BNY Mellon and JP Morgan, which alleged they charged hidden FX fees for conversion of ADR dividends. The litigation resulted in $100 million in recoveries for ADR holders and significant reforms in the FX practices for ADRs.

Mr. Nirmul has served as lead counsel in several high-profile securities fraud cases, including a $2.4 billion recovery for Bank of America shareholders arising from BoA's shotgun merger with Merrill Lynch in 2009. More recently, Mr. Nirmul was lead trial counsel in litigation arising from the IPO of social media company Snap, Inc., which has resulted in a $187.5 million settlement for Snap's investors, claims against Endo Pharmaceuticals, arising from its disclosures concerning the efficacy of its opioid drug, Opana ER, which resulted in a recovery of $80.5 million for Endo's shareholders, and claims against Ocwen Financial, arising from its mortgage servicing practices and disclosures to investors, which settled on the eve of trial for $56 million. Mr. Nirmul currently serves as lead trial counsel in pending securities class actions involving General Electric, Kraft-Heinz, and the stunning collapse of Luckin Coffee Inc., following disclosure of a massive accounting fraud just ten months after its IPO. He also served on the Executive Committee for the multi-district litigation involving the Chicago Board Options Exchange and the manipulation of its key product, the Cboe Volatility Index.

Mr. Nirmul received his law degree from The George Washington University National Law Center and undergraduate degree from Cornell University. He was born and grew up in Durban, South Africa.

LEE D. RUDY, a partner of the Firm, practices in the area of corporate governance litigation, with a focus on transactional and derivative cases. Representing both institutional and individual shareholders in these actions, he has helped cause significant monetary and corporate governance improvements for those companies and their shareholders.

Mr. Rudy regularly practices in the Delaware Court of Chancery, where he served as co-lead trial counsel in the landmark case of *In re S. Peru Copper Corp. S'holder Derivative Litig.* (2011), a $2 billion trial verdict against Southern Peru's majority shareholder, and *In re Facebook, Inc. Class C Reclassification Litigation* (2017), which forced Facebook and its founder Mark Zuckerberg to abandon plans to issue a new class of nonvoting stock to entrench Zuckerberg as the company's majority stockholder. Mr. Rudy also recently served as lead counsel in *In re Allergan, Inc. Proxy Violation Securities Litigation* (C.D. Cal. 2017), which was brought by a class of Allergan stockholders who sold shares while Pershing Square and its founder Bill Ackman were buying Allergan stock in advance of a secret takeover attempt by Valeant Pharmaceuticals, and which settled for $250 million just weeks before trial. Mr. Rudy previously served as lead counsel in dozens of high profile derivative actions relating to the "backdating" of stock options.

Prior to civil practice, Mr. Rudy served for several years as an Assistant District Attorney in the Manhattan (NY) District Attorney's Office, and as an Assistant United States Attorney in the US Attorney's Office (D.N.J.), where he tried dozens of jury cases to verdict. Mr. Rudy received his law degree from Fordham University, and his undergraduate degree, cum laude, from the University of Pennsylvania. Mr. Rudy is licensed to practice in Pennsylvania and New York.

RICHARD A. RUSSO, JR., a partner of the Firm, concentrates his practice in the area of securities litigation, and principally represents the interests of plaintiffs in class actions and complex commercial litigation.

Mr. Russo specializes in prosecuting complex securities fraud actions arising under the Securities Exchange Act of 1934 and the Securities Act of 1933, and has significant experience in all stages of pre-trial litigation, including drafting pleadings, litigating motions to dismiss and motions for summary judgment, conducting extensive document and deposition discovery, and appeals.
Mr. Russo has represented both institutional and individual investors in a number of notable securities class actions. These matters include In re Bank of America Securities Litigation, where shareholders' $2.43 billion recovery represents one of the largest recoveries ever achieved in a securities class action and the largest recovery arising out of the 2008 subprime crisis; In re Citigroup Inc. Bond Litigation, where the class's $730 million recovery was the second largest recovery ever for claims brought under Section 11 of the Securities Act of 1933; and In re Lehman Brothers, where shareholders recovered $616 million from Lehman's officers, directors, underwriters and auditors following the company's bankruptcy filing.

Mr. Russo is currently representing shareholders in high-profile securities fraud actions against General Electric, Precision Castparts Corp., Kraft Heinz Corp. and Luckin Coffee Co. Mr. Russo has also assisted in prosecuting whistleblower actions and patent infringement matters.

In 2016, Mr. Russo was selected as an inaugural member of Benchmark Litigation's Under 40 Hot List, an award meant to honor the achievements of the nation's most accomplished attorneys under the age of 40. Mr. Russo was again selected as a member of the 40 & Under Hot List in 2018, 2019, and 2020. Rick has also been selected by his peers as a Pennsylvania Super Lawyers Rising Star on five occasions.


MARC A. TOPAZ, a partner of the Firm, has a keen eye for what makes a successful case. As one of the firm's most experienced litigators, he helps clients focus their efforts on cases with a favorable mix of facts, law and potential recovery. Mr. Topaz oversees case initiation and development in complex securities fraud, ERISA, fiduciary, antitrust, shareholder derivative, and mergers and acquisitions actions.

Mr. Topaz has counselled clients in high-profile class action litigation stemming from the subprime mortgage crisis, including cases seeking recovery for shareholders in companies affected by the crisis, and cases seeking recovery for 401K plan participants who suffered losses in their retirement plans.

Mr. Topaz's commitment to making things right for clients shows in the cases he pursues. Recognizing the importance of effective corporate governance policies in safeguarding investments, Mr. Topaz has used fiduciary duty litigation to fight for meaningful policy changes. He also played an active role in using option-backdating litigation as a vehicle to re-price erroneously issued options and improve corporate governance.

**JOHNSTON DE F. WHITMAN, JR.** is a Partner of the Firm, and his primary practice area is securities litigation.

Mr. Whitman represents individual and institutional investors pursuing claims for securities fraud. In this capacity, Mr. Whitman has helped clients obtain substantial recoveries in numerous class actions alleging claims under the federal securities laws, and has also assisted in obtaining favorable recoveries for institutional investors pursuing direct securities fraud claims.

**ROBIN WINCHESTER,** a Partner of the Firm, represents private investors and public institutional investors in derivative, class and individual actions and has helped recover hundreds of millions of dollars for corporations and stockholders injured by purported corporate fiduciaries.

Ms. Winchester has extensive experience in federal and state stockholder litigation seeking to hold wayward fiduciaries accountable for corporate abuses.

Ms. Winchester seeks not only to recover losses for the corporations and stockholders who have been harmed but also to ensure corporate accountability by those who have been entrusted by stockholders to act as faithful fiduciaries. She litigates cases involving all areas of corporate misconduct including excessive executive compensation, misuse and waste of corporate assets, unfair related-party transactions, failure to ensure compliance with state and federal laws, insider selling and other breaches of fiduciary duty which impinge on stockholder rights. Ms. Winchester has successfully resolved dozens of cases which have required financial givebacks as well as the implementation of extensive corporate governance reforms that will hopefully prevent similar misconduct from recurring, strengthen the company, and make the members of the board of directors more effective and responsive representatives of stockholder interests.

**MELISSA L. YEATES,** is a Partner in the Firm's Fiduciary, Consumer Protection, and Antitrust Group. A seasoned litigator with nearly two decades of experience litigating in federal courts nationwide, Ms. Yeates manages and litigates complex class action litigation, with a focus on consumer fraud, unfair trade practices, breach of contract and implied duties, warranty, and antitrust actions.

Ms. Yeates has played a leading role in the Firm's successful litigation of claims against numerous large corporations accused of defrauding consumers and engaging in anticompetitive conduct. Her practice has also focused on new matter development, including the investigation and analysis of consumer fraud, antitrust, and securities matters. Prior to joining the Firm, Ms. Yeates clerked for the Honorable Stanley S. Brotman in the District of New Jersey and defended corporations in complex commercial, antitrust, product liability, and patent matters. Ms. Yeates's 12 years of experience as a litigator at large defense firms makes her uniquely suited to evaluate potential claims, develop litigation strategy, and negotiate cooperatively and effectively with defense counsel. Ms. Yeates currently represents consumers and entities in class action litigation against, among others, General Motors Company, FCA US LLC, Toyota Motor Corporation, Bank of Nova Scotia, Netflix, Hulu, State Farm Mutual Automobile Insurance Company, and the federal government.

ERIC L. ZAGAR, a Partner of the Firm, co-manages the Firm's Mergers and Acquisitions and Shareholder Derivative Litigation Group, which has excelled in the highly specialized area of prosecuting cases involving claims against corporate officers and directors.

Since 2001, Mr. Zagar has served as lead or co-lead counsel in numerous shareholder derivative actions nationwide and has helped recover billions of dollars in monetary value and substantial corporate governance relief for the benefit of shareholders.

TERENCE S. ZIEGLER is a Partner of the Firm and has worked since 2005. Since joining the Firm, he has focused his practice on antitrust and complex consumer litigation. Mr. Ziegler is currently involved in a number of class action lawsuits against large pharmaceutical manufacturers in antitrust cases alleging improper reverse payment and generic suppression schemes.

Mr. Ziegler also served as a special assistant attorney general to several states in litigation involving the sales and marketing practices of major pharmaceutical companies. These cases led to important injunctive relief and significant monetary recovery for those states.

Mr. Ziegler's extensive experience in complex cases also includes consumer class actions alleging improper insurer and lender practices in violation of RICO and RESPA.

Examples of Mr. Ziegler's recent notable cases include *In re Flonase Antitrust Litigation* ($150 million settlement on behalf of direct purchasers); *In re Wellbutrin SR Antitrust Litigation* ($21.5 million settlement on behalf of end-payors); *Alston v. Countrywide, et al.* ($34 million settlement on behalf of borrowers); and *Ligouri v. Wells Fargo & Co., et al.* ($12.5 million settlement on behalf of borrowers).

Mr. Ziegler received his bachelor's degree from Loyola University in 1989. He earned his juris doctor from Tulane University in 1992. He is a member of the Pennsylvania and Louisiana bars and is admitted to practice in several federal district and appellate courts across the country.

ANDREW L. ZIVITZ, a Partner of the Firm, has achieved extraordinary results in securities fraud cases. His work has led to the recovery of more than $1 billion for damaged clients and class members.

Mr. Zivitz has represented dozens of major institutional investors in securities class actions and private litigation. He is skilled in all aspects of complex litigation, from developing and implementing strategies, to conducting merits and expert discovery, to negotiating resolutions. Mr. Zivitz has served as lead or co-lead counsel in many of the largest securities class actions in the U.S., including cases against Bank of America, Celgene, Goldman Sachs, Hewlett-Packard, JPMorgan, Pfizer, Tenet Healthcare, and Walgreens.

Mr. Zivitz's extensive courtroom experience serves his clients well in trial situations, as well as pre-trial proceedings and settlement negotiations. He served as one of the lead plaintiffs' attorneys in the only securities fraud class action arising out of the financial crisis to be tried to a jury verdict, has handled a *Daubert* trial in the U.S. District Court for the Southern District of New York, and successfully argued dispositive motions before federal district and appeals courts throughout the country.

# C O U N S E L

**ASHER S. ALAVI,** Counsel to the Firm, concentrates his practice exclusively on whistleblower litigation, particularly cases brought under the qui tam provisions of the federal False Claims Act. Mr. Alavi has worked on a variety of whistleblower cases involving fraud against government programs, including cases involving healthcare fraud, kickback violations, and government contract fraud. Asher has devoted his entire post-college career to working on behalf of whistleblowers, both as a lawyer and as an advocate for whistleblower rights. During law school, Mr. Alavi served as a Note Editor for Boston College Law School's Journal of Law and Social Justice, and interned with the Department of Justice's Office of Professional Responsibility.

**JENNIFER L. ENCK,** Counsel to the Firm, concentrates her practice in the area of securities litigation and settlement matters. Ms. Enck's practice includes negotiating and documenting complex class action settlements, obtaining the required court approval for settlements and developing and assisting with the administration of class notice programs.

**LISA LAMB PORT,** Counsel to the Firm, concentrates her practice on consumer, antitrust, and securities fraud class actions. Ms. Lamb Port received her law degree, Order of the Coif, summa cum laude, from the Villanova University School of Law in 2003 and her Bachelor of Arts, cum laude, from Princeton University in 2000. Ms. Lamb Port is licensed to practice law in the Commonwealth Pennsylvania.

Prior to joining Kessler Topaz, Ms. Lamb Port was a partner at another class action firm, where she represented institutional and individual investors in securities fraud, breach of fiduciary duty, and shareholder derivative cases, as well as in litigation resulting from mergers and acquisitions.

**DONNA SIEGEL MOFFA** serves as Counsel to the Firm. Throughout her career, both in private practice and in her early years as an attorney in the Bureau of Consumer Protection at the Federal Trade Commission in Washington, D.C., she has concentrated her work in the area of consumer protection litigation. Ms. Moffa has substantial experience handling and supervising all aspects of the prosecution and resolution of national class action litigation asserting claims challenging predatory lending, lending discrimination, violations of RESPA, consumer fraud and unfair, deceptive and anticompetitive practices in federal courts throughout the country. Currently, Ms. Moffa is involved in a number of antitrust class action lawsuits alleging that large pharmaceutical manufacturers have engaged in improper reverse payment and generic suppression schemes.

Ms. Moffa also has been involved in significant appellate work, in both state and federal appeals courts representing individuals, classes, and non-profit organizations participating as amici curiae in appeals.

**JONATHAN NEUMANN,** Counsel to the Firm, concentrates his practice on securities fraud and fiduciary matters. Mr. Neumann represents sophisticated investors in complex litigation brought under federal and state laws. In this role, Mr. Neumann has litigated many high stakes cases from the pleading stage to the eve of trial, resulting in substantial recoveries for aggrieved investors.

Prior to joining the Firm, Mr. Neumann served as a law clerk to the Hon. Douglas E. Arpert of the United States District Court for the District of New Jersey. While in law school, Mr. Neumann was an editor for the Temple International and Comparative Law Journal and a member of the Moot Court Honor Society.

**MICHELLE M. NEWCOMER,** Counsel to the Firm, concentrates her practice in the area of securities litigation. Ms. Newcomer has been involved in dozens of class actions in which the Firm has served as Lead or Co-Lead Counsel, through all aspects of pre-trial proceedings, including complaint drafting, litigating motions to dismiss, for class certification and for summary judgment, conducting document, deposition and expert discovery, and appeals. Ms. Newcomer was also part of the trial team in the Firm's most recent securities fraud class action trial, which resulted in a jury verdict on liability and damages in favor of investors.

Ms. Newcomer has represented many types of individual and institutional investors, including public pension funds, asset managers and Sovereign Wealth Funds. Ms. Newcomer's experience includes traditional class actions, direct actions, and non-U.S. collective actions.

Ms. Newcomer began her legal career with the Firm in 2005. Prior to joining the Firm, she was a summer law clerk for the Hon. John T.J. Kelly, Jr. of the Pennsylvania Superior Court.

# ASSOCIATES

**MATTHEW C. BENEDICT,** an Associate of the Firm, concentrates his practice in the area of mergers and acquisition litigation and stockholder derivative litigation. Mr. Benedict has represented both plaintiffs and defendants in numerous high-profile securities fraud class actions concerning Wall Street institutions' conduct before, during, and in the wake of the 2008 financial crisis.

**CAMERON N. CAMPBELL,** an Associate of the Firm, concentrates her practice in the areas of Corporate Governance and merger and acquisition litigation. Cameron graduated from the Villanova University Charles Widger School of Law in 2020. While in law school, Cameron interned as a law clerk to the Hon. George A. Pagano of the Delaware County Court of Common Pleas and as a summer associate at Grant & Eisenhofer, P.A. Cameron was also a member of the Villanova Trial Team and the Student Bar Association. Prior to jointing the Firm, Cameron practiced corporate governance and mergers and acquisition litigation at a prominent plaintiff's firm in Wilmington, Delaware.

**VARUN ELANGOVAN,** an Associate of the Firm, concentrates his practice in the area of consumer protection. Varun received his JD from Georgetown University Law Center in 2022 and his undergraduate degree from DePaul University in 2015. While at Georgetown, Varun served as an Executive Online Editor for The Georgetown Law Journal from 2021 to 2022. He is licensed to practice in Pennsylvania.

**CONNOR T. FOLEY,** an Associate of the Firm, focuses his practice in the areas of securities litigation and qui tam actions. Mr. Foley received his law degree from the Temple University Beasley School of Law in 2023 and his undergraduate degree from Georgetown University in 2019. While in law school, Mr. Foley interned at the Department of Justice's Civil Division: Aviation, Space and Admiralty Section.

**ALEX B. HELLER,** an Associate of the Firm, concentrates his practice in the areas of securities litigation and corporate governance. Mr. Heller received his law degree from the George Mason University Antonin Scalia Law School in 2015 and his undergraduate degree from American University in 2008. While in law school, Mr. Heller served as an associate editor for the George Mason Law Review. Prior to joining the Firm, Mr. Heller was a partner at a plaintiffs' litigation firm, where he served as chair of the shareholder derivative litigation practice group. Mr. Heller is a Certified Public Accountant (CPA). Prior to his legal career, Mr. Heller practiced as a CPA for several years, advising businesses and auditing large corporations.

**EVAN R. HOEY,** an Associate of the Firm,  focuses his practice in securities litigation. Mr. Hoey received his law degree from Temple University Beasley School of Law, where he graduated cum laude, and graduated summa cum laude from Arizona State University. He is licensed to practice in Pennsylvania and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

DYLAN J. ISENBERG, an Associate of the Firm, focuses his practice in securities litigation. Mr. Isenberg graduated cum laude from Temple University's James E. Beasley School of Law and received his undergraduate degree in Government from Hamilton College. While in Law School, Mr. Isenberg  served as a judicial intern to the Hon. Noel L. Hillman of the U.S. District Court for the District of New Jersey and to the Hon. Ashley M. Chan of the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. Prior to law school, Mr. Isenberg  lobbied on behalf of national trade associations and worked for a member of the U.S. Senate.

JORDAN E. JACOBSON, an Associate of the Firm, concentrates her practice in consumer protection and antitrust litigation. Ms. Jacobson received her law degree from Georgetown University in 2014 and her undergraduate degrees in history and political science from Arizona State University in 2011.Prior to joining the Firm, Ms. Jacobson clerked for the honorable Deborah J. Saltzman, United States Bankruptcy Judge, in the Central District of California. Ms. Jacobson was also previously an associate at a large defense firm, and an attorney in the General Counsel's office of the Pension Benefit Guaranty Corporation in Washington, D.C. Ms. Jacobson is licensed to practice law in Pennsylvania, California, and Virginia.

MAX S.S. JOHNSON, an Associate of the Firm, focuses his practice in securities litigation. Mr. Johnson graduated magna cum laude from the Pepperdine Caruso School of Law in 2022. While at Pepperdine, Mr. Johnson served as a Literary Citation Editor for the Pepperdine Law Review. Prior to attending law school, Mr. Johnson earned his undergraduate degree from the University of Puget Sound in the Business Leadership Program

KEVIN M. KENNEDY, an Associate of the Firm, concentrates his practice on the areas of corporate governance and merger and acquisition litigation. Kevin received his law degree from Temple University's Beasley School of Law in 2022 and his undergraduate degree from La Salle University in 2010. While in law school, Kevin interned as a law clerk to the Hon. Anthony J. Scirica of the Third Circuit Court of Appeals. Kevin also served as a Note/Comment Editor and the Symposium Editor for the Temple Law Review.

JOSHUA S. KESZCZYK, an Associate of the Firm, concentrates his practice in new matter development with a focus on analyzing securities class action lawsuits and direct (or opt-out) actions. Prior to joining the firm, Joshua was an associate at Dechert LLP, where he focused his practice on secured financial transactions involving various asset classes.

LAUREN C. LUMMUS, an Associate of the Firm, concentrates her practice in the areas of corporate governance and merger and acquisition litigation. Mr. Lummus received her law degree from the Temple University Beasley School of Law in 2022 and her undergraduate degree from Haverford College in 2017. While in law school, Lauren interned as a law clerk for the Honorable Carolyn H. Nichols of the Pennsylvania Superior Court and U.S. Magistrate Judge Timothy R. Rice of the U.S. District Court for the Eastern District of Pennsylvania. Mr. Lummus also served as Co-President of the Women's Law Caucus, Research Editor for the Temple International & Comparative Law Journal, and Teaching Assistant for two legal research and writing courses.

MATTHEW T. MACKEN, an Associate of the Firm, concentrates his practice in consumer protection. Mr. Macken graduated from Temple University's Beasley School of Law in 2022. During law school, Mr. Macken served as Managing Editor of the Temple Law Review. As a student, Mr. Macken interned for a judge in the U.S. District Court for the Eastern District of Pennsylvania, as well as in Philadelphia Legal Assistance's Unemployment Compensation Unit and Community Legal Services' Homeownership and Consumer Rights Unit.

AUSTIN W. MANNING, an Associate of the Firm, graduated magna cum laude from Temple University's James E. Beasley School of Law and received her Bachelor of Science in Economics from Penn State University. During law school, Ms. Manning served as a Staff Editor for the Temple Law Review. In her final year, she studied at the University of Lucerne in Lucerne, Switzerland where she received her Global Legal Studies Certificate with a focus on international economic law, human rights, and sustainability. While in Law School, Ms. Manning served as a judicial intern to the Hon. Michael M. Baylson of the U.S. District Court for the Eastern District of Pennsylvania and to the Hon. Arnold L. New of the Pennsylvania Court of Common Pleas. Prior to joining the firm, Ms. Manning was a regulatory and litigation associate for a boutique environmental law firm in the Philadelphia area.

JOHN A. MERCURIO, JR., an Associate of the Firm, concentrates his practice in the area of international actions. Mr. Mercurio is an associate in the Firm's Philadelphia office and graduated magna cum laude from Syracuse University College of Law and received his Bachelor of Arts in Criminal Justice and Psychology from Temple University. While in law school, Mr. Mercurio served as a judicial intern to the Hon. Thérèse Wiley Dancks of the U.S. District Court for the Northern District of New York and spent a semester in Washington D.C. working with the Narcotic and Dangerous Drug Section of the U.S. Department of Justice. He also served as a legal intern at the Office of the New York State Attorney General. Mr. Mercurio is licensed to practice law in Pennsylvania.

MICHAEL W. MCCUTCHEON, an Associate of the Firm, concentrates his practice in the areas of corporate governance and mergers & acquisitions litigation. Mr. McCutcheon graduated cum laude from Rutgers Law School in 2021, earning a certificate in corporate and business law for completing a specialized curriculum in those subjects. He earned his bachelor of science degree from the University of Delaware in 2017, majoring in economics and finance. While in law school, Mr. McCutcheon served as an Executive Board member for the moot court program, and was a Staff Editor for the Rutgers Journal of Law and Public Policy. He also interned for the Honorable Donald J. Stein in New Jersey Superior Court, General Civil Division. Prior to joining KTMC, Mr. McCutcheon clerked for a corporate litigation firm in Wilmington, Delaware.

VANESSA M. MILAN, an Associate of the Firm, concentrates her practice in the area of securities fraud litigation. Ms. Milan is an associate in the Firm's Philadelphia office and received her law degree from Temple University Beasley School of Law in 2019 and her undergraduate degrees in Government & Law and English from Lafayette College in 2016. While in law school, Ms. Milan served as an Articles Editor for the Temple Law Review. Prior to joining the firm, Ms. Milan served as a judicial law clerk to the Honorable Robert D. Mariani, United States District Court Judge for the Middle District of Pennsylvania. Ms. Milan is licensed to practice law in New York and Pennsylvania.

JONATHAN NAJI, an Associate of the Firm, develops and initiates cases involving shareholder derivative and securities fraud, class and individual actions. Mr. Naji seeks to help individuals recover losses caused by unlawful conduct. Mr. Naji received his law degree from Temple University Beasley School of Law and graduated from Franklin & Marshall College. In law school, Mr. Naji interned as a law clerk to the Honorable C. Darnell Jones II of the United States District Court for the Eastern District of Pennsylvania and worked as a summer associate at Berger Harris, LLP.

KYE KYUNG (ALEX) PARK, an Associate of the Firm, concentrates his practice in consumer protection. Mr. Park received his law degree from Temple University James E. Beasley School of Law in 2022 and his undergraduate degree from University of North Carolina at Chapel Hill in 2016. During law school, Mr. Park served as Staff Editor of the Temple Law Review. He is licensed to practice in Pennsylvania.

ANDREW M. ROCCO, an Associate of the Firm, focuses his practice in securities litigation. Andrew received his JD from the University of Pennsylvania Carey Law School in 2021 and his undergraduate degree from Rowan University in 2016. He is licensed to practice in Pennsylvania. Prior to joining the Firm, Andrew was an associate at Dechert LLP, where he focused his practice on secured financial transactions involving various asset classes.

BARBARA SCHWARTZ, an Associate of the Firm, concentrates her practice on new matter development with a focus on analyzing consumer and antitrust class action lawsuits. Ms. Schwartz received her law degree from Yale Law School in 2013 and her undergraduate degree from Temple University in 2010. Prior to joining the firm, Ms. Schwartz was an associate with Duane Morris, where she handled various complex commercial and antitrust matters.

KELSEY V. SHERONAS, an Associate of the Firm, concentrates her practice in the area of consumer protection. Ms. Sheronas received her undergraduate degree from Cornell University in 2016 and her law degree from the Temple University Beasley School of Law in 2021. While at Temple, Ms. Sheronas was recognized for Outstanding Oral Advocacy and was the only member of her graduating class to complete certificates in both Business Law and Trial Advocacy. She served as Executive Editor of the Temple International and Comparative Law Journal from 2020 to 2021. She is licensed to practice in Pennsylvania.

NATHANIEL SIMON, an Associate of the Firm, concentrates his practice in securities litigation. Before joining the firm, Mr. Simon served as a judicial law clerk to the Honorable Mark A. Kearney, United States District Judge for the Eastern District of Pennsylvania. Mr. Simon received his law degree from Villanova University, Charles Widger School of Law in 2018 and his undergraduate degree from Gettysburg College in 2014. While in law school, Mr. Simon served as an Articles Editor for the Villanova Law Review.

ZACHARY M. WINKLER, an Associate of the Firm, concentrates his practice in securities litigation. Mr. Winkler earned his law degree from Georgetown University Law Center, where he was selected to the Barristers' Council honors society, competed with the trial advocacy team, and was a Teaching Fellow. He was also named a Special Pro Bono Honoree in recognition of his 100+ hours of pro bono service. During law school, he served as a legal fellow for Congressman Brendan F. Boyle and as a law clerk for the Honorable J.P. Howard, District of Columbia Office of Administrative Hearings. Mr. Winkler earned his undergraduate degree from Vanderbilt University. He is licensed to practice in Pennsylvania.

# STAFF ATTORNEYS

SARA ALSALEH, a Staff Attorney of the Firm, received her law degree from Widener University School of Law in Wilmington, Delaware and her undergraduate degree in Marketing, with a minor in International Business, from Pennsylvania State University in State College, Pennsylvania. Ms. Alsaleh currently concentrates her practice at the Firm in the area of securities fraud litigation.

Prior to joining the Firm, Ms. Alsaleh practiced in the areas of pharmaceutical & health law litigation. Ms. Alsaleh clerked at the U.S. Food and Drug Administration, as well as the Delaware Department of Justice (Consumer Protection & Fraud Division), where she was heavily involved in protecting consumers within a wide variety of subject areas.

LAMARLON R. BARKSDALE, a Staff Attorney of the Firm, was a former Assistant District Attorney in the Philadelphia DA's Office and veteran of the US Navy.

Mr. Barksdale has experience with securities fraud litigation, complex pharmaceutical litigation, criminal litigation and bankruptcy litigation. Mr. Barksdale has also has also lectured criminal law courses at Delaware Technical and Community College, Newark, Delaware. At KTMC, Mr. Barksdale practices in the area of securities fraud litigation.

ELIZABETH W. CALHOUN, a Staff Attorney of the Firm, concentrates her practice in securities litigation. Ms. Calhoun has represented investors in major securities fraud and has also represented shareholders in derivative and direct shareholder litigation.

Ms. Calhoun has over ten years of experience in pharmaceutical-related litigation including both securities and products liability matters. Prior to joining Kessler, Topaz, Meltzer & Check, Ms. Calhoun was employed with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A. and before that was an associate in the Philadelphia offices of Dechert, LLP and Ballard Spahr, LLP.

STEPHEN J. DUSKIN, a Staff Attorney of the Firm, concentrates his practice in the area of antitrust litigation. Mr. Duskin received his law degree from Rutgers School of Law at Camden in 1985, and his undergraduate degree in Mathematics from the University of Rochester in 1976. Mr. Duskin is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Duskin practiced corporate and securities law in private practice and in corporate legal departments, and also worked for the U.S. Securities and Exchange Commission and the Resolution Trust Corporation.

DONNA K. EAGLESON, a Staff Attorney of the Firm, concentrates her practice in the area of securities litigation discovery matters. She received her law degree from the University of Dayton School of Law in Dayton, Ohio. Ms. Eagleson is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Ms. Eagleson worked as an attorney in the law enforcement field, and practiced insurance defense law with the Philadelphia firm Margolis Edelstein.

PATRICK J. EDDIS, a Staff Attorney of the Firm, concentrates his practice in the area of corporate governance litigation. Mr. Eddis received his law degree from Temple University School of Law in 2002 and his undergraduate degree from the University of Vermont in 1995. Mr. Eddis is licensed to practice in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Eddis was a Deputy Public Defender with the Bucks County Office of the Public Defender. Before that, Mr. Eddis was an attorney with Pepper Hamilton LLP, where he worked on various pharmaceutical and commercial matters.

DEEMS A. FISHMAN, a Staff Attorney of the Firm, concentrates his practice in the area of Securities Fraud.

KIMBERLY V. GAMBLE, a Staff Attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Widener University, School of Law in Wilmington, DE. While in law school, she was a CASA/Youth Advocates volunteer and had internships with the Delaware County Public Defender's Office as well as The Honorable Judge Ann Osborne in Media, Pennsylvania. She received her Bachelor of Arts degree in Sociology from The Pennsylvania State University. Ms. Gamble is licensed to practice law in the Commonwealth of Pennsylvania. Prior to joining Kessler Topaz, she worked in pharmaceutical litigation.

KEITH S. GREENWALD, a Staff Attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Greenwald received his law degree from Temple University, Beasley School of Law in 2013 and his undergraduate degree in History, summa cum laude, from Temple University in 2004. Mr. Greenwald is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Greenwald was a contract attorney on various projects in Philadelphia and was at the International Criminal Tribunal for the Former Yugoslavia, at The Hague in The Netherlands, working in international criminal law.

CANDICE L.H. HEGEDUS, a Staff Attorney of the Firm, concentrates her practice in securities fraud class actions. She received her law degree from Villanova University Charles Widger School of Law and her Bachelor of Arts from Muhlenberg College, cum laude. Ms. Hegedus is licensed to practice in Pennsylvania.

Prior to joining the firm, Ms. Hegedus spent several years at another class action litigation firm where she practiced in the areas of securities fraud, antitrust and consumer matters.

JOSHUA A. LEVIN, a Staff Attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Levin received his law degree from Widener University School of Law, and earned his undergraduate degree from The Pennsylvania State University. Mr. Levin is licensed to practice in Pennsylvania and New Jersey. Prior to joining Kessler Topaz, he worked in pharmaceutical litigation.

JOHN J. MCCULLOUGH, a Staff Attorney of the Firm, concentrates his practice in the area of securities litigation. In 2012, Mr. McCullough passed the CPA Exam. Mr. McCullough earned his Juris Doctor degree from Temple University School of Law, and his undergraduate degree from Temple University. Mr. McCullough is licensed to practice in Pennsylvania.

STEVEN D. MCLAIN, a Staff Attorney of the Firm, concentrates his practice in mergers and acquisition litigation and stockholder derivative litigation. He received his law degree from George Mason University School of Law, and his undergraduate degree from the University of Virginia. Mr. McLain is licensed to practice in Virginia. Prior to joining Kessler, Topaz, he practiced with an insurance defense firm in Virginia.

TIMOTHY A. NOLL, a Staff Attorney of the Firm, concentrates his practice in the area of securities fraud litigation. Mr. Noll received his law degree from the Southwestern University School of Law and his undergraduate degree in Communications from Temple University. Prior to joining the Firm, Mr. Noll was a staff attorney at Grant & Eisenhofer, P.A. and also worked in pharmaceutical litigation.

ELAINE M. OLDENETTEL, a Staff Attorney of the Firm, concentrates her practice in consumer and ERISA litigation. She received her law degree from the University of Maryland School of Law and her undergraduate degree in International Studies from the University of Oregon. While attending law school, Ms. Oldenettel served as a law clerk for the Honorable Robert H. Hodges of the United States Court of Federal Claims and the Honorable Marcus Z. Shar of the Baltimore City Circuit Court. Ms. Oldenettel is licensed to practice in Pennsylvania and Virginia.

ANDREW M. PEOPLES, a Staff Attorney of the Firm, concentrates his practice in the area of Consumer Protection.

ALLYSON M. ROSSEEL, a Staff Attorney of the Firm, concentrates her practice at Kessler Topaz in the area of securities litigation. She received her law degree from Widener University School of Law, and earned her B.A. in Political Science from Widener University. Ms. Rosseel is licensed to practice law in Pennsylvania and New Jersey. Prior to joining the Firm, Ms. Rosseel was employed as general counsel for a boutique insurance consultancy/brokerage focused on life insurance sales, premium finance and structured settlements.

**MICHAEL J. SECHRIST,** a Staff Attorney of the Firm, Concentrates his practice in the area of securities litigation. Mr. Sechrist received his law degree from Widener University School of Law in 2005 and his undergraduate degree in Biology from Lycoming College in 1998. Mr. Sechrist is licensed to practice law in Pennsylvania. Prior to joining Kessler Topaz, Mr. Sechrist worked in pharmaceutical litigation.

**ROBERTA A. SHANER,** a Staff Attorney of the Firm, concentrates her practice in the area of securities litigation. She received her JD degree from the New York University School of Law. She graduated from Dartmouth College with a BA in Asian Area Studies. Ms. Shaner is licensed in Pennsylvania.

**IGOR SIKAVICA,** a Staff Attorney of the Firm, practices in the area of corporate governance litigation, with a focus on transactional and derivative cases. Mr. Sikavica received his J.D. from the Loyola University Chicago School of Law and his LL.B. from the University of Belgrade Faculty Of Law. Mr. Sikavica is licensed to practice in Pennsylvania. Mr. Sikavica's licenses to practice law in Illinois and the former Yugoslavia are no longer active.

Prior to joining Kessler Topaz, Mr. Sikavica has represented clients in complex commercial, civil and criminal matters before trial and appellate courts in the United States and the former Yugoslavia. Also, Mr. Sikavica has represented clients before international courts and tribunals, including – the International Criminal Tribunal for the Former Yugoslavia (ICTY), European Court of Human Rights and the UN Committee Against Torture.

**MELISSA J. STARKS,** a Staff Attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Starks earned her Juris Doctor degree from Temple University--Beasley School of Law, her LLM from Temple University--Beasley School of Law, and her undergraduate degree from Lincoln University. Ms. Starks is licensed to practice in Pennsylvania.

**MICHAEL P. STEINBRECHER,** a Staff Attorney of the Firm, concentrates his practice in the area of securities litigation. Prior to joining Kessler Topaz, Mr. Steinbrecher worked in pharmaceutical litigation.

**ERIN E. STEVENS,** a Staff Attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Stevens was a former associate attorney at a general practice firm where she litigated for a variety of civil and bankruptcy cases.

**BRIAN W. THOMER,** a Staff Attorney of the Firm, concentrates his practice in the area of securities fraud litigation. Prior to joining Kessler Topaz, Mr. Thomer worked in pharmaceutical litigation.

**KURT W. WEILER,** a Staff Attorney of the Firm, concentrates his practice in the area of securities litigation. Prior to joining the Firm, Mr. Weiler was associate corporate counsel for a publicly-traded, Philadelphia-based mortgage company, where he specialized in the areas of loss mitigation and bankruptcy.

ANNE M. ZANESKI, is a Staff attorney in the Firm's Securities Practice Group. Ms. Zaneski focuses her practice in the areas of securities and consumer litigation on behalf of institutional and individual investors. Selected matters that Ms. Zaneski has been involved with include the Valeant Pharmaceuticals-Pershing Square Capital insider trading certified class action team ($250 million settlement) and Lehman Brothers securities fraud litigation co-counsel team ($616 million settlement).

Prior to joining the Firm, Ms. Zaneski was an associate with a New York securities litigation boutique law firm where she was part of the team on the *Engel, et al. v. Refco* commodities case at the National Futures Association still one of the largest collected arbitration awards ($43 million) on behalf of public customers against a brokerage firm. Ms. Zaneski also previously served as a legal counsel for the New York City Economic Development Corporation and New York City Industrial Development Agency in the areas of project finance, bond financing and complex litigation, involving infrastructure projects in a variety of industries including healthcare, education and sports and entertainment, and facilitating tax-exempt and taxable financings. While in law school, Ms. Zaneski was a recipient of the CALI Excellence Award and Kosciuszko Foundation Scholarship and a member of the Securities Arbitration Clinic.

# PROFESSIONALS

**JUSTIN CHANEY,** Client Services Representative at the Firm, concentrates his practice in the Business Development Department where he is responsible for onboarding new clients and liaising between the firm, its clients, and their custodian banks.

Mr. Chaney also provides quality control oversight for ongoing client data collection and online reporting access. He has over two decades of experience in litigation support, and holds an M.B.A. and a B.S. in Organizational Management. Mr. Chaney joined the Firm in 2019.

**JEAN F. CHUBA,** serves as the Director of Operations for Portfolio Monitoring & Claims Administration, overseeing the Operations Team responsible for supporting the Firm's comprehensive *SecuritiesTracker*™ service available to institutional investors. In this role, Ms. Chuba provides vision, direction and oversight to several teams, including client services, client implementation, data intake, claims administration and payments, and client reporting.

Ms. Chuba has over 18 years of experience at Kessler Topaz working with institutional investors and securities class actions, having previously worked as a paralegal in the Firm's Lead Plaintiff department and as a manager of claims administration and client reporting. From her experience and vast knowledge of all of these areas, Ms. Chuba is well equipped to continuously optimize workflow and productivity across the department to best serve the Firm's institutional clients participating in the *SecuritiesTracke*r™ program.

**BRAM HENDRIKS,** European Client Relations Manager at Kessler Topaz, guides European institutional investors through the intricacies of U.S. class action litigation as well as securities litigation in Europe and Asia. His experience with securities litigation allows him to translate complex document and discovery requirements into straightforward, practical action. For shareholders who want to effect change without litigation, Mr. Hendriks' advises on corporate governance issues and strategies for active investment.

Mr. Hendriks' has been involved in some of the highest-profile U.S. securities class actions of the last 20 years. Before joining Kessler Topaz, he handled securities litigation and policy development for NN Group N.V., a publicly-traded financial services company with approximately EUR 197 billion in assets under management. He previously oversaw corporate governance activities for a leading Amsterdam pension fund manager with a portfolio of more than 4,000 corporate holdings.

A globally-respected investor advocate, Mr. Hendriks' has co-chaired the International Corporate Governance Network Shareholder Rights Committee since 2009. In that capacity, he works with investors from more than 50 countries to advance public policies that give institutional investors a voice in decision-making. He is a sought-after speaker, panelist and author on corporate governance and responsible investment policies.

Based in the Netherlands, Mr. Hendriks' is available to meet with clients personally and provide hands-on-assistance when needed.

WILLIAM MONKS, CPA, CFF, CVA, Director of Investigative Services at Kessler Topaz, brings nearly 30 years of white collar investigative experience as a Special Agent of the Federal Bureau of Investigation (FBI) and "Big Four" Forensic Accountant. As the Director, he leads the Firm's Investigative Services Department, a group of highly trained professionals dedicated to investigating fraud, misrepresentation and other acts of malfeasance resulting in harm to institutional and individual investors, as well as other stakeholders.

Mr. Monks's recent experience includes being the corporate investigations practice leader for a global forensic accounting firm, which involved widespread investigations into procurement fraud, asset misappropriation, financial statement misrepresentation, and violations of the Foreign Corrupt Practices Act (FCPA).

While at the FBI, Mr. Monks worked on sophisticated white collar forensic matters involving securities and other frauds, bribery, and corruption. He also initiated and managed fraud investigations of entities in the manufacturing, transportation, energy, and sanitation industries. During his 25 year FBI career, Mr. Monks also conducted dozens of construction company procurement fraud and commercial bribery investigations, which were recognized as a "Best Practice" to be modeled by FBI offices nationwide.

Mr. Monks also served as an Undercover Agent for the FBI on long term successful operations targeting organizations and individuals such as the KGB, Russian Organized Crime, Italian Organized Crime, and numerous federal, state and local politicians. Each matter ended successfully and resulted in commendations from the FBI and related agencies.

Mr. Monks has also been recognized by the FBI, DOJ, and IRS on numerous occasions for leading multi-agency teams charged with investigating high level fraud, bribery, and corruption investigations. His considerable experience includes the performance of over 10,000 interviews incident to white collar criminal and civil matters. His skills in interviewing and detecting deception in sensitive financial investigations have been a featured part of training for numerous law enforcement agencies (including the FBI), private sector companies, law firms and accounting firms.

Among the numerous government awards Mr. Monks has received over his distinguished career is a personal commendation from FBI Director Louis Freeh for outstanding work in the prosecution of the West New York Police Department, the largest police corruption investigation in New Jersey history.

Mr. Monks regards his work at Kessler Topaz as an opportunity to continue the public service that has been the focus of his professional life. Experience has shown and Mr. Monks believes, one person with conviction can make all the difference. Mr. Monks looks forward to providing assistance to any aggrieved party, investor, consumer, whistleblower, or other witness with information relative to a securities fraud, consumer protection, corporate governance, qui-tam, anti-trust, shareholder derivative, merger & acquisition or other matter.

MICHAEL G. KANIA, Client Implementation and Data Manager at the Firm, has over 20 years of experience in securities custody operations, specializing in securities class actions, corporate actions, and proxy voting. Mr. Kania has designed and built securities class action claims processes and applications to support the filing and payment of tens of thousands claims annually, recovering billions of dollars for damaged investors. Mr. Kania has worked with some of largest institutional investors worldwide to educate them about the securities litigation process and to provide or suggest securities litigation solutions to meet their needs. Prior to joining the Firm, Mr. Kania was employed with The Bank of New York Mellon, where he was a Vice President and Manager in Asset Servicing (Securities Custody) Operations.

KATHLEEN MCGUIGAN, serves as the Manager of the Firm's Claims Administration Department. In this role, Ms. McGuigan oversees the analysis of transactional data from the Firm's clients and manages the preparation and filing of proof of claim forms in securities class action settlements. Ms. McGuigan also oversees the Firm's claims auditing services. Ms. McGuigan has been with the Firm for 7 years.

MICHAEL A. PENNA, serves as the Firm's Client Relations Manager and focuses specifically on the Taft-Hartley community. Coming from a family with a long line of labor union workers, Mr. Penna followed suit and has over 10 years of experience in servicing the Taft-Hartley world in finance and accounting.

Prior to joining the firm, Mr. Penna served in many roles in the Taft-Hartley world, spending seven years as an auditor for various labor union funds across the country followed by becoming the assistant controller for the Iron Workers District Council of Philadelphia.

KATELYN A. ROSENBERG, is the manager of the Settlement Claims Payments Team. Ms. Rosenberg oversees all incoming settlement payments and organization of outgoing payments to our clients. She began her work at Kessler Topaz with the Data Intake Team before shifting gears to work as a Claims Payment Analyst, and eventually to Manager of the Settlement Claims Payments Team. Prior to working for Kessler Topaz her background was primarily in education and school counseling.

NICOLE B. SCHOEFFLING, serves as the Marketing and Business Development Manager of the Firm. Ms. Schoeffling focuses on promoting Kessler Topaz's capabilities through various efforts including brand-building, key initiatives, writing engagements, RFP submissions, event partnerships, presentations, and award nominations.

In addition, Ms. Schoeffling manages Kessler Topaz's online presence including the website, social media, and online publications. After graduating from the University of Pennsylvania's software engineer program in 2019, Ms. Schoeffling developed and redesigned the Firm's website.

CHRISTOPHER T. SMITH, Senior Portfolio Analyst at the Firm, concentrates his practice in the area of business development for securities fraud litigation, opt out and direct actions, and global portfolio monitoring for institutional investors.

Mr. Smith has over 15 years of experience in financial services community, beginning his career at PaineWebber/UBS in their Philadelphia office. Prior to joining Kessler Topaz, Mr. Smith worked in case development for Wapner Newman, where he helped develop cases for the firm's FINRA Arbitration Practice.

IAN YEATES, Director of Financial Research & Analysis at Kessler Topaz brings a wealth of experience in investment research and data analysis to the firm. Mr. Yeates leads a group of professionals within Kessler Topaz's Lead Plaintiff Department that are dedicated to protecting the firm's clients by identifying and researching corporate fraud or malfeasance that has resulted in harm to investors and other stakeholders. By leveraging the firm's resources and technology, Mr. Yeates and his team efficiently evaluate and identify potential new matters to pursue on behalf of Kessler Topaz's clients.

Prior to joining Kessler Topaz, Ian spent several years in the private equity industry. Mr. Yeates spent four years with Hamilton Lane Advisors, L.P. before joining the National Bank of Kuwait ("NBK") in New York. At NBK, Mr. Yeates was part of a team tasked with evaluating, structuring and monitoring investments for the bank's proprietary private equity portfolio.

JUAN PABLO VILLATORO, Head of the Firm's *SecuritiesTracker*™ Development. Mr. Villatoro has over 15 years of experience and is responsible for driving continuous improvement and best practices for portfolio monitoring and claims filing for the U.S. and international institutional investors. As a visionary, accomplished Operations and Development Executive, Mr. Villatoro has become an expert in US and non-U.S. securities litigation for domestic and international clients on numerous opt-in securities matters. Over the last few years, Mr. Villatoro has spearheaded the development of best-in-class Securities Litigation Class Action monitoring and claims filing platforms. He is responsible for the development and design of technology platforms and the creation and maintenance of databases and sophisticated data analytics.