**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL No. 1:23-md-03089-BMC |
| THIS DOCUMENT APPLIES TO:<br>ALL CASES | **RESPONSE TO CONSENSUS PLAITIFFS' AMENDED MOTION FOR AN ORDER APPOINTING PLAINTIFFS' PROPOSED LEADERSHIP STRUCTURE AND APPOINTING INTERIM CLASS COUNSEL** |

**I.     INTRODUCTION**

Plaintiffs Claudette Sanes, Daniel Flick, Janis Zimmerman, Thomas Lewis, Dena Fichot, John Jeffrey Ward, Ruta Taito, Karen Schwartz, Michael Lee, Toni Heuchan, Jonathan Brandman, Michelle Garza, Cece Davenport, Randall Sygal, Regina Brookshier, Erzen Krica, Allison Sammarco, and Hollie Verdi (collectively, "LC Plaintiffs") hereby submit this response to the Consensus Plaintiffs' Amended Motion for an Order Appointing Plaintiffs' Proposed Leadership Structure and Appointing Interim Class Counsel (ECF No. 135, the "Leadership Motion"). The LC Plaintiffs present this response in compliance with Local Civil Rule 6.1(b) and in response to inaccurate statements made in the transmittal letter providing the Proposed CMO to this Court. (ECF No. 149.)

The Leadership Motion is premature and fails to comply with the Local Rules and this Court's Individual Practices. It was also filed without any effort to meet and confer with all counsel as mandated in the Court's Proposed CMO. (*See* ECF No. 5.) The "Consensus" Plaintiffs knew at the time of filing their initial motion, which excluded Lynch Carpenter from both tiers of proposed leadership, that the LC Plaintiffs did not support the proposed structure and intended to file their own leadership application. They nonetheless indicated to the Court, and to other Plaintiffs' counsel, that they were "not aware of any lawyer or law firm who opposes the Consensus

1

Plaintiffs' proposed leadership structure." (ECF No. 115-1-1 at 3 n.8.) This inaccurate statement was repeated in the amended Leadership Motion.

The "Consensus" Plaintiffs' proposed leadership structure, albeit over-sized, is comprised of many highly competent law firms and lawyers. The LC Plaintiffs simply want an opportunity to meaningfully meet and confer and, if the parties are unable to stipulate to an agreed upon leadership structure, to present an application for leadership for the Court's consideration. As a result, the LC Plaintiffs respectfully ask this Court to deny the Leadership Motion without prejudice to refile after meeting and conferring, within the timeline ordered by the Court.

## II.     PROCEDURAL BACKGROUND

### A.     The LC Plaintiffs' Lawsuits

The LC Plaintiffs have been involved in this multi-district litigation since its inception. On 29 September 2023, LC Plaintiffs Thomas Lewis and Dena Fichot filed a class action complaint against Johnson and Johnson, Johnson and Johnson Consumer Inc., Kenvue Inc., and McNeil Consumer Healthcare Inc.[1] in the District of New Jersey (Case No. 3:23-cv-20816-GC-RLS). That same day, LC Plaintiffs John Jeffrey Ward, Karen Schwartz, and Ruta Taito also filed a class action complaint Johnson and Johnson, Johnson and Johnson Consumer Inc., Kenvue Inc., and McNeil Consumer Healthcare Inc.[2] in the District of New Jersey (Case No. 3:23-cv-20818-MAS-RLS).

On 11 October 2023, LC Plaintiffs Randall Sygal, Regina Brookshier, Erzen Krica, Allison Sammarco, and Hollie Verdi filed a class action suit against Reckitt Benckiser LLC, later corrected to RB Health (US) LLC, in the District of New Jersey (Case No. 2:23-cv-21090-BRM-JRA). On

---

[1] Defendants were later corrected to name solely Johnson and Johnson Consumer Inc.

[2] *Id.*

12 October 2023, LC Plaintiffs Michael Lee, Toni Heuchan, Jonathan Brandman, Michelle Garza, and CeCe Davenport filed a class action lawsuit against The Procter & Gamble Company and Helen of Troy Limited in the District of New Jersey (Case No. 2:23-cv-21126-SRC-ESK). Finally, on 13 October 2023, LC Plaintiffs Claudette Sanes, Daniel Flick and Janis Zimmerman filed a class action lawsuit against Bayer HealthCare LLC in the District of New Jersey (Case No. 2:23-cv-21163-CCC-MAH).

In their filings with the Judicial Panel on Multi-District Litigation ("JPML"), the LC Plaintiffs argued for transfer to this Court and were one of only a handful of Plaintiff firms to do so. (French Decl. ¶ 2.) On 30 November 2023, Scott Braden appeared on behalf of the LC Plaintiffs at the JPML hearing. (*Id.*) After the hearing, Braden informed certain "Consensus" Plaintiffs' counsel that Lynch Carpenter was available to work collaboratively and conference at any time. (*Id.*) The LC Plaintiffs did not hear from the "Consensus" Plaintiffs again until 8 February 2024. (*Id.*)

**B.   The Court's Initial Order**

On 21 December 2023, the Court issued the Proposed CMO and directed the parties to meet and confer and "jointly file only one proposed CMO that is agreed upon by all parties." (ECF No. 5.) The Proposed CMO provided the parties with a specific process to resolve issues pertaining to the organization of counsel. (*Id.* at § IV.) It stated that, before the initial status conference, "counsel on each side shall confer and attempt to seek consensus on whether lead counsel and liaison counsel should be appointed." (*Id.*) "Plaintiffs' counsel and defense counsel shall attempt to reach and file a stipulation as to the organization of their respective counsel." (*Id.*) If the parties are unable to do so, only then may "any party file a motion for the appointment of lead and/or liaison counsel." (*Id.*) The deadline was blank because the Court had not yet entered a Proposed CMO. (*Id.*)

### C. The "Consensus" Plaintiffs Failed to Meet and Confer on the Leadership Motion

The LC Plaintiffs were neither involved nor otherwise included in any discussions with other Plaintiffs' counsel regarding a plaintiffs' leadership structure. On 8 February 2024, James Cecchi of Carella Byrne Cecchi Brody & Agnello, P.C., one of the attorneys who filed the Leadership Motion and a proposed member of the "Plaintiffs' Executive Committee" (ECF No. 135-2 at 3), reached out to Gary Lynch. (French Decl. ¶ 3.) Cecchi informed Lynch that certain counsel had formed a leadership slate of 20 firms, that it did not include Lynch Carpenter, and that counsel intended to file a "consensus" motion immediately. (*Id.*) During that conversation, Lynch made clear that the LC Plaintiffs did not support the proposed leadership structure and intended to file a separate application for leadership at the appropriate time. (*Id.*) The next day, on 9 February 2024, the "Consensus" Plaintiffs filed their initial motion for leadership. (ECF No. 115, the "First Motion.") The "Consensus" Plaintiffs stated that they were "not aware of any lawyer or law firm who opposes the Consensus Plaintiffs' proposed leadership structure." (ECF No. 115-1-1 at 3 n.8.) In the First Motion, the LC Plaintiffs' counsel (under the wrong name) were inaccurately included in the "the list of 58 firms supporting this structure." (ECF No. 115-2.)

On 14 February 2024, the "Consensus" Plaintiffs filed their amended Leadership Motion. (ECF No. 135.) Lynch Carpenter, again erroneously identified as Carlson Lynch, was again inaccurately included among the purported supporters. (ECF No. 135-3.) The "Consensus" Plaintiffs also repeated the inaccurate statement that they were unaware of any opposition to the proposed leadership structure. (ECF No. 135-1 at 4 n.8.)

### D. The "Consensus" Plaintiffs Failed to Meet and Confer on the Proposed CMO

On 22 February 2024, the LC Plaintiffs, through counsel, made the first attempt to meet and confer with all Plaintiffs' counsel regarding the Proposed CMO. (French Decl. ¶ 4.) None of

4

the "Consensus" Plaintiffs had attempted to do so, before or after filing the Leadership Motion. (*Id.*) In response to the LC Plaintiffs' reaching out to all Plaintiffs' counsel to begin discussions regarding the Proposed CMO, the "Consensus" Plaintiffs suddenly indicated they intended to submit a Proposed CMO to the Court "shortly." (*Id.*) The LC Plaintiffs requested that the Proposed CMO be shared with all Plaintiffs' counsel for review before submission to the Court. (*Id.*) The LC Plaintiffs also informed all Plaintiffs' counsel of their position that the Leadership Motion was premature under the Proposed (and not entered) CMO. (*Id.*) The LC Plaintiffs requested that counsel withdraw the pending motion without prejudice so that all Plaintiffs' counsel could meet and confer and follow the timeline to be set when the Court entered the CMO. (*Id.*)

On 23 February 2024, at 12:07 p.m. EST, the "Consensus" Plaintiffs circulated a Proposed CMO that they "intend[ed] to submit to the Court." (French Decl. ¶ 5.) The "Consensus" Plaintiffs further represented that the defense had already signed off and approved the Proposed CMO (that had not yet been circulated to all Plaintiffs' counsel). (*Id.*) They asked for any edits or comments to be submitted "by 5:30pm Eastern time today." (*Id.*) Contrary to the representations in the transmittal letter (ECF No. 149), the "Consensus" Plaintiffs neither requested nor provided counsel with a "final three-day comment period." (French Decl. ¶ 5.) Nonetheless, at approximately 6:08 pm EDT on 23 February 2024, the LC Plaintiffs proposed one small edit: to change the deadline to file leadership motions to 19 March 2024. (*Id.*) This deadline is two weeks from the first proposed Initial Case Management Conference and would provide the Court with sufficient time to review the stipulation and/or competing motions while providing counsel with an opportunity to comply with the CMO and attempt to reach a stipulation. (*Id.*) The "Consensus" Plaintiffs did not respond. (*Id.*) Instead, on 27 February 2024, the "Consensus" Plaintiffs filed the Proposed CMO. (ECF No. 149.)

### III.     ARGUMENT

#### A.     The Leadership Motion Fails to Comply with the Local Rules and This Court's Individual Practices

Absent a court order, both the Local rules and the Court's Individual Practices require the parties to engage in an informal dispute resolution process before filing any discovery or non-dispositive pretrial dispute motions. Local Rule 37.3(a) requires the parties to "attempt to meet and confer in good faith in person or by telephone in an effort to resolve the dispute." If the "attorneys for the affected parties cannot agree on a resolution," "they shall notify the Court by letter not exceeding three pages in length outlining the nature of the dispute. Local Civil Rule 37.3(c). "Except for the letters and attachments authorized herein . . . papers shall not be submitted with respect to a dispute governed by this rule *unless the Court has so directed*." *Id.* (added emphasis). Similarly, this Court's Individual Practices require that, "[f]or all other motions except for (1) provisional remedies, reconsideration, and post-judgment relief, or (2) motions in habeas corpus, social security, and bankruptcy appeals, a pre-motion conference is required before a party may file any motion." Individual Prac. of Judge Brian M. Cogan at § III.A.2. The parties are then directed to submit detailed letters and responses "unless the Court directs otherwise." *Id.* The "Consensus" Plaintiffs failed to follow any of these instructions.

#### B.     The Leadership Motion Is Premature and Fails to Comply with the Proposed CMO

On 9 February 2024, the "Consensus" Plaintiffs filed their First Motion for leadership—nearly three weeks before the deadline for the Parties to submit a *Proposed* CMO (suggesting a deadline for leadership applications) and before any such order was entered. The First Motion does not comply with either Local Rule 37.3(a) or Section III.A.2 of the Court's Individual Practices. In the First Motion, "Consensus" Plaintiffs admit that they did not meet and confer with all Plaintiffs' counsel before filing. (ECF No. 115-1 at 2-3.) Although the First Motion refers to conferences with

6

certain firms, none of the supporting declarations contain the required "factual information . . . necessary for the decision of the motion." *See* Local Rule 7.1(a)(3). And, as established above, the "Consensus" Plaintiffs inaccurately represented that Lynch Carpenter supported their proposed structure and that they were unaware of any opposition. (ECF No. 115-1-1 at 3 n.8, ECF No. 115-2; French Decl. ¶ 3.) On 14 February 2024, without leave of Court, the "Consensus" Plaintiffs filed an amended motion. (ECF No. 135.) The Leadership Motion contained the same incorrect statements about the LC Plaintiff's position with respect to leadership.

    **C.    The Court Should Deny the Leadership Motion Without Prejudice so the Parties Can Meet and Confer**

To date, Plaintiffs' counsel have yet to meaningfully meet and as ordered by the Court. It appears that the "Consensus" Plaintiffs have also failed to meaningfully meet and confer with defendants. (*See* ECF No. 151.) After undersigned counsel sent the first emails to all Plaintiffs' counsel, numerous other Plaintiffs' attorneys contacted the LC Plaintiffs and indicated they also would like to seek a leadership appointment. (French Decl. ¶ 6.) Since the time of those initial contacts from other Plaintiffs' counsel, the "Consensus" Plaintiffs represent that they have added three additional "supporters." (ECF No. 149.) The LC Plaintiffs have not entered into any agreements or understandings with other Plaintiffs' counsel regarding the division of work or fees in this litigation. (French Decl. ¶ 6.)

Lynch Carpenter has handled numerous false advertising cases like this one. (French Decl. ¶ 7.) The firm has experience leading large MDL actions like this one. (*Id.* at ¶ 8.) Lynch Carpenter has a strong history of working collaboratively and successfully with other Plaintiffs' counsel in large, consolidated actions like this one. The LC Plaintiffs remain optimistic that counsel can work together to efficiently prosecute and defend this action. They want nothing more than a fair opportunity to apply for a leadership appointment at the appropriate time and after meaningful

efforts to reach agreement among all Plaintiffs' counsel regarding an appropriately sized leadership structure. Denying the "Consensus" Plaintiffs' motion will allow counsel the opportunity to meet and confer and potentially reach such an agreement, thereby obviating the need for any competing motions. There is no prejudice if the Court were to deny the Leadership Motion as premature, and doing so would secure the just, speedy, and inexpensive determination of this action.

## IV. CONCLUSION

For these reasons, the LC Plaintiffs respectfully request that the Court deny the Leadership Motion without prejudice to refile after an opportunity to meaningfully meet and confer, as contemplated by the Proposed CMO, the Local Rules, and this Court's Individual Practices.

Dated: 28 February 2024

**LYNCH CARPENTER, LLP**

By: */s/ Scott G. Braden*

Jennifer M. French (*pro hac vice pending*)
jennf@lcllp.com
Scott G. Braden (*admitted pro hac vice*)
scott@lcllp.com
1234 Camino del Mar
Del Mar, California 92014
Telephone:   (619) 762-1900
Facsimile:   (858) 313-1850

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on 28 February 2024, I electronically filed the above-referenced document with the Clerk of the Court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

Dated: 28 February 2024

**LYNCH CARPENTER, LLP**

By: */s/ Scott G. Braden*
Scott G. Braden