1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     ------------------------------x
 3                                       23-MD-3089(BMC)
     In Re: Oral Phenylephrine
 4   Marketing and Sales Practices
     Litigation
 5                                       United States Courthouse
                                         Brooklyn, New York
 6
                                         April 2, 2024
 7                                       6:00 p.m.
     ------------------------------x
 8
              TRANSCRIPT OF CIVIL CAUSE FOR PROCEEDING
 9             BEFORE THE HONORABLE BRIAN M. COGAN
              UNITED STATES SENIOR DISTRICT JUDGE
10

11   APPEARANCES

12
     For the Plaintiffs:      DOUGLAS & LONDON
13                            BY:  MICHAEL LONDON, ESQ.

14                            FEGAN SCOTT LLC
                              BY:  ELIZABETH FEGAN, ESQ.
15
                              LIEFF CABRASER HEIMANN &
16                            BERNSTEIN LLP
                              BY:  JONATHAN SELBIN, ESQ.
17
                              DI CELLO LEVITT GUTZLER LLC
18                            BY:  ADAM LEVITT, ESQ.

19                            SULTZER & LIPARI PLLC
                              BY:  JASON SULTZER, ESQ.
20
                              SEEGER WEISS LLP
21                            BY:  CHRISTOPHER SEEGER, ESQ.

22            (Continued on next page.)

23

24

25
```

2

1    (Appearances)

2

3    For Defendant            COVINGTON & BURLING LLP
     Procter & Gamble Co.     BY:  ANDREW SOUKUP, ESQ.
4

5    For Defendant            KIRKLAND & ELLIS
     GlaxoSmithKline          BY:  JAY LEFKOWITZ
6    Consumer Healthcare
     Holdings
7

8    For Defendant            O'MELVENHY & ELLIS
     Johnson & Johnson        BY:  HANNAH CHANOINE
9    Consumer

10

11

12

13
     Court Reporter:          Rivka Teich, CSR, RPR, RMR, FCRR
14                            Phone:  718-613-2268
                              Email:  RivkaTeich@gmail.com
15
     Proceedings recorded by mechanical stenography.  Transcript
16   produced by computer-aided transcription.

17

18

19

20

21

22

23

24

25

PROCEEDINGS                                     3

1              (Video Conference.)

2          THE COURT:  Let's call the case and not get

3    appearances, which I assume the court reporter has already

4    gathered.

5          THE COURTROOM DEPUTY:  Good afternoon.  In Re: Oral

6    Phenylephrine Marketing and Sales Practices Litigation.

7          THE COURT:  Case 23-CV-MDL-3089.

8          I think there is about, if I'm counting right, 60

9    people on the phone.  Obviously I'm only go to have one

10   spokesperson per party, and hopefully less than that.

11         We've got a lot to talk about.  I'd like to plow

12   through it like Sherman through Georgia if we can.

13         Let me ask this about the plaintiffs' counsel

14   proposal as to who is going to represent what and how many

15   firms we're going to have.  The plaintiffs seem all in

16   agreement -- I'll get to the defendants in a minute -- the

17   plaintiffs seem in agreement, am I right about that?

18         MR. LONDON:  Yes, the consensus of the plaintiffs is

19   that we are in agreement.

20         THE COURT:  I have to find your box.  I see you.

21         The defendants had some concern about appointing

22   someone to be class counsel at this point.  Let me hear from

23   the defendant who raised that concern.

24         MS. CHANOINE:  Yes, your Honor.  Hannah Chanoine on

25   behalf of Johnson and Johnson Consumer, but I'll be speaking

PROCEEDINGS                                    4

1   on behalf of the joint defendants on this point.

2           We have concerns with the request for appointment of

3   interim class counsel because what class are we talking about?

4   It's premature.  It's not clear what classes they will be

5   appointed to represent.  The motion doesn't identify a

6   proposed class.  There is no consolidated complaint that

7   identifies a class.

8           And we don't have an objection to the Court

9   appointing a leadership structure, obviously; but the

10  plaintiffs haven't explained why interim class counsel is

11  necessary or appropriate.

12          THE COURT:  As I understand it, the interim class

13  counsel they want to appoint is the same as one of the

14  leadership positions they are already filling.  So what is the

15  harm?

16          MS. CHANOINE:  To the extent --

17          THE COURT:  I agree, it's vague.  It doesn't really

18  tell us what they are going to do.  But if they want it, does

19  it cost the defendants anything?  Does it cost the case any

20  inefficiencies?

21          MS. CHANOINE:  Your Honor, the vagueness is itself

22  the problem.  We don't really know what this is going to

23  encompass.  And we certainly don't want to be waiving any of

24  our any concerns that might arise later.

25          THE COURT:  Okay.  Mr. London, are you trying to get

PROCEEDINGS                          5

1  a leg up on class certification to say, aha, there must be a

2  class because we have class counsel appointed?

3          MR. LONDON:  Absolutely not -- I probably am, your

4  Honor, but I'm not.  We're not, your Honor.

5          We're surprised that this objection -- we think,

6  obviously it should be done and it will assist in allowing us

7  to move forward to get to the topic of complaint and master

8  complaint and the form it will take.  As set forth in our

9  papers and response, this is quite standard, and we hope we

10  can get past this with counsel.

11          THE COURT:  Let's not worry about standard or we'll

12  get too early in a crabs path, a place I don't want to be.

13          What is the harm to get that presumably and then

14  revisiting the idea of class counsel?

15          MR. LONDON:  I don't think there is a harm.  If your

16  Honor wants to hear more argument on this, frankly, as the

17  consensus group we have placed folks to argue this,

18  Mr. Levitt, if you want to hear the strong beliefs why it is

19  appropriate and warranted now.  I'll turn to the tables to

20  Mr. Levitt.  As your Honor said, there is no significant harm;

21  but frankly, there is no harm in not doing it.

22          THE COURT:  Okay.  I can see harm in doing it.  Just

23  because it's jumping the gun because we don't know who the

24  class counsel is representing without a definition of the

25  class.  So I'd like at least a proposed definition of the

PROCEEDINGS                                    6

1    class before I go ahead and appoint class counsel.

2           I'll give you one more pitch at it, Mr. Levitt, then

3    I want to move on.

4           MR. LEVITT:  Adam Levitt on plaintiffs' behalf.  I

5    occasionally will stutter when I speak.  It's not a problem

6    for me, and shouldn't be for you.  Anything that I say that

7    isn't a hundred percent clear, I'll go right back over it.

8           THE COURT:  Okay.

9           MR. LEVITT:  In terms of your Honor's question about

10   what is the harm.  Could we push it down the road, sure we

11   could.  But traditionally, not even traditionally in every

12   class case that I've been involved in, whether it's been

13   certainly as large a group as this, appointing interim class

14   counsel creates a sense of clarity and purpose.  We then are

15   able to speak for the class we ultimately propose.  We're not

16   asking for an appointment of actual class counsel, which will

17   occur at the class certification stage.  We're asking for the

18   interim appointment, which let's us go forward and speak for

19   the proposed class.

20          In terms of the defendants' point that they don't

21   want to waive anything.  The defendants aren't waiving

22   anything.  They will have every opportunity at the class

23   certification stage to say we are no good at what we do;

24   that's a conversation we can have at that point.

25          But in between now and then, there is no harm in

PROCEEDINGS                                    7

1   appointing.  And it creates a greater sense of efficiency and

2   streamlining the process and investing us to the proposed

3   leadership group with the ability to speak for whatever class

4   we ultimately seek certification of and the ultimate

5   appointment as class counsel.

6          THE COURT:  Go ahead.  I will appoint the proposed

7   class interim class counsel, interim class counsel.  I will

8   expressly declare that it is without the waiver of any rights

9   on the part of the defendants.  It is not a precursor to say

10  that class action treatment is appropriate for this case or

11  that any proposed definition of a class or sub class is

12  appropriate.  That's all reserved.

13         But the plaintiffs seem to think there is something

14  useful that might come of that; I can't see any harm to it.

15  So go ahead let's do that.  Okay.

16         MR. LEVITT:  Thank you, your Honor.

17         THE COURT:  Next, the defendants are not interested

18  in any liaison counsel; is that right?

19         MS. CHANOINE:  Yes, your Honor.  We see no need for

20  formal organization of defense counsel or appointment of

21  defense liaison counsel at this time.  We have been operating

22  in a coordinated and efficient manner.  We have been able to

23  communicate in an efficient manner and will continue to do so.

24  Frankly, appointment of lead defense counsel unnecessarily and

25  unfairly burdens any particular defendant with additional cost

PROCEEDINGS                                8

1    and burdens of leadership.  And we just haven't seen any need

2    for it at this stage.

3           Plaintiffs' counsels' experience in other cases is

4    not relevant or sufficient reason.  We have contrary

5    experience among us.  They haven't identified any real reason.

6    At minimum, we would prefer any discussion around this to wait

7    until after a motion to dismiss.  If the Court thinks it's

8    beneficial, we can also discuss the proposals.

9           THE COURT:  With one caveat.  I'll let the

10   defendants do their own representations just like I'm letting

11   the plaintiffs do theirs.  But if there is going to be a

12   motion directed to what I think will be a consolidated

13   complaint, which we'll talk about in a second, if I get 12

14   largely identical briefs, I'm not going to be happy about

15   that.

16          MS. CHANOINE:  If I may speak to that, your Honor.

17          I think I can represent very forcefully on behalf of

18   defense group that is unilaterally not our plan.  I can hand

19   it over to Mr. Soukup to speak more on that, on the subject of

20   our proposal on a motion to dismiss directed to a consolidated

21   master complaint, but our plan right now is one motion to

22   dismiss.

23          THE COURT:  Okay.

24          MS. CHANOINE:  We can address the threshold

25   preemption issues.

PROCEEDINGS                          9

1          THE COURT:  I don't think I need to hear from anyone

2     else on of that.  That's my only concern.

3          Plaintiffs are in no position to insist on a liaison

4     counsel for the defendants, right, Mr. London?

5          MR. LONDON:  No, your Honor, with that

6     representation; that was obviously a concern of ours.  As I'm

7     in a case with another group here and we have been working

8     cooperatively with the three or four defense spokespersons to

9     date.  What I have seen in the past is at times when other

10    issues come up, we are forced to -- in that other case -- meet

11    and confer with nine different products makers.  I hope that

12    doesn't come up.

13         But as counsel has represented, we'll continue to

14    work with their three or four spokespersons that will serve in

15    this quasi-liaison role.  We don't care, that's fine.

16         THE COURT:  That's fine.

17         So next let's talk about a consolidated complaint.

18    The plaintiffs are in favor of that?

19         MR. LONDON:  I'm going to turn the mic over to

20    Jonathan Selbin to speak to that.

21         MR. SELBIN:  Thank you, Mike.  And thank you, your

22    Honor.

23         We will obviously take on the job of putting

24    together a consolidated master complaint.  That's going to

25    take a little bit of time post-appointment of leadership.  And

1    so, in light of that, and in light of what we have heard from

2    the defendants about their desire to get the preemption issue

3    teed up early, which we welcome -- we think this isn't a case

4    that is subject to preemption, so we think we'll be able to

5    persuade your Honor of that.  That's an issue for another day.

6           We have a proposal that we'd like to discuss with

7    the defendants.  We haven't had an opportunity to meet and

8    confer with them about it yet, but I will flag it.  Which is,

9    that we essentially endeavor to get on file in very short

10   order what I would call a skinny complaint or a bellwether

11   complaint.  Essentially, allegedly, the core claims for a

12   single state, we would suggest New York would be an obvious

13   choice given that your Honor is New York federal judge

14   familiar with the laws of New York, but we can talk to the

15   defendants about what state.  And essentially allow them to

16   file a motion to dismiss on preemption grounds early, which

17   they want to do against that complaint, while we continue to

18   work on putting together the master complaint.

19          And the reason there is, as your Honor knows, there

20   are a couple dozen or more defendants here at issue for who

21   the issue, the laws of many states with a large number of

22   plaintiffs and getting that fully put-together master

23   complaint is not going to enable us, I don't think, to get

24   this preemption motion teed up early.  That would be our

25   proposal.  Again, we haven't met and conferred yet; we're

PROCEEDINGS                                    11

1    happy to do that.

2                We would seek some guidance from your Honor about

3    your willingness to consider that kind of approach.

4                THE COURT:  Let me hear if any defendant, without

5    committing yourself, you haven't had a chance to think about

6    it or talk to each other, does anybody have an adverse

7    reaction to that?

8                I appreciate what counsel is saying.  The

9    consolidated complaint is going to have to go through the

10   separate consumer statutes in 50 states that's not all

11   representative to the preemption issue.  I think there are

12   central issues that probably span all 50 states that you

13   probably could cover in one, as counsel called it, skinny-down

14   complaint.  Anyone think that's totally not viable, we don't

15   even want to think about it?

16               MR. SOUKUP:  I'll be speaking on behalf of all the

17   defendants here.  From our perspective, that's an intriguing

18   proposal.  That's the first we're hearing about it.  We ask

19   the plaintiffs to share their views, since this is the first

20   time we're hearing about it.

21               But our initial reaction is we're a little concerned

22   about the prospect of whack-a-mole and piece meal having to

23   address piece meal issues here in a variety of situations.  It

24   could be inefficient for us if we get the benefit of the

25   Court's ruling granting preemption, and then for plaintiffs to

1    turn around and say, well, okay, that's now not going to

2    happen so here is the next one.  But the idea, while I invite

3    other defendants to weigh in, it does have some appeal to

4    getting the threshold of cross-cutting issues resolved early.

5    From our perspective, that should be the absolute first issue

6    that the Court considers here.  We do think there is a strong

7    preemption defense.

8             THE COURT:  I think if we go with this, Mr. Selbin,

9    you got to commit to it.  That is to say, if I find there is

10   preemption -- I have no idea at this stage whether there is

11   preemption -- then you can't say, okay, the judge has granted

12   the motion to dismiss now we'll file an amended complaint that

13   we think can get around preemption.  Because that defeats the

14   purpose.  We'd be at just as long a schedule as having a

15   master consolidated complaint with a full exposition as there

16   could possibly be.

17            MR. SELBIN:  I think it's a fair point, your Honor.

18   In the context of meeting and conferring with the defendants

19   on this, which we can do this week as far as I'm concerned, we

20   can address that proactively in our discussions.

21            I do think, for what it's worth, that we can

22   probably get that skinny New York, or whatever complaint it's

23   ultimately going to be, on file certainly this month.  So I

24   think that will move the process forward and allow them to get

25   their early shot at the preemption issue.

PROCEEDINGS                                     13

```
 1              THE COURT:  I'm going to leave it to everybody to

 2      talk and see if you can work something out.  Obviously, I

 3      think any defendant probably has a veto on the whole thing

 4      since we don't have a spokesperson for all defendants.  If

 5      every defendant can get behind one plan, reach an agreement

 6      with the plaintiffs, I think that might work, might.  Okay.

 7              MR. SELBIN:  Thank you, your Honor.

 8              THE COURT:  Next, evidence preservation.  I assume

 9      that all the defendants' counsel put their clients on notice,

10      everything is being preserved.  This is not going to be a

11      problem, right?

12              MS. CHANOINE:  That's correct, your Honor.

13              THE COURT:  And I take it, you're going to start

14      giving me proposed confidentiality orders, protocols, things

15      like that, there are a lot of documents to search here.  When

16      can I expect those?  Do I have to wait for a master complaint

17      or even the skinny complaint on preemption to get those

18      preliminary orders out of the way?

19              MR. LONDON:  No.  I think those foundational orders

20      given the, I believe appointment, of a steering committee,

21      that could move forward.  We can begin those processes with

22      the defendants with the proposed protective order.  We can

23      send them a small working group already on some of the ESI

24      issues, a topic I'm very familiar with.  But we'll get

25      together with the defendants and get something committed to
```

PROCEEDINGS                                          14

1    the Court.  I venture to say within 30 days, but hopefully

2    three weeks or so, on a protective order on the side protocol.

3              MS. CHANOINE:  May I be heard on this?

4              THE COURT:  Sure.

5              MS. CHANOINE:  Thank you.  We have no objection to

6    starting to work on some of these preliminary issues like

7    protective orders, ESI orders.  I do anticipate it will take

8    sometime.

9              One of the downsides with large industry MDLs like

10   this is it creates complexity because many of the defendants

11   here are competitors.  So there are appropriate protections

12   that need to be negotiated, not just with the plaintiffs but

13   also taking into account that defendants here, while we are

14   committing to working cooperatively here, we are also

15   competitors.  Based on my experience in other cases, sometimes

16   this takes 60 days to work out.  We'll work as expeditiously

17   as we can and work with the plaintiffs on this here too.

18             THE COURT:  I understand the competitive pressures

19   and there are ways to do it, with attorneys-eyes-only and

20   firewalls, things like that, you know all those ways.

21             Sixty days seems a little long for me; but if you

22   really do it in 60 days, I won't care.  So see if you can do

23   that.  Okay.

24             Next, I think the plaintiffs raised the issue of

25   Rule 26 disclosures.  What is up with that?

PROCEEDINGS                                     15

1          MR. LONDON:  We think, at least at this point, to

2   get the automatic disclosures from the defendants we certainly

3   don't need them, and my count is 102 cases, but instead a

4   master set of these disclosures.  Everything has been stayed

5   since the transfer to your Honor, and some district courts

6   before that.  We think at the very least getting a master set

7   from each defendant moving forward.  We can discuss with

8   counsel a timeline if they need 30 days or 45 days from now.

9   But that's what we think would be prudent to move forward with

10  discovery at this point and then engage on the 26(f)

11  conference on other matters.

12         THE COURT:  I don't know how the defendants feel

13  about it.  It seems to me, in a case like this, it's really

14  hard to do Rule 26 disclosures this early in the case.  Maybe

15  they take the Rule 26 disclosure very seriously.  I don't let

16  them get that summary judgment if they didn't disclose.  I'm

17  not sure everybody knows their case well enough to be able to

18  say what evidence supported it at this early stage.  But if my

19  concern is not well-based, then fine, let's get it going

20  because that's what you're going to use to start drafting your

21  interrogatories and document requests.

22         Any defendants share my concern?  Or you think you

23  can get that in in 30 or 45 days?

24         MR. LEFKOWTIZ:  Jay Lefkowtiz representing

25  GlaxoSmithKline but speaking for the whole group.

PROCEEDINGS                                    16

1          I think that it's very hard to understand where this

2     case is going.  What would be appropriate in the initial

3     disclosure, especially hearing your perspective on how

4     seriously you take them, and we will take them just as

5     seriously as the Court does, without seeing the master

6     complaint, without understanding what the real target is here,

7     I think there is a lot of work that can't really be done.  The

8     complaint really should be the first salvo in this case.  And

9     I know it may take them a little bit of time, but we are

10    already anticipating what that is going to look like, so we're

11    already working on our motion to dismiss.

12         And I actually think maybe the most efficient thing

13    to do so that we don't have to worry about this kind of

14    specter of whack-a-mole, is figure out how much time they need

15    to get their master complaint in.  Everything can tee off from

16    there.

17         But we will represent that we can file our motion

18    very shortly after that is filed.  Because, as I said, we're

19    already anticipating what it is going to be, we're drafting,

20    and we'll just have to fine tune things when we see their

21    complaint.  Then we can get all the rest of this on the road.

22         THE COURT:  Are you talking about the skinny

23    complaint or the big complaint?

24         MR. LEFKOWTIZ:  I'm talking about the large

25    complaint, the real complaint that they are going to file.

PROCEEDINGS                                            17

1          Because my only concern is they will file a

2   complaint under New York and then they are going to, in the

3   context of other state law issues, raise different types of

4   conduct.  And then all of a sudden, we're not necessarily

5   going to have a ruling that addresses everything that they are

6   alleging would be at issue.

7          THE COURT:  It's just disclosure.  It's not any

8   rulings.  Basically, if you look at any random sample of five

9   complaints that have been filed, even before they are

10  consolidated, you know what they are being sued for.  Right.

11         Let me put it this way, because you don't have a

12  consolidated complaint I'll be more forgiving than I usually

13  am in a Rule 26 disclosure that needs to be supplemented after

14  the consolidated complaint is filed.  If there is something in

15  there that you go, I couldn't anticipate this, there is

16  something strange about Wyoming law that I didn't know about,

17  that would be fine.  But I really think I don't want to wait

18  60 days to get a consolidated complaint and then have the Rule

19  26(a) disclosures.  It's just waiting too long.

20         Look, we boil down to brass tacks.  Everybody knows

21  what this case is about.  Really.  There will be lots of legal

22  issues and nuances and all that in terms of the facts and what

23  happened and who knew what when.  You know where to look for

24  those documents.  To the extent they help your case, you can

25  start identifying.  Let's start in 45 days.

1          MR. LEFKOWTIZ:  That would be for both plaintiffs

2    and defendants?

3          THE COURT:  Absolutely.  As you know, the plaintiffs

4    won't have all that much to do.  Okay.

5          Defendants said there are some improperly named

6    defendants.  Who is improperly named?

7          MS. CHANOINE:  I represent Johnson & Johnson, but

8    I'm speaking for the joint defense group on this issue.

9          We have provided the plaintiffs with a list that

10   spans multiple defendants.  And the problems are quite -- they

11   cross the spectrum.  We have completely fictitious defendants.

12   We have holding company defendants that have no role at all.

13   We have foreign defendants that are not under this Court's

14   jurisdiction and haven't been properly served.  We have

15   predecessor entities that are not properly named before the

16   case.

17         We have provided that list.  We propose that we go

18   through a process of meeting and conferring with plaintiffs'

19   counsel and look to potentially streamline the process of

20   dealing with improperly named defendants through the process

21   of the filing of the master complaint.

22         THE COURT:  Are both sides on board with this

23   discussion?

24         MR. LONDON:  Your Honor, we received the first list

25   of, air quote, improperly named defendants from counsel Friday

PROCEEDINGS                                    19

1    night; and we thanked her for sending it.  First we saw the

2    issue was in the agenda they provided.  We received a

3    supplement from them today of the improperly named defendants.

4    I have not looked at it yet.  Of course, we will meet and

5    confer with them.

6            I am looking at some of the names right now.  It's

7    the Kenvue defendant, which is the new J&J.  It looks like GSK

8    was probably the most improperly named.  It just seems like --

9    I really can't speak to it.  It seems like they might be

10   improperly the proper name of the company.  But we'll engage

11   with counsel this week to clean up the improperly named

12   defendants.  We've done this with some of these defendants in

13   the past, in other litigation.  We will engage and meet and

14   confer as soon as possible.

15           THE COURT:  I mean, you're going to have some

16   improperly named defendants as a pure holding company.  Do

17   what you can and bring issues to me as soon as you can when

18   you have a joint issue, when you come to an impasse.  And

19   let's try to get those resolved.  We have to know who the

20   right parties are before we can do much else.

21           MR. LONDON:  Should we bring those to you in a 37.3

22   letter discovery issue?

23           THE COURT:  Yes, exactly.  What I like for those

24   kind of letters, is I like a joint letter where both sides put

25   in their positions.  And I'll either decide it based on that

PROCEEDINGS                                    20

1    letter or I'll tell you here is what I need more from each

2    side to figure it out.

3              MR. LONDON:  Thank you.

4              THE COURT:  I think that's all on my agenda.  What

5    else does anybody have?  It would be amazing if everybody says

6    nothing.

7              MR. LONDON:  I'm looking at my list, your Honor.

8              A minor issue.  Would it be possible establishing

9    future case management conferences with the Court so we could

10   have them on our calendar?  I recognize -- I love the name

11   "skinny complaint" due in 30-odd days, then some motion

12   practice.  So if we could establish some benchmarks going

13   forward, every 45 days or so.

14             THE COURT:  Let's do 45 days to start.  Let me pick

15   a date for that.  If I'm off trial we won't have to do in the

16   evening.

17             MR. LONDON:  I invited everybody to Brooklyn.

18             THE COURT:  I wasn't sure how well a call of this

19   size would work, but it obviously is a huge savings for a lot

20   of lawyers and their clients to not have to come to one place

21   for a relatively short conference.

22             Let's say May 23 at 10:00 a.m. again by video.

23   Going once, okay.

24             I want to get to the point where we do every 60

25   days, and maybe even every 90 days.  But to start out we

PROCEEDINGS                                   21

1  should stick to the 45 days.

2            Okay.  Anything else we need to talk about?  All

3  right.  Thank you all for calling in.  Nice to meet you all.

4  We will be talking soon, I'm sure.  Take care.  We're

5  adjourned.

6            (Whereupon, the matter was concluded.)

7                  *     *     *     *     *

8  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.

9

10  */s/ Rivka Teich*
    Rivka Teich, CSR RPR RMR FCRR
11  Official Court Reporter
    Eastern District of New York

12

13

14

15

16

17

18

19

20

21

22

23

24

25