**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | **Case No.: 23-md-3089-BMC** |
| THIS DOCUMENT APPLIES TO: ALL CASES | |

**CASE MANAGEMENT ORDER NO. 3**

**ORDER REGARDING PROTOCOL FOR PRODUCTION OF HARD COPY
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

To expedite the flow of discovery material and to facilitate the consistency in the format of the documents to be produced by the Parties in the above captioned litigation (the "MDL" or this "Action"), the Parties hereby agree to the following protocol for the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure (Fed. R. Civ. or Federal Rules)[1] ("Protocol") *and subject to the* **Confidentiality** and **Privilege Orders** as agreed to by the Parties and entered by this MDL Court.

**A.    SCOPE**

1.    The purpose of this Protocol is to facilitate the exchange of ESI and hard copy documents in an efficient manner and in accordance with the Federal Rules. By stipulating to this Protocol and agreeing to produce documents in a particular form or forms, no Party waives any

---

[1]    "Local Rule" refers to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and to those Local Rules applicable to the United States District Court for the Eastern District of New York, where the Local Rules applicable to the Southern and Eastern Districts differ.

objections to producing any particular document or category of documents on any grounds whatsoever.

2.      This Protocol applies to the ESI provisions of Fed. R. Civ. 16, 26, 33, 34, and 37. This Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule, in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ. 45 and, specifically, the provision of Fed. R. Civ. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

3.      The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably and in good faith as discovery proceeds.

4.      Nothing in this Protocol shall be deemed to prevent any Parties from agreeing in writing to terms different than or inconsistent with the terms of this Protocol.

5.      Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

6.      The procedures and protocols outlined in this Protocol govern the production of Documents, including ESI, by all Parties. The Parties will take reasonable steps to comply with this Protocol. All Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Protocol and, to the extent that a Party believes that compliance with this Protocol imposes an undue burden disproportionate to the needs of the case, the Party claiming such a burden shall inform all other Parties in writing of the asserted burden, describing it (and any potential solutions) with specificity, and the Parties shall thereafter promptly meet and confer in an effort to resolve the issue. All productions made pursuant to this Protocol

are subject to any confidentiality, preservation, protective, and/or privilege orders entered in the MDL.

7.    <u>Applicability</u>. The production specifications in this Protocol apply to documents that are produced in the first instance in the MDL. In the event of transfer to other courts, this Protocol will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order. The terms and specifications of this Protocol shall only apply to productions made after the date of entry of this Protocol. Productions served in the MDL that were delivered before the date of entry of this Protocol are exempt from the terms of the Protocol, unless the Producing Party and Receiving Party otherwise agree in writing.

**B.    DOCUMENTS PRODUCED IN OTHER MATTERS**

8.    To the extent any Party is required or agrees to produce documents in the MDL that originally were collected or produced in other cases or government investigations, such documents shall be identified and produced to the extent reasonable in accordance with the production format described herein. Such documents may bear the original Bates numbers assigned to them in those other proceedings and shall also bear any additional Bates-stamp required in this MDL.

**C.    ALTERNATE PRODUCTION FORMAT RELATED TO PLAINTIFFS**

9.    Notwithstanding the production specifications set forth in this Protocol, as an alternative, Plaintiffs may elect to produce responsive documents as set forth in this section as follows:

a.    Records in Plaintiffs' Possession, Custody, and Control

10.    Responsive records in Plaintiffs' possession, custody, and control shall be produced in native file format or such other reasonably useable format with Bates numbers, such as searchable PDF, that retains the relevant characteristics of the original document. Multiple distinct documents should not be merged into a single record, and single documents should not

be split into multiple records (i.e., documents should be logically unitized). Plaintiffs' counsel will make reasonable efforts to have their vendors unitize documents correctly.  If supplementation is needed, Plaintiffs shall append text to each relevant file name showing that it is a supplement and the supplement Bates number.

    b. Emails

   11. Plaintiffs may produce responsive, non-privileged emails and attachments in their possession, custody, or control in searchable PDF format with metadata (including TO/FROM/CC/BCC/DATESENT and SUBJECT, as defined in Attachment A hereto), or in native format with metadata, in either case, preserving any and all familial relationships. All documents shall be Bates numbered in accordance with the provisions set forth in this Protocol.

    c. Social Media Files

   12. Plaintiffs may produce responsive, non-privileged social media account records and/or data (e.g., Facebook, Instagram, Parler, LinkedIn, Twitter, MySpace, etc.) in their possession, custody, or control in searchable PDF format, including (1) social media posts, comments, replies, likes, responses authored by Plaintiffs; (ii) chats, messages, and messenger conversations with dates and participants visible; and (iii) photos, images and visible associated post information. Any and all multimedia, including video or voice recordings, must be produced in native format. All documents shall be Bates numbered in accordance with the provisions set forth in this Protocol

   13. Should the Defendants determine, in good faith, that additional information or alternate form of production is needed, including production of metadata, after the initial production of social media files in the format above, the Parties shall meet and confer on reasonable requests for such information, and should the Parties not agree, seek the Court's assistance if necessary.

d. Redactions

14.    To the extent permitted under the Protective Order, the Privilege Order and this Protocol, Plaintiffs may redact the records set forth in this Section in PDF format. If a redaction is made for any of the reasons permitted in the Protective Order, the Privilege Order and this Protocol, the basis for such redaction shall be annotated (i.e.., Redacted for Privacy, Redacted as Privileged, Redacted as Non-Responsive, etc.) on the redaction itself. For emails, the bibliographic information (to/from/cc/bcc/date sent/time sent/subject) will not be redacted unless that information is itself privileged.  Metadata produced with the records shall indicate that the document has been redacted.

e.    Involvement of Plaintiffs' Counsel

15.    Lead Counsel for Plaintiffs and the members of the Plaintiffs' Steering Committee agree to take reasonable steps to ensure each Plaintiff complies with this Protocol when collecting, reviewing, and producing documents in this Action. Plaintiffs' counsel agrees to promptly alert Defendants concerning any technical problems associated with any individual Plaintiff's compliance with this Protocol.

**D.    THIRD PARTY SUBPOENAS AND THE PROCESSING OF NON-PARTY DOCUMENTS**

16.    A Requesting Party issuing a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and request that the non-party produce documents in accordance with the specifications of this Protocol. The Issuing Party is responsible for producing to all other Parties any productions obtained in the same form in which the document(s) was/were produced by the non-party. Such non-party productions should be served by the Issuing Party to all other Parties within fourteen (14) calendar days of the non-party's production to the Issuing Party.

17.     The Issuing Party is not responsible for modifying the non-party's production to the extent that the non-party does not comply with this Protocol. However, if any such non-party productions are not Bates numbered by the non-party producer, prior to any Party reproducing the non-party documents, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates number prefix. For the avoidance of doubt, nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

### E.     DEFINITIONS

18.     As used herein, "**Requesting Party**" means the party requesting production of documents. As used herein, "**Producing Party**" means the party or non-party that may be producing documents in response to the request of the Requesting Party. As used herein, the words "**Party**" or "**Parties**" include the parties to this MDL action, whether they are currently involved or become so in the future, and Requesting Party and the Producing Party, as applicable.

19.     "**Defendants**" means and refers to the named defendants in the MDL, as well as any later added defendants.

20.     "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

21.     "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to, e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint files), spreadsheets (e.g., Excel), and image files (e.g., jpg).

22.    "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

23.    "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

24.    "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

25.    "**Metadata**" means data describing other data and for purposes herein is limited to: (i) structured, i.e., fielded, information embedded in a native file which describes, *inter alia,* the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device, or the custodian or non-custodial data source from which it was collected.

26.    "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

27.    "**Optical Character Recognition**" or "**OCR**" means the process of recognizing, and creating a file containing, visible text within an image.

28.    "**Confidentiality Designation**" means the legend affixed to Documents for Confidential Discovery Information as defined by, and subject to, the terms of the Court's Confidentiality Order in this Litigation.

29. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

30. "**Load files**" means electronic files provided with a production set of documents and images used to load that production set into a receiving party's document review platform and correlate its data within that platform.

31. "**And**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "**and**" shall be construed to mean "**and/or**."

32. "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to."

33. "**Duplicate ESI**" means files that are exact matches based on MD5 or SHA-1 hash values.

34. "**Attachment(s)**" are documents attached to emails. The production of embedded documents or other documents produced in a family relationship under the terms of this protocol is not intended to, nor does, suggest those documents are attachments in their original form at the Producing Party. Instead, they are produced in a family-relationship only to facilitate the efficient use of industry-standard eDiscovery tools.

35. Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

**F.    DESIGNATED DISCOVERY CONTACTS**

36. Each Defendant shall provide the name of a dedicated discovery contact. Should they change during the course of this litigation, the Party who is changing its contact shall notify all other Parties within seven (7) calendar days of such a change.

### G.    NON-DISCOVERABLE ESI

37.    <u>Non-Discoverable ESI</u>. The Parties acknowledge that some sources of ESI do not warrant preservation, collection, review, or production.  Absent a specific request by a Requesting Party, a Producing Party need not preserve, collect, review or produce from the following sources of ESI:

      a.    Documents deleted in the normal course of business before the time a preservation obligation in this MDL came into effect;

      b.    Backup data files maintained in the normal course of business for the purposes of disaster recovery, including but not limited to, backup tapes, disks, SAN, and other forms of media, which are substantially duplicative of data more accessible elsewhere;

      c.    Deleted, 'slack,' fragmented, unallocated data, or other data only accessible by forensics;

      d.    Random Access Memory, temporary files, or other ephemeral data which is difficult to preserve without disabling the operating system;

      e.    Browser access data, including but not limited to, temporary internet files, history files, cache files, and cookies;

      f.    Data in metadata fields frequently updated automatically, such as last-modified or last-printed dates;

      g.    Electronic data (*e.g.,* call logs, email, text messages, contact data, and calendars) on or sent to mobile devices (*e.g.,* iPhone, iPad, Android, and Blackberry devices) related to the litigation and duplicative of data on other sources;

      h.    Voicemail not retained in the ordinary course of business;

i.      Instant messages (such as Microsoft Teams or Slack messages) not retained in the ordinary course of business;

j.      Data remaining from systems no longer in use that are unreadable on the systems in use;

k.      Data stored on photocopiers and fax machines;

l.      Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily retained as part of a laboratory report;

m.      Structural files not material to individual file contents which do not contain substantive content (*e.g.* .CSS, .XML, .XSL, .DTD, etc.);

n.      Server, System, or network logs;

o.      Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments;

p.      Documents, emails, or data maintained on third-party servers (*e.g.,* Secure Email servers or systems, Dropbox);

q.      Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

38.      <u>Disaster Recovery Backup Data</u>. Absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.

**H.**     **Documents from Hard Copy Sources**

39.     The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable OCR text (or searchable PDF if production format dictates), along with the fielded data identified in Attachment B, when reasonably available.

40.     When scanning Hard Copy Documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., Hard Copy Documents should be logically unitized). The Parties will make reasonable efforts to have their vendors unitize documents correctly.

41.     The Parties will provide a standardized load file compatible with Concordance and with a Bates number field included in the load file to match text and fielded data with TIFF images (load file may be omitted with a PDF format production). With respect to Hard Copy Documents, data on the load file will include the metadata fields identified in Attachment B.

42.     To the extent that unique relevant documents and evidence are stored in hard copies in a storage facility and a Producing Party declines to collect, search, and produce any responsive material from that hard copy location, the Parties shall meet and confer.

**I.**     **COLLECTION AND PROCESSING OF ESI**

43.     To the extent reasonably and technologically feasible, the Parties shall use methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat), with document stubs or links or pointers to internal or non-public (e.g., Google Workspace, Zendesk) documents and those stubbed or internal or non-public

documents so linked. However, the Parties recognize that for a limited set of documents—typically documents collected on a one-off basis—the complete lists of metadata in Attachments A and B may not be readily available, reasonably collectable, or ascertained and therefore may not be produced. The Parties agree to consider in good faith requests for the metadata in Attachments A and B if not initially produced. Documents containing hidden URLs, e.g., an email containing a link where the text of the link is not the URL (for example, a link with the displayed text "Please review this article" where the URL of the link, e.g., https://somesite.com/somearticle.html/" is not itself the display text of the link) shall be collected and processed in such a manner that all hidden URLs are included in the extracted text. This does not obligate the Parties to collect and produce the substance of the information linked.

**J.     IDENTIFICATION AND PRODUCTION OF DOCUMENTS**

44.     To filter ESI for relevancy prior to review and production, a Producing Party may do one or more of the following, so long as the process used meets the standard of care promulgated in Fed. R. Civ. 26(g): (i) use keyword search terms that it in good faith believes will capture responsive ESI and review search term hits for responsiveness; (ii) limit the collection and review of ESI to the custodians the Producing Party reasonably believes have unique documents responsive to the document requests; (iii) limit the collection and review of ESI to a reasonable date range based on the claims asserted; (iv) use technology assisted review techniques. The Requesting Party may suggest keyword search terms for consideration by the Producing Party, and the Producing Party will consider in good faith including such search terms that yield documents or ESI relevant to the parties' claims and defenses, are proportional to the needs of the case, and where the burden or expense of reviewing documents captured by such search terms does not outweigh its likely benefit, and shall inform the Requesting Party of objectionable search terms and propose alternative terms, if any, that reasonably limit the documents for review to a number

12

proportional to the needs of the case.  Prior to use by any Producing Party, the Parties must meet and confer[2] to disclose and discuss any proposed and/or use of decision-modeling technologies[3] to reduce the number of documents identified for classification or to be reviewed or produced.  Unless otherwise agreed in writing, any such proposals must be received within 30 days of service of a Producing Party's responses and objections to Rule 34 requests.

45.    The fact that a document may have been retrieved by application of search terms shall not prevent any Party from redacting or withholding from production such document for lack of responsiveness, for privilege, as required by the EU Data Privacy Directive or any other data privacy law, or because it is otherwise immune or protected from discovery for any reason.

**K.    Collection and Deduplication**

46.    The Parties shall apply standard De-NISTing filters in order to exclude irrelevant, non-substantive files from hosting, review, and production.

47.    Defendants shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Defendants' ESI data set across all custodial and noncustodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Defendant is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services,

---

[2] To the extent discreet collections of relevant materials or structured data are wholly responsive and can readily be produced, there is no requirement to meet and confer in advance of production.

[3] An electronic tool that decides the responsiveness of a document for purposes of production (*i.e.*, search terms, file type culling, e-mail thread suppression, generative AI (artificial intelligence), etc.).

which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, so long as those software tools or services include BCC values in their methodology, or which may use any other method the Parties agree upon. The names of all custodians who were identified as custodians for purposes of collection for this matter will be populated in the "AllCustodians" metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALLFILE PATHS metadata field of the produced document.

### L.    Email Thread Suppression

48.    Email threads are email communications that consist of back-and-forth communications in which each successive communication responds to an earlier communication. A most inclusive email is one that reflects in its body all of the prior or lesser-included emails and attachments. Multiple inclusive emails may exist if branches of a thread occurred during the course of communication. Due to the importance of the metadata in prior or lesser-included emails contained in whole or in part in a most-inclusive email, and in order to facilitate reasonable evidentiary use of emails, production of a "most inclusive email thread" does not relieve a Party of their obligation to produce responsive prior or lesser-included emails. No document shall be withheld from production on the basis that its substance was included in a produced "more inclusive" email. The Producing Party may, at its discretion, elect to review only the most inclusive email thread in determining the responsiveness of the prior or lesser-included emails or for any other internal purpose.

### M.    Hyperlinked Documents

49.    Except as required in this paragraph, no Party shall be required to manually locate, collect, or associate a hyperlinked document with the message[4] containing the hyperlink[5].  A Receiving Party[6] may request a manual search for a hyperlinked document that is likely to be material to the Party's preparation of its case.[7]  Any such reasonable and particularized request shall provide a list of specifically requested hyperlinks (with the Beginning Bates and Bates pages on which the hyperlinks appear) by email to the Producing Party's counsel, capped at 15 hyperlink inquiries being open at any one time per Producing Party and no more than 100 total inquiries[8] per Producing Party across the duration of the litigation.

50.    Subject to the above limitations, the Producing Party shall within twenty-one (21) calendar days of its litigation counsel's receipt of a Receiving Party's inquiry (1) identify the Bates number of the already-produced document referenced by the hyperlink, if such document exists; or (2) produce the hyperlinked document currently accessible from the identified hyperlink; or (3) produce the version of the hyperlinked document with the last modified date closest in time that predates the message with the identified hyperlink (referred to herein as a "contemporaneous"

---

[4] For clarity, the terms "message" or "messages" refer to email or Teams messages.
[5] To the extent any Producing Party has or can reasonably use electronic tools (such as Microsoft Purview eDiscovery Premium) to automatically collect the current, available version of non-public hyperlinked documents stored within the Microsoft 365 environment (or other comparable tools for their email platform), the Parties are willing to meet and confer as to the process for potential searching, collection and/or review using automated rather than manual research.
[6] For purposes of this provision, all MDL plaintiffs shall be treated as a single Receiving Party.
[7] Inquiries pursuant to this provision will be limited to hyperlinks referencing documents within the Producing Party's Microsoft O365 or M365 environment.
[8] In some cases, the Producing Party may be unable to produce a hyperlinked document in response to a Receiving Party's inquiry under this paragraph (see parens 4, below).  Fifty (50) of such unsuccessful searches for a hyperlinked document shall not count against the 100-inquiry limitation on total inquiries per Producing Party described herein.

version)[9]; or (4) provide an explanation of any inability to produce a hyperlinked document referenced in a message (e.g., the link no longer points to an existing document, the Party no longer has access to the document, etc.); or (5) object to the inquiry with an explanation for the objection.

51.     In addition, upon good cause, such as an upcoming deposition, motion, litigation deadline, or other reasonable basis, Plaintiffs may seek an expedited search for up to five (5) documents containing hyperlinks, and Defendants shall make reasonable efforts to conduct their analysis within five (5) business days.

52.     The production of a hyperlinked document shall not constitute an admission by the Producing Party that the produced document is substantively identical to the version of the document that existed at the time the message with the hyperlink was sent or received or that the produced document was viewed by the sender or recipient of the message.  For the avoidance of doubt, hyperlinked documents shall not be construed to be in the same family as the message containing the hyperlink solely by virtue of the hyperlink reference.

**N.     Production Format**

53.     Except as otherwise stated herein, all emails shall be produced as TIFFs.

54.     All spreadsheet (e.g., Microsoft Excel) files shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file to the extent reasonably possible, and the redacted native file will be produced as provided herein. In limited circumstances, only if a spreadsheet file is unable to be natively redacted, the Producing Party may produce the spreadsheet file as a TIFF.

---

[9] The Parties will agree to a protocol for branding of any hyperlinked documents produced, either the contemporaneous version or current version.  This will include a metadata field: HYPERLINK BATES REQ.

55.     All word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), image (e.g., .jpg, .gif), and PDF files shall be produced as native files and TIFFs. To the extent a document requires redaction, only a TIFF version shall be produced. To the extent the Receiving Party believes a native file is required, the Parties will meet and confer. Word files, PowerPoints, and any other document containing track changes shall be produced in color. Speaker notes and comments shall be displayed on the images.

56.     All media files, such as audio and video files and digital photographs, shall be produced as native files with TIFF placeholder images.

57.     The Parties will meet and confer on the production format, including metadata, and deduplication methodology of other document types, including but not limited to compound documents, Slack messages, chats, channels, Zendesk documents, as well as less-commonly used file types, such as CAD, GIS data, materials and prototypes testing data, etc.

58.     In advance of depositions, the Parties reserve the right to produce Bates-stamped TIFF versions of any previously produced native file at their discretion.

59.     Subject to the caveats below, all ESI shall be produced with applicable metadata as specified in Attachment A, and searchable text extracted from the ESI. Redacted ESI, other than spreadsheet files which will be produced as redacted native files, will be produced as TIFFs with applicable metadata and OCR'ed searchable text. Hard-copy documents will be scanned and produced as TIFFs, with applicable metadata as set out in Attachment B, and OCR'ed searchable text.

60.     Parent-Child Relationships. Parent-child relationships such as the association between an attachment and its parent document, or between embedded documents and their parent, shall be preserved.

61.    <u>Family Groups</u>. A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded files or OLE documents all constitute family groups. A party has no obligation to produce non-responsive family members. If any member of a family group is produced, all members of that group must also be produced (with a Bates-stamped placeholder for non-responsive family members) or else logged as privileged, and no such member shall be withheld from production as a duplicate.

62.    <u>Embedded Objects and Documents</u>. Objects, documents or files embedded in documents, such as OLE embedded objects (embedded MS Office files, etc.), or images, etc., embedded in RTF files, shall be extracted as separate files and treated as attachments to the parent document, to the extent not visible in the container Document. Embedded objects that consist of duplicative information reflected in the container file or are non-substantive files, such as corporate logos and horizontal line images, need not be produced as separate Documents. Similarly, any aspect of an email signature block need not be produced as attachments to a parent email.

63.    <u>Load Files</u>. Productions will include image load files in Opticon or IPRO format as well as Concordance format data (.dat) files with the metadata fields identified in Appendices A and B, as appropriate, for all included documents, and to the extent that such metadata exists and is reasonably collectable for a given document. All metadata will be produced in UTF-8 format.

64.    <u>Foreign Language Documents</u>. Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), along with all translations of the searchable text existing in the ordinary course of business, if any. This paragraph does not obligate the Producing Party to create translations of hard-copy documents and ESI containing languages other than English.

65.    <u>Text Files</u>. A single text file shall be provided for each document. The text file name shall be the same as the Bates number of the first page of the document with the document extension ".txt" suffixed. Files names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction and is not a spreadsheet, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, and in the case of imaged hard-copy documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. Text shall be provided in UTF-8 format. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows as well as the URLs of all links regardless of whether the URL is included in the display text of the link.

66.    <u>OCR</u>. OCR software should be set to the highest quality setting during processing. Documents containing predominantly foreign language text shall be OCR'ed using the appropriate settings for that language, e.g., OCR of German language documents will use settings that properly capture umlauts. The Producing Party is not obligated to OCR in multiple languages documents with text in multiple languages, e.g., the Producing Party will not need to run two OCRs if a document contains English and German. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

67.    <u>Text Extracted from Emails</u>. Text extracted from emails shall also include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"),

(4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

68.     <u>TIFFs</u>. All TIFFs produced by any party in this matter will be single page Group IV TIFF format, 300 dpi quality or better. Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension. All images of documents which contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image. The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

69.     <u>TIFFs of Redacted ESI</u>. TIFFs of redacted ESI shall include all non-redacted elements and formatting which are visible in any view of the document in its native application, and each redacted area must bear a label containing the reason for the redaction.

70.     <u>Bates Numbers</u>. All bates numbers will consist of a Plaintiff or Defendant name, followed immediately by "-PEMDL-" and an 8 digit numeric: [Name]-PEMDL-########. There must be no spaces in the Bates number.  Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. For example, the Parties may use one of the following Bates numbering convention:

    a.   JJCI-PEMDL-########

    b.   HAL-PEMDL-########

71.     <u>Date Fields Time Zone</u>. All documents shall be processed so as to show fielded dates and times in Greenwich Mean Time.

72.     <u>Exception Files</u>. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). For Exception Files contained as part of a responsive family that the Producing Party is unable to resolve using reasonable efforts (e.g., a reasonable effort to decrypt an encrypted file), the Producing Party will provide a  Bates-stamped placeholder TIFF, bearing the legend "Exception File" along with the reason for the exception (corrupted, password protected, etc.), and provide any available metadata. To the extent that the Receiving Party has questions regarding particular Exception Files, the Parties will meet and confer. If the Parties cannot reach agreement on the handling of a particular Exception File through the meet and confer process, the matter may be submitted to the Court for determination.

73.     <u>Native File Image Placeholders</u>. A Bates-stamped placeholder TIFF, bearing the legend "This document has been produced in native format" shall be provided for ESI produced in native format; these placeholders will be Bates numbered in the same way as any other TIFF, and the Bates number of that single page shall be used as the BegBates and EndBates of the associated document.

74.     <u>Redactions</u>. For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data. Redacted documents shall be identified as such in the load file provided with the production. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein, except for metadata that would reveal the content of the redacted information.

75.     If the Receiving Party desires to receive a native format of any document produced in a format other than native (TIFF), the Parties agree to meet and confer regarding the request. The Parties will produce in black and white, except as otherwise specified within.

76.     Color. After producing Documents in black and white, the Producing Party will consider and comply with any reasonable request by the Receiving Party to produce a Document in color to the extent that Document contains color necessary to decipher the meaning, context, or content of the Document or ESI. To the extent that the Producing Party agrees to re-produce a Document in color, it shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.

77.     The file name for the documents produced in native format will consist of a Bates number and a confidentiality designation if available; for example, "[Name]-PEMDL-00000002-Confidential." The Parties will provide a corresponding placeholder TIFF image slipsheet (or PDF if production format dictates) for native files included in a production indicating the Bates number of the native file and the confidentiality designation.

78.     If allowed by the Producing Party's production platform, all produced custodians of a de-duplicated document must be identified in the "ALL CUSTODIANS" metadata field specified in Paragraph 21, with corresponding ALL FILEPATHS. If the Parties de-duplicate ESI, they shall provide custodian and file path associations in character delimited fields that include duplicate custodian name and filepath information for the duplicated. An overlay data file shall be produced after every rolling production to account for updated duplicate custodian and file path information in the ALL CUSTODIAN and ALL FILEPATH fields.

79.    The Parties shall assign a Bates number to individual pages of TIFF documents (or PDF documents) and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document.

80.    The Parties understand that this Protocol contemplates rolling productions of documents.

81.    If the forms of production allowed by this Protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this Protocol prohibits a Party from seeking relief from this Protocol.

82.    If the native version of a Document is used as an exhibit, the record of the deposition must identify the exhibit using its Bates number, and the Bates number shall also be written on any paper or electronic copy of the exhibit.  The confidentiality designation of the Document shall also be stated on the record of the deposition and shall be written on any paper or electronic copy of the exhibit. Extracted text files shall not be used in any proceeding as a substitute for the image of any Document. This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or demonstratives.

83.    Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document or data under the Federal Rules of Civil Procedure or Federal Rules of Evidence. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable rules.

**O.    Production of Databases and Other Structured or Application Data**

84.    Generally, relevant ESI stored in structured databases should be produced in a delimited file format.  If ESI is in a commercial or proprietary database format and can be produced

in an already existing and reasonably available report form, the Producing Party will produce the information in such a report form and imaged in TIFF-image format.

85.    If data requires modification in order to produce in responsive form (e.g., aggregation or netting) then prior to extraction the Parties must meet and confer to discuss the strategy to extract the data to be produced.

86.    Also, if the data cannot be produced in delimited file format or in a report form or is otherwise maintained by an application, then the Parties will meet and confer to discuss a reasonable alternative production format. The Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and production formats. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

87.    Nothing herein obligates a Producing Party to customize reporting. The Parties shall meet and confer to discuss the associated cost, proportionality, and cost sharing of any custom reporting.

**P.    Other Data Sources**

88.    The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited categories of ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary.

**Q.    Proprietary Producing Party Software**

89.    To the extent that relevant ESI cannot be rendered or reviewed without the use of software proprietary to the Producing Party, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format,

including issues as may arise with respect to obtaining access to any such software and operating

manuals.

### R.    Confidentiality Treatment.

90.    The Court entered a Protective Order in this MDL, which specifies various

confidentiality treatment levels for used by the Parties.

91.    The confidentiality treatment level for any item will be provided with the created

data for that item, in the field entitled "Confidentiality Treatment." For items with no

confidentiality requirements, the field will be left blank.

92.    The Parties will brand any confidentiality endorsements in a corner of any TIFF

images representing the produced item. Those endorsements must be in a consistent font type and

size, and must not obscure any part of the underlying image or Bates number.

### S.    Production Media

93.    Defendants will use the appropriate electronic media (CD, DVD, flash drive, or

hard drive) or secure electronic transfer for its ESI production, and, if physical media is being

provided, will cooperate in good faith to use the highest-capacity available media to minimize

associated overhead. Defendants will label the physical media with the producing party,

production date, media volume name, and document number range. Any replacement Production

Media will cross-reference the original Production Media, clearly identify that it is a replacement

and cross-reference the Bates Number range that is being replaced.

### T.    Write Protection and Preservation

94.    All computer media that is capable of write protection should be write-protected

before production.

### U.    Deficiency Procedure

95.    If the Requesting Party has good cause to believe that a Producing Party's compliance with the Protocol has been deficient, the Requesting Party and Producing Party will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its compliance with the Protocol.

96.    As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's compliance with this Protocol.

97.    The Requesting Party must raise its concern with the Producing Party's compliance with this Protocol within 30 days of receipt of the Producing Party's at-issue production or else waives its right to seek relief, whether via meet and confer or Court intervention.

98.    Upon a showing of good cause, the Requesting Party and Producing Party will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's compliance with this Protocol, or to identify additional proportional production criteria to cure the deficiency.

99.    If the Requesting Party and Producing Party are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its compliance with this Protocol, the Requesting Party and Producing Party will submit the dispute to the Court in the manner set forth in Local Rule 37.3.

*    *    *

**IT IS SO ORDERED**.

Dated: Brooklyn, NY
August 19, 2024

*Brian M. Cogan*

_____

THE HONORABLE BRIAN M. COGAN


**APPROVED FOR ENTRY:**

Bryan F. Aylstock
**AYLSTOCK WITKIN KREIS OVERHOLTZ PLLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Tel: 850-202-1010
baylstock@awkolaw.com

Kiley L. Grombacher
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: 866-881-0403
kgrombacher@bradleygrombacher.com

Adam J. Levitt
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-214-7900
alevitt@dicellolevitt.com

Jonathan D. Selbin
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: 212-355-9500
jselbin@lchb.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza Ste. 200
Poughkeepsie, New York 12601
Tel: 845-244-5595
sultzerj@thesultzerlawgroup.com

Michael A. London (ML-7510)
**DOUGLAS & LONDON P.C.**
59 Maiden Lane – 6th Floor
New York, New York 10038
Tel: 212-566-7500
mlondon@douglasandlondon.com

James E. Cecchi
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: 973-994-1700
jcecchi@carellabyrne.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Tel: 630-273-2625
beth@feganscott.com

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660
Tel: 888-546-8799
cseeger@seegerweiss.com

Lindsey N. Scarcello
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Tel: 816-701-1102
lscarcello@wcllp.com

*Plaintiffs' Interim Class Counsel and Executive Committee*

Sarah N. Wescot
**BURSOR & FISHER, P.A.**
701 Brickell, Suite 1420
Miami, Florida 33131
Tel: 305-330-5512
swescot@bursor.com

Shireen M. Clarkson
**CLARKSON LAW FIRM P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: 213-788-4050
sclarkson@clarksonlawfirm.com

Kelsey L. Stokes
**FLEMING, NOLAN, and JEZ P.C.**
2800 Post Oak Blvd. Suite 6000
Houston, Texas 77056
Tel: 713-621-7944
kstokes@fleming-law.com

Cari C. Laufenberg
**KELLER ROHRBACK, LLP**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Laura S. Dunning
**LEVIN PAPANTONIO RAFFERTY PROCTOR
BUCHANAN O'BRIAN BARR MOUGEY, P.A.**
316 South Baylen Street
Pensacola, Florida 32502
Tel: 850-435-7000
ldunning@levinlaw.com

Michael A. Sacchet
**CIRESI CONLIN LLP**
225 South 6th Street, #4600
Minneapolis, MN 55402
Tel: 612-361-8200
MAS@CiresiConlin.com

Alexander E. Barnett
**COTCHETT, PITRE, & MCCARTHY, LLP**
40 Worth Street, Suite 602
New York, New York 10013
Tel: 212-201-6820
abarnett@cpmlegal.com

Darren T. Kaplan
**KAPLAN GORE LLP**
346 Westbury Ave., Ste. 200
Carle Place, New York 11514
Tel: 212-999-7370
dkaplan@kaplangore.com

Jordan E. Jacobson
**KESSLER, TOPAZ, MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel: 484-270-1488
jjacobson@ktmc.com

Frederick S. Longer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Tel: 215-592-1500
flonger@lfsblaw.com

Marlene J. Goldenberg
**NIGH, GOLDENBERG, RASO & VAUGHN PLLC**
14 Ridge Square NW Third Floor
Washington D.C. 20016
Tel: (202) 792-7927
mgoldenberg@nighgoldenberg.com

Stuart A. Davidson
**ROBINS GELLER RUDMAN & DOWD LLP**
225 Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Tel: 561-750-3000
SDavidson@rgrdlaw.com

Melanie H. Muhlstock
**PARKER WAICHMAN LLP**
6 Harbor Park Drive
Port Washington, New York 11050
Tel: 516-466-6500
mmuhlstock@yourlawyer.com

*Plaintiffs' Steering Committee*

Andrew Soukup (*pro hac vice*)
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
lflahivewu@cov.com

Cortlin H. Lannin (*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
clannin@cov.com

*Attorneys for Defendant The Procter & Gamble Company*

Jay P. Lefkowitz P.C.
Jacob M. Rae
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
lefkowitz@kirkland.com
jacob.rae@kirkland.com

Robyn E. Bladow (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
555 S. Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

*Attorneys for Defendant Haleon US Holdings LLC*

Hannah Y. Chanoine
Jeffrey A. N. Kopczynski
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
hchanoine@omm.com
jkopczynski@omm.com

Amy J. Laurendeau (*pro hac vice*)
Emilie W. Hamilton
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
alaurendeau@omm.com
ehamilton@omm.com

*Attorneys for Defendant Johnson & Johnson Consumer Inc.*

James L. Bernard
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3121
James.bernard@hoganlovells.com

Lauren S. Colton (*pro hac vice*)
**HOGAN LOVELLS US LLP**
100 International Drive, Suite 2000
Baltimore, MD 21202
Telephone: (410) 659-2733
Lauren.colton@hoganlovells.com

*Attorneys for Defendant RB Health (US) LLC*

Cara D. Edwards
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Telephone: (212) 335-4714
cara.edwards@us.dlapiper.com

Christopher G. Campbell
**DLA PIPER LLP (US)**
1201 West Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (404) 736-7800
christopher.campbell@us.dlapiper.com

Christopher Young (*pro hac vice*)
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Telephone: (619) 699-4748
christopher.young@us.dlapiper.com

*Attorneys for Defendant Bayer HealthCare, LLC*

Sara K. Thompson (*pro hac vice*)
**GREENBERG TRAURIG, LLP**
3333 Piedmont Rd NE
Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2392
Sara.Thompson@gtlaw.com

Mark J. Lesko
**GREENBERG TRAURIG, LLP**
900 Stewart Avenue, 5th Floor
Garden City, NY 11530
Telephone: (631) 994-2408
Mark.Lesko@gtlaw.com

Nilda Isidro
Dale Rose Goldstein
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Nilda.Isidro@gtlaw.com
GoldsteinD@gtlaw.com

*Attorneys for Defendants CVS Pharmacy Inc., Target Corporation, Walgreen Co., and Walmart Inc.*

Jennifer J. Nagle (*Pro Hac Vice*)
Robert W. Sparkes, III (*Pro Hac Vice*)
**K&L GATES LLP**
1 Congress Street, Suite 2900
Boston, MA 02114
Tel:    (617) 261-3100
Fax:    (617) 261-3175
Jennifer.nagle@klgates.com
robert.sparkes@klgates.com

Ruby A. Nagamine
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Tel:    (206) 623-7580
Fax:    (206) 623-7580
ruby.nagamine@klgates.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services LLC*

## Attachment A[10]

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* |
| ALLCUSTODIANS | Identification of any additional custodians for duplicate files or email messages |
| BEGBATES | Beginning Bates Number (production number) |
| ENDBATES | Ending Bates Number (production number) |
| PGCOUNT | Number of pages in the document |
| FILESIZE | File Size |
| APPLICATION | Commonly associated application for the specified file type. |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. |

---

[10] The fields listed in Attachments A & B should be included for documents produced where the metadata is available and reasonably collectable or where it can be reasonably added. The parties recognize that not every document produced will be produced with all available data – e.g., one off collections from targeted sources may not be reasonable to collect forensically in order to preserve all available metadata. To the extent a document is produced missing certain metadata, and the metadata is necessary to understand the context of the document, a Receiving Party may request a Producing Party conduct a reasonable investigation as-to why the metadata is missing. No reasonable request for such investigation shall be denied.

| ALLFILEPATHS | Original file/path of the location where duplicate items were located at the times of collection. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. |
|---|---|
| FILENAME | Original file name at the point of collection |
| NATIVEFILELINK | For documents provided in native format only |
| TEXTPATH | File path for OCR or Extracted Text files |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing |
| FROM | Sender |
| TO | Recipient |
| CC | Additional Recipients |
| BCC | Blind Additional Recipients |
| SUBJECT | Subject line of e-mail |
| PARENTMSGID | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED |
| CONVERSATIONID | Email thread identifier |
| ATTACHBATES | Bates number from the first page of each attachment |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the parent e-mail or document) |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the last attachment or, if no attachments, the document itself) |
| ATTACHCOUNT | Number of attachments to an e-mail |

| | |
|---|---|
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons delimited by unique character |
| DATESENT (mm/dd/yyyy   hh:mm:ss AM) | Date Sent |
| DATERCVD (mm/dd/yyyy   hh:mm:ss AM) | Date Received |
| E-MAILDATSORT (mm/dd/yyyy) | Sent Date of the parent e-mail (most recent e-mail in a chain) |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task |
| HASHVALUE | MD5 hash value |
| TITLE | Internal document property |
| AUTHOR | Internal document property |
| DATECRTD (mrn/dd/yyyy   hh:mm:ss AM) | Creation Date |
| LAST MODIFIED BY | Last person who modified (saved) a document |
| LASTMODD (mm/dd/yyyy   hh:mm:ss AM) | Last Modified Date |
| REDACTED | "Redacted" shall be indicated with a Y/N. |
| HASREVISIONS | Y if a Word document with revisions, otherwise N or empty |
| HASCOMMENTS | Y if a Word or Excel document with comments, otherwise N or empty |
| HASHIDDENTEXT | Y if a Word document with hidden text, otherwise N or empty |
| HASHIDDENSLIDES | Y if a PowerPoint document with hidden slides, otherwise N or empty |
| HASSPEAKERNOTES | Y if a PowerPoint document with speaker's notes, otherwise N or empty |
| HASHIDDENROWS | Y if an Excel document with hidden rows, otherwise N or empty |
| HASHIDDENCOLUMNS | Y if an Excel document with hidden columns, otherwise N or empty |
| HASHIDDENWORKSHEETS | Y if an Excel document with hidden worksheets, otherwise N or empty |

| HASVERYHIDDENWORKSHEETS | Y if an Excel document with very hidden worksheets, otherwise N or empty |
|---|---|
| DocumentType | Descriptor for the type of document: **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. |
| Importance | High Importance ─ indicates Priority E-mail message. |
| CONFIDENTIALITY TREATMENT | Confidentiality treatment level |
| TRANSLATION | Translation of any foreign language text (Y/N) |

**Attachment B**

| Field | Definition |
|---|---|
| BEGBATES | Beginning Document Bates Number |
| ENDBATES | Ending Document Bates Number |
| BEGATTACH | Beginning Family Bates Number |
| END ATTACH | Ending Family Bates Number |
| ALL CUSTODIAN | Custodian or Source |
| CONFIDENTIALITY TREATMENT | Confidentiality Designation |
| PGCOUNT | Page Count |
| TEXTPATH | Text File Path, including filename and extension (.txt) |
| REDACTED | Redacted shall be indicated by a YES/NO |
| CONVERSATION ID | |