```
                                                                    1

 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - - - X
                                              23-MD-03089(BMC)
 4   In Re: Oral Phenylephrine
     Marketing and Sales
 5   Practices Litigation                     United States Courthouse
                                              Brooklyn, New York
 6
                                              August 20, 2024
 7                                            11:00 a.m.
     - - - - - - - - - - - - - - X
 8

 9              TRANSCRIPT OF STATUS CONFERENCE BY VIDEO
                 BEFORE THE HONORABLE BRIAN M. COGAN
10                UNITED STATES SENIOR DISTRICT JUDGE

11

     APPEARANCES:
12

13   For the Plaintiffs:    DOUGLAS & LONDON, P.C.
                            111 John Street
14                          Suite 1400
                            New York, NY 10038
15
                            BY:   MICHAEL A. LONDON, ESQ.
16                                VIRGINIA E. ANELLO, ESQ.

17
                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
18                          250 Hudson Street
                            8th Floor
19                          New York, NY 10013

20                          BY:   JONATHAN D. SELBIN, ESQ.

21
                            AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC
22                          17 E. Main St
                            Ste 200
23                          Pensacola, FL 32502

24                          BY:   BRYAN F. AYLSTOCK, ESQ.

25
     (Continued on next page.)
```

APPEARANCES: (Continued)

For Defendant
Haleon US Holdings:        KIRKLAND & ELLIS LLP
                           555 South Flower Street
                           Suite 3700
                           Los Angeles, CA 90071

                           BY:  ROBYN E. BLADOW, ESQ.


For Defendant
The Procter & Gamble
Company:                   COVINGTON & BURLING LLP
                           One City Center
                           850 Tenth Street, NW
                           Washington, DC 20001

                           BY:  LAURA FLAHIVE WU, ESQ.


For Defendant
Johnson & Johnson
Consumer Inc.              O'MELVENY & MYERS LLP
                           1301 Avenue of the Americas
                           Suite 1700
                           New York, NY 10019-6022

                           BY:  JEFFREY A. N. KOPCZYNSKI, ESQ.


Court Reporter:            Andronikh M. Barna
                           225 Cadman Plaza East
                           Brooklyn, New York
                           (718) 613-2178

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

1         THE COURTROOM DEPUTY:  Good morning.

2         Oral Phenylephrine Marketing and Sales Practice
3 Litigation.

4         The prime speakers for the plaintiff, please state
5 your appearance.

6         MR. LONDON:  Good morning, Your Honor.

7         Michael London for the plaintiffs.  Joining me with
8 potentially speaking on various issues will be Mr. Jonathan
9 Selbin, Ms. Virginia Anello and Mr. Bryan Aylstock.

10         MR. AYLSTOCK:  Good morning, Your Honor.

11         THE COURT:  Good morning.

12         MS. BLADOW:  Good morning, Your Honor.

13         Robyn Bladow for Haleon US Holdings.

14         I'm going to address some of the agenda items today
15 on behalf of the defendant group.

16         I will let the other folks introduce themselves.

17         MS. FLAHIVE-WU:  Good morning, Your Honor.

18         Laura Wu for Procter & Gamble Company.

19         MR. KOPCZYNSKI:  Good morning, Your Honor.

20         This is Jeff Kopczynski with O'Melveny for
21 J&J Consumer on behalf of defendants.

22         THE COURT:  Anyone else?

23         Okay, good.

24         Thank you for your agenda.  That is quite helpful.

25         Let's start going through this.

Proceedings 4

You have the ESI order, right? I signed that yesterday. Everybody's got that.

MR. LONDON: Thank you.

THE COURT: As far as the schedule on the motion to dismiss, here is what I am thinking, and tell me if this hits you the right way or not.

I would like to have oral argument on September 23rd and I would like to do that by video as well.

I will tell you; generally, I don't hold oral arguments on motions because the papers really tell me everything I need to know. But I can tell you all want to do it, so I'm not going to resist you.

If that is done on September 23rd, we would do it at, let's see, noon.

Is there anyone who needs to be present who can't be present at that time?

Okay. Is there anyone who thinks it should be earlier or later than that?

Okay, we have a date. That's fine.

Okay. You have also asked to talk about the privilege log order. What do you want to talk about with that? Should there be any problem with that?

MR. LONDON: Hi, Judge. Michael London.

Probably not much to talk about. It's on there as a placeholder.

1    There was a meet-and-confer regarding the proposed
2    privilege order yesterday.  The parties are making progress
3    based upon the call I was on yesterday.  I think it's just
4    moving a little bit slower than the plaintiffs would desire,
5    but progress is being made.  So beyond hopefully getting
6    something to the Court within two weeks -- well, two weeks is
7    probably Labor Day, but the next three weeks or so, I think
8    that's all there really is to report.
9             THE COURT:  Okay, that's good.
10            Who wants defense liaison counsel appointed if the
11   defendants don't want liaison counsel appointed?
12            MR. LONDON:  Michael London again, Your Honor.
13            I think that's actually -- it probably should have
14   come off the agenda, frankly.  I think for that it's something
15   perhaps aspirational in getting things scheduled and getting a
16   joint spokesperson, which has been challenging.  And so we can
17   take this off.  It has been challenging, but, you know, it's
18   getting blood from a stone or a rock up a hill, whatever
19   metaphor you want to use.  They don't want it.  Hopefully now
20   that the summer is over -- and I heard the summer was perhaps
21   challenging.  Hopefully it's not necessary because clearly
22   they don't want it.  But we'll take it off the agenda.
23            THE COURT:  Hasn't a de facto spokesperson emerged?
24   That is what usually happens.  I mean, do you really have to
25   call ten people to get an answer to a simple question?

Proceedings                                                          6

1           MR. KOPCZYNSKI:  Yes, Judge.  This is Jeff
2   Kopczynski with O'Melveny for defendants.
3           I think it's -- I'm happy to hear they're taking it
4   off.
5           I think to your point, plaintiff has -- a group of
6   individuals, a half or dozen or so.  We think it's working
7   very well.  We've collectively, between the 26(f) conferences
8   and the meet-and-confers on the different orders and various
9   schedules and everything else, we've had nearly two-dozen
10  meet-and-confers with plaintiffs for the last couple of months
11  and we think that's working just fine.  And so we're happy to
12  hear -- we don't think that a defense liaison is necessary nor
13  warranted here.  And, you know, we don't need to belabor this
14  point, but we think everything is going just fine.
15          THE COURT:  Okay.
16          So what is happening with Perrigo Haleon?
17          MR. LONDON:  There are two defendants here, Your
18  Honor.
19          Michael London again.  Hi.
20          So these are both foreign-entity defendants.
21  Perrigo is an Irish company.  Haleon PLC is a UK company.
22  I'll take them separately.
23          Perrigo we believe we served under the Hague
24  convention.  Their counsel has not appeared but communicated
25  with us that they have counsel.  We are discussing or -- we

Andronikh M. Barna, Official Court Reporter, RPR, CRR

1  are either going to seek a traverse hearing insomuch as
2  they're claiming nonservice or they'll move for default.  I
3  guess this is -- we haven't run it to ground.  So perhaps we
4  address this with the Court in the next three to four weeks in
5  a status or potentially a traverse hearing, which I can't
6  believe we would be having, or a motion for default.
7              THE COURT:  Yes, that would be unfortunate.  I mean,
8  obviously they can be served under the Hague convention, so
9  okay.  Tell them I would appreciate it if they don't put us
10 all to that trouble.
11             MR. LONDON:  I will communicate that to the lawyer
12 who has communicated to us, but she has not entered an
13 appearance yet.
14             THE COURT:  Okay.
15             MR. LONDON:  For Haleon PLC, this is different
16 obviously than the Haleon US entity that's in the case.  The
17 US lawyers are not representing this UK entity.  We believe
18 they were served.  Affidavits of service were filed,
19 obviously, on -- we believe they were served I think on
20 July 15th, affidavits of service were filed with the Court.
21             We are also trying to work, discuss with the US
22 entity who has reached out and said, asked us I think to
23 re-serve or to remove the affidavits of service.  Whether it's
24 a simple re-serving, we would like to work with the US entity,
25 appreciating that the US entity lawyer is not representing

1  them.  But this, too, may be a similar situation where if we
2  have to go to a traverse hearing on a motion for default, we
3  will and perhaps put this on a -- report back to the Court in
4  three to four weeks.
5              THE COURT:  Okay.  That sounds all good.
6              All right.  As far as our next conference, we will
7  do it after the argument on September 23rd.  Sounds like the
8  right time.
9              Anything else we need to talk about?
10             MR. LONDON:  Your Honor, probably not if you
11 anticipate us issuing scheduling orders following the hearing
12 and the ruling.  Because scheduling is obviously being held up
13 slightly due to that.
14             THE COURT:  Yes, well, you are being presumptuous.
15 I will issue a scheduling order to the extent that the case
16 remains alive, right?
17             MR. LONDON:  Oh, no, of course, Your Honor.
18             But I think one of the aspects of it is -- and we
19 don't need to take this up today, but I certainly want to flag
20 it insomuch as I think we are close in scheduling orders
21 agreements pending discovery, class cert experts, et cetera,
22 whether a master complaint needs to be done in order to
23 trigger a lot of those deadlines.  And that has really reared
24 its head again despite thinking we were going down the
25 New York complaint Delaware complaint road.

1    And I actually pulled up oral arguments back from I
2 think when we heard the term "skinny complaint" months ago.
3 And not that we're not doing one, but it shouldn't be
4 tethered, the filing of that, tethered to other discovery in
5 other schedule.
6    So we can address that at a later date, but that is
7 certainly the master complaint's relevance, if you will.  And
8 we know it's relevant, but its timing of it is holding things
9 up, including even one defendant saying:  I'm not going to
10 respond to discovery until it's a master complaint.  That was,
11 you know...
12    And so it's out there again.  I don't know if we
13 need to address it today, but it's been impacting the ability
14 to schedule.
15    THE COURT:  Do any of the defendants need to be
16 heard on that now?
17    MS. BLADOW:  Your Honor, Robyn Bladow for Haleon US
18 Holdings.
19    I can tell you that we agree to the skinny complaint
20 process with the understanding and the promise from
21 plaintiff's counsel that there would be a master complaint
22 that followed.
23    To the extent anything survives the motion to
24 dismiss, I don't think this needs to be addressed now, but
25 that's our position.  That's why we agreed to the skinny

1   complaint process in the first place, with the understanding
2   that we would eventually see a master complaint next.  Again,
3   if the case survives the motion to dismiss.
4           But as Your Honor alluded to, we believe we should
5   proceed to the hearing, get a ruling on the motion to dismiss,
6   which we, of course, believe should be granted.
7           THE COURT:  All right.  Well, let's put it off.  I
8   mean, let's see what is there after the motion to dismiss.
9   And then if I have to decide whether we need a master
10  complaint, I will do it then.
11          Okay.  Anything else we need to cover?
12          MR. LONDON:  There is one other issue.  Sorry,
13  Your Honor.
14          It's Rule 26(f) conferences and some scope issues
15  and we have run up into some roadblocks here.  And again, I
16  don't want to necessarily take the Court's time, pending
17  likely a decision at some point that could moot this or could
18  advance this.  But we face some objections from defendants
19  upon -- based upon the scope of our meet-and-confers and the
20  discovery saying:  We don't want to address scope, i.e.,
21  timing of your discovery until we're serving objections to
22  your discovery.  And this has really proved quite difficult in
23  advancing, we think meaningfully, doing the meet-and-confers.
24          You know, for one example, defendants will not tell
25  us when they started producing their various products.  And

Proceedings                                                          11

1  we've asked, obviously, the scope of timing to go back to
2  1994, figure, because the monograph date is one of the earlier
3  published articles that came out in '94.  But obviously if the
4  defendant didn't make its product until 2005, we wouldn't go
5  back to '94, we would go back a few years before the product
6  was made.
7           But not having that agreement on scope or timing is
8  proving difficult.  They say:  Well, we'll address it in our
9  objections.  Again, this could be moot, but it has also made
10 the Rule 26(f) conferences, while they get scheduled and we do
11 engage in many of them, less fruitful than they are in other
12 cases.
13          THE COURT:  What is the defendant's hesitancy about
14 disclosing the timing?
15          MS. FLAHIVE-WU:  Good morning, Your Honor.  This is
16 Laura Wu for the Procter & Gamble Company and I'm pleased to
17 address this issue for defendants.
18          First of all, we don't believe that this is a ripe
19 dispute for the Court.
20          To answer your question more directly, the
21 plaintiffs have served discovery, seeking a vast amount of
22 information, including an index of products produced, which
23 include phenylephrine.  We anticipate that we will respond to
24 that written discovery once we serve our written responses and
25 objections.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

12

1  In the meantime, we are working cooperatively with
2  the plaintiffs in order to scope the appropriate parameters
3  for discovery.  At this point, P&G has had one.  We were the
4  very first 26(f) conference with the plaintiffs.  We talked
5  about responsiveness period in very general cooperative terms.
6  We look forward to a followup meet-and-confer with
7  the plaintiffs next week where we may narrow the field of
8  potential dispute or friction.  It's very early days.  And
9  we're very optimistic that we'll be able to reach out some
10 scope parameters for discovery even before written responses
11 need to be served, if that is the case, Your Honor.
12 THE COURT:  Okay.  I mean, that sounds right.  It
13 seems to me you can agree on something before you do formal
14 responses, like when was the first product containing this
15 ingredient put to market, for example.  That will give some
16 date and plaintiff some idea to know what they are pursuing.
17 I am just offering that as an example.  It is not a ruling.
18 But it seems to me you should continue to have discussions
19 before I get involved because maybe I won't have to get
20 involved.  So try that.
21 MS. FLAHIVE-WU:  Thank you, Your Honor.  We'll do
22 that.
23 THE COURT:  All right.  Anything else?
24 Okay.  Thank you all for calling in.  See you in
25 September virtually.                        (Matter concluded.)

AMB     OCR     RPR     CRR
*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*
/s/ Andronikh M. Barna   August 21, 2024